UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                                        CRIMINAL ACTION NO. 3:22-CR-00058-DJH

STEPHANIE RUSSELL                                            DEFENDANT

## STEPHANIE RUSSELL'S MOTION TO
## REVOKE DETENTION ORDER
## PURSUANT TO 18 U.S.C. § 3145(b)

The Magistrate Judge has ordered that Defendant Stephanie Russell, M.D.,
accused of trying to arrange a murder for hire, be detained pending trial.  (Order of
Detention, R. 9, Page ID # 26-28, *and* Tr. of Detention Hr'g, R. 11 pp. 53-55, Page ID #
82-84; *see* Indictment, R. 13, Page ID # 90.)  The Magistrate Judge erred in concluding
that no conditions short of incarceration could reasonably assure Dr. Russell's
appearance in Court and safeguard the well-being of the community; a *de novo* review
of the facts will satisfy the Court that, on the contrary, such risks of flight or harm as are
posed by Dr. Russell can be sufficiently controlled by conditions less restrictive than
confinement in jail.  *See United States v. Goodwin*, No. 3:15-cr-101-DJH, 2015 U.S. Dist.
LEXIS 142930, 2015 WL 6386568, at *5 (W.D. Ky. Oct. 21, 2015) (*de novo* review of
evidence).

"The default position of the law," explained the Sixth Circuit, "is that a
defendant should be released pending trial."  *United States v. Stone,* 608 F.3d 939, 945 (6th

Cir. 2010).  This preference recognizes a fundamental truth that the Supreme Court articulated fifty years ago:

> The time spent in jail awaiting trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts family life; and it enforces idleness.  Most jails offer little or no recreational or rehabilitative programs.  The time spent in jail is simply dead time.  Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.  Imposing those consequences on anyone who has not yet been convicted is serious.

*Barker v. Wingo*, 407 U.S. 514, 532-533 (1972).

The goal in all cases therefore is to find "the least restrictive … combination of conditions" that will "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community…."  18 U.S.C. § 3142(c)(1)(B); *United States v. Vasilakos*, 508 F.3d 401, 411 (6th Cir. 2007).  Properly understood, it is not enough for the government to establish that the defendant constitutes a flight risk, or show that she represents a danger to the community: rather, the prosecution must demonstrate by a preponderance of the evidence that there are **no** conditions short of jail that can reasonably assure the defendant's appearance in Court, and must prove by clear and convincing evidence that nothing less restrictive than incarceration can reasonably assure the safety of the community.  *United States v. Dominguez*, 783 F.2d 702, 706-707, 708 n.8 (7th Cir. 1986).

As to Dr. Russell's risk of non-appearance in Court, the Magistrate Judge agreed with the Probation Office that Dr. Russell's violations of orders in the state family court litigation (a battle over the custody of Dr. Russell's two young children) demonstrated that Dr. Russell "may not abide by court orders" to attend trial proceedings.  (Tr. of Detention Hr'g, R. 11 pg. 53, Page ID # 82.)  This view is not borne out by closer inspection of Dr. Russell's conduct.  Although the Family Court Judge noted several

instances of Dr. Russell "not following court orders," only one consisted of a failure to appear at a scheduled proceeding, a 2018 mediation session with Dr. Russell's ex-husband to discuss a parenting schedule.  (*Id.*, U.S. Ex. 1, Family Court Order of Jan. 31, 2022, pg. 7 ¶ 29 and pg. 71 ¶ 330.)  Dr. Russell did not attend said mediation on the advice of counsel as at the time an Emergency Protective Order had been entered against Mr. Crabtree. The other violations concerned "obtaining medical treatment for the children without consent of Petitioner [the ex-husband], … diagnosing and treating the younger child, … unilaterally withholding the children from parenting time with Petitioner, … and … failing to complete the birth certificate process for the younger child." (*Id.*, U.S. Ex. 1 at pg. 71 ¶ 330.)  None of the violations resulted in a contempt finding (*ibid.*), and though not an excuse for the conduct, it must be reckoned that these acts of noncompliance occurred in the four-year course of what the family court judge described as "the most contentious custody action this court has seen.  The parties disagreed on almost every issue related to the children's medical, school, childcare, and parenting time schedule, with almost all of these issues addressed through court involvement."  (*Id.* at  pg. 86 ¶ 3.)  The violations cited in the family court's order do not substantiate a belief that Dr. Russell is likely to flee the community and avoid the proceedings in this Court, and they certainly do not justify the conclusion that it is jail, and only jail, that can reasonably assure that Dr. Russell will return to the Court when required.

In deciding that Dr. Russell posed too grave a threat of harm to be released pending trial, the Magistrate Judge expressed particular concern about "the allegation that the defendant persisted in her quest to solicit someone to kill her ex-husband" by "using coded language and multiple cell phones," by "continu[ing] to converse with someone she believed to be helpful," and by "allegedly placing a large sum of money in an agreed upon place to pay for the intended killing."  (Tr. of Detention Hr'g, R. 11

3

pg. 54, Page ID # 83.)  Given these allegations, the Magistrate Judge continued, "[t]he court is not persuaded that allowing the defendant to be released and returned to her medical practice will dampen the apparent resolve evidenced by the allegations in the complaint."  (*Id.* at pg. 55, Page ID # 84.)  In so reasoning, the Magistrate Judge determined – not unjustifiably – that incarceration was a better choice than *unconditional* release.  That, however, is not the test posed and required by the Bail Reform Act: rather, the question is whether the Court can design a combination of conditions that will safeguard the community as effectively as confinement behind bars.

Weighing most heavily in favor of releasing Dr. Russell is the need for her close participation in the defense against the charges in this case.  (Returning to her medical practice is no longer viable for Dr. Russell, so the interests of her patients do not factor into the balance any more.)  The discovery in this case includes audio and video files and over a thousand pages of documentary materials, none of which can be kept by Dr. Russell in the Oldham County Jail; moreover, current rules at the jail permit only video conferences between inmates and counsel that can only occur during business hours on weekdays, so review of discovery is limited to what can be done by online video connection on a limited time basis.  This disadvantage will cease if Dr. Russell is released from incarceration; even if she is confined to the residence of a third party, as the Defense proposes below, as it will be possible for Defense Counsel to meet with her and for Dr. Russell to retain the discovery materials for further review in counsel's absence.

Dr. Russell will also be able to receive proper medical treatment if she is released. She has developed high blood pressure which was ignored for two months.  In addition, Dr. Russell has Multiple Sclerosis for which she needs treatment.  She has lately been having numbness in her arm.  The jail is not equipped to manage and treat her extensive medical needs.

The Bail Reform Act, as enhanced by modern technology, enables the Court to select from an array of regulatory measures and construct a dependable system to neutralize any risks that Dr. Russell might present.  *See* 18 U.S.C. § 3142(c)(1)(B).  The defense suggests the Court specifically consider ordering Dr. Russell to:

- Remain in the custody of a designated person meeting the requirements of § 3142(c)(1)(B)(i).  Dr. Sheila Guelda, of Pewee Valley, Kentucky, has offered to undertake this responsibility; the defense believes the Court will find her to be qualified for the task.

- Abide by specified restrictions on personal associations and travel, and avoid all contact with alleged victims and potential witnesses.  *Id.*, (B)(iv) and (v).

- Report on a regular basis to the United States Probation Office.  *Id.*, (B)(vi).

- Refrain from possessing any dangerous weapon.  *Id.*, (B)(viii).

- Participate in counseling programs recommended by the probation officer.  *Id.*, (B)(x).

- Submit to electronic monitoring.  *See id.*

The Court can take steps to assure the appearance Dr. Russell for legal proceedings and provide for the safety of those in the community without resorting to the severest option of confinement in jail.  The Defense urges the Court to do so, and revoke the order of detention entered previously.

Respectfully submitted,

*/s/ Scott C. Cox*
SCOTT C. COX
COX & MAZZOLI PLLC
600 West Main Street, Suite 300
Louisville, Kentucky 40202
502-589-6190

/s/ *David B. Mour* [by permission granted]

David B. Mour

Law Office of David B. Mour

513 S. Second Street

Louisville, KY 40202

502-473-6464

Attorneys for Defendant Russell

## CERTIFICATE OF SERVICE

On July 21, 2022, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

/s/ *Scott C. Cox*

Scott C. Cox