UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO. 3:22-CR-00058-DJH |
| STEPHANIE RUSSELL | DEFENDANT |

## STEPHANIE RUSSELL'S REPLY IN SUPPORT OF MOTION TO REVOKE DETENTION ORDER

Defendant Stephanie Russell has asked the Court to revoke the order detaining her in Oldham County jail and release her with restrictive conditions sufficient to protect the community pending her trial. (*See* Order of Detention, R. 9, Page ID # 26-28, *and* Russell Motion to Revoke, R. 28, Page ID # 124-129.) The government's response implicitly concedes that Dr. Russell's confinement is not justified by any risk that she will fail to come to Court as required (*see* R. 37, U.S. Resp. pg. 3, Page ID # 156); the prosecution maintains, however, that Dr. Russell poses an uncontrollable "danger to her victim, her children, and the community…." (*Id.* at pg. 1, Page ID # 154.) The government falls well short of proving this claim by clear and convincing evidence, though, and the law accordingly calls for Dr. Russell's release.

The prosecution cites evidence that Dr. Russell's alleged crime involved deliberation and planning and aimed to inflict grave harm on her ex-husband. (U.S. Resp., R. 37 pg. 5, Page ID # 158.) These circumstances might warrant a fear for the safety of the ex-husband, but only if Dr. Russell were released *without conditions*; that, of course, will not be her environment if the Court revokes its detention order. Dr. Russell's future outside jail would be that of a person confined to the home of a third party, subject to constant monitoring, and restricted to contacts with her defense team and no one else. Under such limitations, Dr. Russell would lack all ability to effectuate any harmful plans she might conceive; even if she might experience inappropriate thoughts and feelings, she would have no capacity to make anything bad happen.

The prosecution's effort to depict Dr. Russell as a potential threat not just to her ex-husband, but to her children and the broader community, has no basis in fact. The Jefferson Family Court Judge, for instance, expressed a concern about allowing Dr. Russell to have *unsupervised* parenting time with her children, but allowed supervised interactions with her children for months, even up to the day she was charged; more to the point, Dr. Russell does not ask this Court to allow her to have any contact with her children, and she understands that the Court would not permit unsupervised contact under any circumstances. Considering the safety of the community generally, there is no evidence, apart from

the allegations concerning her ex-husband, that Dr. Russell has ever posed a danger of any kind to anyone. The statute insists that a defendant not be incarcerated unless clear and convincing evidence shows that "no condition or combination of conditions will reasonably assure" the safety of others, 18 U.S.C. § 3142(e), and the government's proof does not meet this standard.

    The defense motion encouraged the Court to require, as a condition of release pursuant to § 3142(c)(1)(B)(i), that Dr. Russell reside at the home and in the custody of Sheila Guelda, M.D. (Russell Mot., R. 28 pg. 5, Page ID # 128.) The prosecution takes exception to this proposal, saying that Dr. Guelda "is a close personal friend of the Defendant who has previously testified in the family court matter and has a strong personal bias in favor of the Defendant and has not demonstrated objectivity in regards to the Defendant." (U.S. Resp., R. 37 pg. 6, Page ID # 159.) The accusation here seems to be simply that Dr. Guelda is a committed and supportive friend of Dr. Russell, which is hardly a disqualification for the job of custodian. The statute, in fact, sets the specific criteria for the position: the custodian must "agree[] to assume supervision and to report any violation of a release condition to the court," and must be "able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community." § 3142(c)(1)(B)(i). Nothing suggests that Dr. Guelda is unable or

unwilling to shoulder these responsibilities.  Bonds of affinity between the custodian and defendant might, if anything, strengthen the custodian's influence and make her better able to assure that the defendant will abide the limits set by the Court; it is assumed, in any case, that the Court will satisfy itself of Dr. Guelda's qualifications before swearing her to the role of custodian, and if Dr. Guelda is found wanting, another candidate can be readily proposed.

      The defense has reported that Dr. Russell's health has declined since entering jail (Russell Mot., R. 28 pg. 4, Page ID # 127), but the government brushes this aside, declaring that "correctional confinement will provide a place with access to medication and healthcare…." (U.S. Resp., R. 37 pg. 6, Page ID # 159.)  This confidence is misplaced.  As specified in the defense motion, Dr. Russell's high blood pressure was ignored by jail officials for two months; she is not receiving needed treatment for her multiple sclerosis; she has experienced recurring bouts of numbness in her arm, with no relief or appropriate treatment.  Not only do the facts in Dr. Russell's particular case belie the government's assurance that her health care is adequate; inmates in jails are universally "the unhealthiest and most medically underserved in society" and are "exposed to a range of conditions that are detrimental to physical and mental health," including

4

overcrowding, poor nutrition, and unsanitary quarters.[1]  Treatment for mental health needs is particularly lacking.[2]  The unhealthy environment and sub-standard health care in jail are not, standing alone, grounds to grant an accused's release, but they should not be ignored in the decision making process.

In a similar fashion, the prosecution dismisses the limitations that jail imposes on Dr. Russell's ability to help her attorneys prepare her defense: the Marshals Service, the government pledges, will "work[] with defense counsel to allow them ample time and opportunity to meet with their clients and review discovery." (U.S. Resp., R. 37 pg. 7, Page ID # 160.)  The prosecution ignores the fact that there is only so much the Marshals Service can do in this regard; they cannot, for instance, arrange for an in-person meeting in the jail, or make it possible for Dr. Russell to review documents and digital audio/video files in her cell.  As the defense motion noted, the only means by which counsel can show Dr. Russell the discovery against her is to

---

[1]   David Cloud, Jim Parsons, and Ayesha Delany-Brumsey, *Addressing Mass Incarceration: A Clarion Call for Public Health*, 104 Am. J. Pub. Health No. 3 pg. 389 (Mar. 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3953768/pdf/AJPH.2013.301741.pdf.

[2]   Nathaniel Morris and Matthew Edwards, *Addressing Shortages of Mental Health Professionals in U.S. Jails and Prisons*, 28 J. Corr. Care No. 4 pp. 209-210 (2022), https://www.liebertpub.com/doi/epdf/10.1089/jchc.21.08.0072.

schedule a video conference (usually allowed to last no longer than sixty minutes) and display exhibits on the computer screen. (Russell Mot., R. 28 pg. 4, Page ID # 127.)  This is the sort of limitation that the law permits only when the defendant is so dangerous that there is no alternative but to incarcerate her, and that is simply not the situation here.

As the government observes, even a tool as sophisticated as GPS monitoring is not all-knowing and all-controlling; it is possible to know exactly where a person is at every moment, but not to know what she is thinking.  (U.S. Resp., R. 37 pg. 7, Page ID # 160.)  To say that all alternatives to jail are subject to limits is the same as saying that no environment can subjugate a person as utterly as captivity.  The law does not pretend that conditions of release are the equivalent of incarceration; the law simply insists that incarceration be the last resort, the last option when nothing less can prevent the defendant from causing harm.  The government has not proved that Dr. Russell is such a threat, certainly not by clear and convincing evidence.  The detention order in this case should be revoked.

Respectfully submitted,

*Michael R. Mazzoli*
Scott C. Cox
Michael R. Mazzoli
Scott Coleman Cox, II
COX & MAZZOLI PLLC
600 West Main Street, Suite 300
Louisville, Kentucky 40202
502-589-6190
MazzoliCMLaw@aol.com

and

David B. Mour
Law Office of David B. Mour
513 S. Second Street
Louisville, KY 40202
502-473-6464
dmour@louisvillefirm.com

Attorneys for Defendant Russell

## CERTIFICATE OF SERVICE

On September 16, 2022, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

*Michael R. Mazzoli*
Michael R. Mazzoli