UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO. 3:22-CR-00058-DJH |
| STEPHANIE RUSSELL | DEFENDANT |

## STEPHANIE RUSSELL'S RESPONSE TO GOVERNMENT'S MOTION FOR PSYCHIATRIC EXAMINATION AND MOTION TO CONTINUE TRIAL

The prosecution has asked the Court to exercise its discretion under Fed. R. Crim. P. 12.2(c)(1)(B) to allow the government to conduct a mental examination of defendant Stephanie Russell (R. 53, Page ID # 206-210) and, in order to accommodate the requested examination, to postpone Dr. Russell's trial and exclude the period of delay from the Speedy Trial Act's timetable.  (R. 54, Page ID # 213-214.)  The defense acknowledges the Court's authority under the particular circumstances of this case to "order the defendant to be examined under procedures ordered by the court," R. 12.2(c)(1)(B), but objects to the government's demand that Dr. Russell be transferred to a Bureau of Prisons medical facility for purposes of the examination:

considerations of fairness and judicial economy call for the examination to be performed in the U.S. Courthouse in Louisville or the Oldham County Detention Center, just as Dr. Russell's experts conducted their tests at those sites.  Because the government's needs are limited, any continuance granted by the Court should be limited, as well, and accompanied by close controls to avoid needless delay.

In contrast with provisions in Rule 12.2(c)(1) that compel the Court to commit a defendant to be tested for competence or sanity, the government's motion in our case invokes a narrower discretionary authority, one that arises when a defendant gives notice that she may introduce expert evidence "relating to … any … mental condition bearing on … the issue of guilt…." R. 12.2(b), (c)(1)(B).  The Court's decisions whether to allow any examination at all and, if so, what type of examination to authorize, are bounded by considerations of fairness and the type of examination that the circumstances justify.  "The kinds of expert testimony which could be presented regarding the defendant's mental condition may vary widely," the Sixth Circuit has explained. *United States v. Davis*, 93 F.3d 1286, 1293 (6th Cir. 1996).  "[U]nlike a claim of insanity," the court continued, a defense relying on "mental condition, disease or defect requires a case by case analysis to determine whether a psychiatric or psychological examination of the defendant will be necessary for the government

2

fairly to rebut the defendant's expert evidence." *Ibid.* The examination allowed under Rule 12.2(c)(1)(B) should be no more extensive than is warranted "in order for the government to fairly prepare for [the defendant's] evidence at trial," and "the extensiveness of the examination may determine the length of such an examination." *United States v. Visinaiz*, 96 Fed. Appx. 594, 599 (10th Cir. 2004). So, for instance, in a case where the defendant gave notice that he intended to rely on the opinions of two experts who conducted "prolonged examinations" of the defendant, the Second Circuit held that an appropriate government examination should afford "rough parity in terms of access to the information that would allow the government's experts to arrive at competing conclusions," which in that case called for the defendant to submit to personal interviews by the prosecution's specialists. *United States v. McSherry*, 226 F.3d 153, 156-157 (2nd Cir. 2000).

     A reasonable gauge of parity for the government in our case, then, would be the interviews and testing necessary for the defense experts to prepare their opinions. Two defense experts examined Dr. Russell: psychologist Wayne J. Harper, Ed.D., and psychiatrist Walter R. Butler, J.D., M.D. Their task was to evaluate Dr. Russell's current cognitive and psychological status and determine the existence of underlying active psychiatric illnesses, issues related to cognitive capacity, personality factors, or other mental health issues affecting Dr. Russell's thinking and behaviors

as relevant to her alleged crime. Both men interviewed Dr. Russell in person on two occasions, spending several hours with her each time; in addition, after the first interview, Dr. Harper administered a battery of tests that took Dr. Russell three hours to complete. These meetings took place during Dr. Russell's confinement on the charges in this case; the first meeting was accommodated by the United States Marshals Service in the Louisville courthouse holding cell, and the second occurred in the Oldham County Detention Center. Apart from their sessions with Dr. Russell, both professionals devoted time to reading the voluminous psychological assessment of Dr. Russell that Kelli Marvin, Ph.D., prepared for child custody litigation in Jefferson Circuit Court in 2020; they also reviewed some nine hours of videotaped testimony by Dr. Marvin in the custody case, along with other materials. Drs. Harper and Butler met together several times to discuss the testing data and their clinical judgments, and both prepared detailed reports discussing their findings.

    Parity for the government, therefore, reasonably justifies an order allowing a psychologist and/or psychiatrist to meet with Dr. Russell in person for interviews and testing, and permitting additional time for review and analysis of the available evidence and preparation of written findings. The prosecution asks for far too much, however, when it urges the Court to commit Dr. Russell to a Bureau of Prisons detention facility for the sort of intensive

and prolonged observation typical of competence and sanity determinations.  Parity for the government is a "psychiatric or psychological examination of the defendant" which is sufficiently extensive "to rebut the defendant's expert evidence," and this can be provided without transporting Dr. Russell across the country to a federal prison and subjecting her to unnecessarily protracted observation by government specialists.

It is worthwhile in this context to note that there is no federal statute that authorizes a person's confinement for psychiatric testing in circumstances like ours; the law limits custodial testing to cases involving questions of competence (*see* 18 U.S.C. § 4241) and sanity (§ 4242).  Rule 12.2(c)(1)(B) does not, by its terms, authorize in-custody examinations, and though federal judges have inherent authority to compel defendants to submit to non-custodial assessments, the Sixth Circuit and other courts have declared that this power cannot mandate in-custody examinations.  *Davis,* 93 F.3d at 1295; *Visinaiz,* 96 Fed. Appx. at 600.  The fact that Dr. Russell is subject to pretrial confinement does not automatically subject her to the loss of liberty intrinsic in confinement in a mental institution; on the contrary, "a significant difference exists between the two types of detainment," and the transfer of Dr. Russell to a mental hospital "is an important issue separate from [her] pretrial detainment…."  *Visinaiz,* 96 Fed. Appx. at 597 (citing *Vitek v. Jones,* 445 U.S. 480, 492-494 (1980)).

Fortunately, the circumstances of our case do not require the Court to press the limits of its possible authority by granting the government's request.  Rather, the Court can assure complete fairness to the prosecution by authorizing the testing of Dr. Russell in the Western District of Kentucky, either by releasing her to home detention and ordering her to subject herself to the government's desired interviews, or by requiring the prosecution to conduct the necessary examination in Dr. Russell's detention facility.  Moreover, the Court should grant only a limited continuance of trial for the purpose of allowing the government's experts to do their work.

The defense accordingly urges the Court to enter the proposed order attached to this response.

                          Respectfully submitted,

                          *Michael R. Mazzoli*

                          Scott C. Cox
                          Michael R. Mazzoli
                          Scott Coleman Cox, II
                          COX & MAZZOLI PLLC
                          600 West Main Street, Suite 300
                          Louisville, Kentucky 40202
                          502-589-6190
                          MazzoliCMLaw@aol.com

                          and

        David B. Mour
        Law Office of David B. Mour
        513 S. Second Street
        Louisville, KY 40202
        502-473-6464
        dmour@louisvillefirm.com

        Attorneys for Defendant Russell

## CERTIFICATE OF SERVICE

On January 25, 2023, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

*Michael R. Mazzoli*
Michael R. Mazzoli