UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA, Plaintiff,

v. Criminal Action No. 3:22-cr-58-DJH

STEPHANIE M. RUSSELL, Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Following Defendant Stephanie M. Russell's notice of intent to use expert evidence of a mental condition bearing on the issue of guilt (Docket No. 46), the United States moves for an examination under Federal Rule of Criminal Procedure 12.2(c)(1)(B). (D.N. 53) Russell does not oppose examination but argues that it should not be conducted at a federal facility. (D.N. 56) The Court heard oral argument on the motion on January 30, 2023. (D.N. 58)

Pursuant to Rule 12.2(c)(1)(B), "[i]f the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." The rule gives the Court "the discretion to specify the procedures to be used" because no statute sets out the "procedures . . . for a court-ordered examination on the defendant's mental condition (apart from insanity)." Fed. R. Crim. P. 12.2(c)(1) advisory committee's note to 2002 amendment. In deciding what procedures are appropriate, "the court may certainly be informed by other [statutory] provisions[ that] address hearings on a defendant's mental condition." *Id.* (citing 18 U.S.C. § 4241 "et seq.").

Here, the United States requests that Russell be examined at a federal medical facility, as is typical for court-ordered examinations of a defendant's mental condition. *See* § 4247(b); Fed. R. Crim. P. 12.2(c)(1) advisory committee's note to 2002 amendment. Although the defense

1

suggests that the examination instead occur at the Oldham County Detention Center, where Russell is currently being held (D.N. 56, PageID.222), defense counsel acknowledged during oral argument that an effective examination is not possible at that location. Russell's alternative suggestion that she be released to home detention for purposes of examination (*id.*) is likewise untenable; the Court has already declined to revoke the detention order issued in this case. (*See* D.N. 41)

Citing *United States v. Davis*, 93 F.3d 1286 (6th Cir. 1996), the defense further asserts that the Court lacks authority to order a custodial examination. (*See* D.N. 56, PageID.221-22) In *Davis*, the Sixth Circuit held that neither Rule 12.2 nor 18 U.S.C. § 4242 authorized court-ordered examinations for mental conditions bearing on a defendant's guilt, *id.* at 1291-95, and that the district court's inherent authority extended only to "non-custodial" examinations. *Id.* at 1295. *Davis* was decided before the 2002 amendments to Rule 12.2, however, and both the amendments themselves and the advisory committee's accompanying notes—which discuss *Davis* at length—make clear that the rule authorizes court-ordered examinations under whatever procedures the Court deems appropriate. Moreover, the committee specifically cited the statutes governing custodial examinations for insanity and competency as examples that courts may follow in setting those procedures. *See* Fed. R. Crim. P. 12.2(c)(1) advisory committee's note to 2002 amendment (citing 18 U.S.C. § 4241 "et seq."). The rule specifies the statutory procedures for competency and insanity examinations but not examinations for other mental conditions, the committee explained, because "no specific statutory counterpart is available" for the latter. *Id.*

In short, nothing in the current rule or the committee's commentary suggests that custodial examination is impermissible here. *See United States v. Northington*, No. 07-550-05, 2012 U.S. Dist. LEXIS 112960, at *16-*18 (E.D. Pa. Aug. 10, 2012) (examining Rule 12.2 and

2

commentary and concluding that the rule authorized the court to order a mental-condition examination at a federal medical facility). *Contra United States v. Rinaldi*, 351 F.3d 285, 289 (7th Cir. 2003) (concluding, with little discussion, that "[a]lthough *Davis* was decided before the 2002 amendments to Rule 12.2, the amendments do not alter the holding in *Davis*"). Moreover, because Russell is already in custody, any further intrusion on her liberty is minimal.[1] *See Northington*, 2012 U.S. Dist. LEXIS 112960, at *18, *26-*27 (distinguishing *Davis* and *Rinaldi* on the ground that the defendants in those cases were not already in custody); *cf. Pierce*, 467 F.3d at 370 (finding, for purposes of collateral-order doctrine in post-conviction context, that no loss of liberty resulted from custodial mental examination where defendant "w[ould] be in custody in one place or another"). And given the serious charge at issue in this case and the serious issues raised by the defense experts' reports (D.N. 57-1; D.N. 57-2), a thorough examination is warranted. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

---

[1] The defense cites the Tenth Circuit's unpublished decision in *United States v. Visinaiz*, 96 F. App'x 594 (10th Cir. 2004), for the proposition that "a significant difference exists between" pretrial detention and commitment to a mental hospital in terms of the defendant's loss of liberty. (D.N. 56, PageID.221 (quoting *Visinaiz*, 96 F. App'x at 597)) The *Visinaiz* panel, however, relied on *Vitek v. Jones*, 445 U.S. 480 (1980), in which the Supreme Court considered the due-process implications of a defendant's post-conviction transfer to a mental hospital for an indefinite period of involuntary treatment upon a finding of mental illness by corrections officials. *See id.* at 491-94. That is a far cry from the present scenario: here, the defense raised the issue of Russell's mental condition, triggering Rule 12.2's provision for examination by the government; the examination will be limited in time and scope and will not entail treatment. *See Pierce v. Blaine*, 467 F.3d 362, 371 (3d Cir. 2006) (per curiam) (noting that *Vitek* "involved an open-ended civil commitment and involuntary treatment unrelated to any ongoing court proceedings rather than an inpatient evaluation for [a] limited purpose"). Nor do the procedures set out below include or imply a finding that Russell is mentally ill. *Cf. Vitek*, 445 U.S. at 493-94 ("A criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections.").

**ORDERED** as follows:

(1)     The government's motion for psychiatric examination (D.N. 53) is **GRANTED**. Pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B), Defendant Stephanie M. Russell shall be examined by a licensed or certified psychiatrist or psychologist at a suitable federal medical facility to determine the presence of any mental disease or defect or any other mental condition bearing on the issue of guilt. The examination shall be completed within **thirty (30) days** of entry of this Order.

(2)     The examining psychiatrist or psychologist shall prepare a report of the examination, which shall be promptly filed with the Court with copies provided to defense counsel and to the attorney for the United States, and shall include—

   (a)     Russell's history and present symptoms;

   (b)     a description of the psychiatric, psychological, and medical tests that were employed and their results;

   (c)     the examiner's findings; and

   (d)     the examiner's opinions as to diagnosis, prognosis, and the presence of any mental disease or defect or any other mental condition bearing on the issue of guilt.

(3)     The U.S. Marshal for the Western District of Kentucky shall make arrangements for transporting Russell to and from a federal medical facility and for her to be examined as ordered above. Russell shall be transported to the facility within **ten (10) days** of entry of this Order and returned to this district within **ten (10) days** of completion of the examination.

(4)     The Clerk of Court is **DIRECTED** to transmit the defense experts' sealed reports (D.N. 57-1; D.N. 57-2) to the federal medical facility where Russell will be tested.

(5)     Pursuant to 18 U.S.C. § 3161(h)(1)(A), the period of delay resulting from the examination described herein and any necessary hearing is excludable for purposes of the Speedy Trial Act.

February 14, 2023

David J. Hale, Judge
United States District Court

cc:     U.S. Marshal

5