UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                                                    CRIMINAL NO. 3:22-CR-58-DJH

STEPHANIE M. RUSSELL                                          DEFENDANT

## UNITED STATES' PRETRIAL MEMORANDUM

The United States files this Pretrial Memorandum of the trial currently scheduled for jury

selection on November 30, 2023, and witness testimony beginning on December 4, 2023, in

Louisville, Kentucky.

**A.        STATUTES INVOLVED AND ELEMENTS OF OFFENSES**

### Count 1

**18 U.S.C. § 1958 – Murder-for-Hire**

Title 18, United States Code, Section 1958 makes it a crime to travel or use certain interstate
facilities in the commission of a murder-for-hire. The elements of the crime are:

> First, that the defendant traveled or caused another person to travel in interstate or foreign
> commerce, or used or caused another person to use the mail or any facility of interstate or
> foreign commerce.

> Second, that the defendant did so with the intent that a murder be committed.

> Third, as consideration for the receipt of or promise or agreement to pay anything of
> pecuniary value.

> "Facility of interstate commerce" includes means of transportation and communication. §
> 1958(b)(2). The defendant's use of the facility need not be in interstate or foreign
> commerce.

## Count 2

**18 U.S.C. §2261A - Stalking**

Title 18, United States Code, Section 2261A(2) makes it a crime to use the mail or any facility in interstate commerce to engage in a course of conduct, with intent to injure, harass, or intimidate another person, that causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to that person.  The elements of stalking are:

> First, that the Defendant, with intent to injure, harass, or intimidate another person, used, or caused another to use, the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that

> Second, caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person, an immediate family member, or a spouse or intimate partner.

The term "course of conduct" means of pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose.

## STATEMENT OF UNDISPUTED AND DISPUTED FACTS

Stephanie Russell solicited at least two of her employees in the spring of 2022 to help her find someone who would kill her ex-husband.  Russell had been embroiled in a protracted custody dispute in Jefferson Circuit Court's Family Division over the custody of the couple's two minor children.  Russell sought to exclude her ex-husband entirely from the lives of the two children.  The victim, her former husband, initially sought joint custody as part of the couples' divorce.  As the litigation proceeded, eventually an emergency temporary custody order was entered granting the victim husband sole custody of the children.  The Defendant, a practicing pediatrician, was allowed supervised visitation alone.  In January 31, 2022, a custody decree was entered granting the victim father permanent sole custody of the two minor children.

2

The employees whom Russell had solicited for help in finding a hitman reported Russell's questioning to a higher-ranking employee in the office. The solicitations, documented by screen shots of text messages from Russell to her employees, were ultimately reported to law enforcement authorities and the FBI opened an investigation into Russell's efforts to have her husband killed. One of the individuals who had been solicited by the Defendant agreed to work with the FBI as a cooperating witness. The CW contacted Russell by text message, and the two agreed to meet at a Starbucks near Russell's practice. The meeting was recorded, and the CW provided Russell with the telephone number for a purported "hitman" who would kill Russell's ex-husband in exchange for money.

The phone number provided to Russell by the CW was actually the phone number for a phone being used by an FBI employee (UCE) based in Illinois who was posing undercover as someone willing to travel to Louisville in order to kill Russell's ex-husband in exchange for money. Russell initiated contact with the UCE by text message. A series of phone calls and text messages ensued in which Russell agreed to pay $7,000 to the UCE in exchange for the murder of the victim. Russell specified how she wanted the murder to be done, and encouraged the UCE to travel to Kentucky to do so before the children finished school for the year. Surveillance footage from Russell's medical office shows her retrieving and hanging a specimen box on an outside door. Russell texted a code to the UCE for the box. The UCE, who had driven from the Chicago area, did not meet face-to-face with Russell, but retrieved $3,500 in cash from the specimen box where Russell had indicated she would place the payment.

Russell was arrested the next day pursuant to a Criminal Complaint. Agents recovered from the medical office a "burner phone" that Russell had used in communicating with the UCE. Agents executed a search warrant at her house where they located approximately $2400 in cash

in a box in the closet of Russell's bedroom, as well as a box in the garbage can for the Tracfone burner phone Russell was using to set up the hit.

The family court litigation stretches back over five years before the custody decree was finally entered in early 2022. Russell engaged in a series of ever-escalating accusations of wrong-doing on the part of the victim including Emergency Protective Orders, and allegations of physical and sexual abuse. All were ultimately determined to lack any foundation. In October 2018, the Family Court ordered the appointment of a guardian ad litem for the children and ordered both parties to undergo parental capacity and forensic mental health evaluations. Shortly thereafter, the stalking conduct charged in Count 2 began.

A person, posing as a reporter, showed up unannounced at the victim's workplace and attempted to speak with the victim "to get his side of the story" about a sexual abuse story he was doing. The same person left four voice mail messages on the victim's phone each of which made it progressively clearer that the stranger was talking with Russell. The same person went to the victim's home and left a handwritten note in the garage where his entry was captured on a security camera in the victim's garage. The victim filed a report of harassment and Russell claimed to not know anything about it. Call detail records, however, show that Russell provided yet another "burner phone" to this individual for purposes of his harassment of the victim. The stalking conduct culminated in a flier left on the windshields of cars in the parking lot at the victim's workplace, bearing the victim's photograph, and accusing him of being a child sex abuser. An anonymous letter, making the same claim, was sent to the victim's employer.

It is presumed by the United States that the Defendant disputes all facts except those stipulated to.

**B.**     **A SEPARATE STATEMENT OF EACH UNRESOLVED SUBSTANTIVE ISSUE OF LAW, WITH DISCUSSION AND CITATIONS TO AUTHORITIES**

The United States is considering filing motions *in limine* addressing several substantive issues of law, or supplementing issues identified in this memorandum.  The deadline for filing such motions has not lapsed.

**C.**     **A STATEMENT OF EVIDENTIARY ISSUES WHICH IT IS REASONABLY BELIEVED WILL BE RAISED AT TRIAL TOGETHER WITH CITATIONS TO THE FRE AND AUTHORITES IN SUPPORT OF POSITION TAKEN.**

1. Stipulations

The United States is proposing stipulations under Rule 902 regarding (1) the authenticity of the forensic image of several telephones, the resulting extraction reports, and any derivative exhibits therefrom.

2. Evidence of Other Acts

Russell's pattern of conduct during the custody litigation, including gaslighting the victim, and making a series of ever-escalating false allegations of physical and sexual abuse by the victim included the stalking episode and culminating in the murder-for-hire scheme, is intrinsic to this case, and some summary of those events is necessary to provide context for the charged crimes.  To the extent that Russell's plethora of prior bad acts could be considered 404(b) evidence, the United States intends to address in a separate notice how it intends to address the underlying family court litigation.  The criminal case should not be a relitigating of the family court proceedings, nor a rehashing of all the allegations of abuse made during that proceeding.   Russell intends to put her mental state in issue at trial, however, and the conclusions of investigators, a forensic psychologist, and the family court judge that, in fact, the victim was not a sexual abuser as Russell claimed, but that Russell was coaching her eldest child

5

to make false allegations of sexual abuse against the victim, to the child's psychological detriment, may become relevant to rebut Russell's claim that she hired someone to kill the victim in a state of emotional distress because she believed the children were being abused.

      3. <u>Cross Examination Regarding Earlier Investigation</u>.

The FBI received information in 2019 about the Defendant's possible efforts to hire someone to kill the victim.  The FBI opened an investigation and closed it in the fall of 2020 without any charges.  The Defendant may want to cross-examine agents regarding the specifics of that investigation and investigative steps that were or were not taken.

Relevant evidence is admissible, and irrelevant evidence is inadmissible.   Rule 402, Federal Rules of Evidence.  Evidence of a sloppy police investigation many times will not be relevant.  "Under our system if criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation." *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999); *see also United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994); *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1073 (2d Cir. 1977). "The phrase 'inadequacy of the police investigation' covers a variety of problems and cuts across the full spectrum of relevant and irrelevant evidence...Merely showing that an investigation is sloppy does not establish relevance." *United States v. Patrick*, 248 F.3d 11 (1st Cir. 2001), cert. denied, 534 U. S. 1043, 535 U.S. 910 (2002).

In *United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999), the court affirmed the trial judge's refusal to have the "trial become a trial of the investigation." The circuit deemed the proffered cross examination of an agent to be of "marginal relevance."  The defendant's attempt to ask whether a government witness was polygraphed was ruled inadmissible unless the

defendant could show the government wasn't turning "square corners." *Zaccaria v. United States*, 240 F. 3d 75 (1st Cir. 2001).

    4. <u>Affirmative Defenses</u>

    Defendant has offered proposed jury instructions on two separate affirmative defenses: entrapment and emotional duress. The paradox is that Defendant contends either that she was entrapped by the government into engaging in criminal conduct (murder-for-hire) that she otherwise was not predisposed to commit; or, when she hired someone to kill her ex-husband she did not have the requisite *mens rea* for murder because she was acting under emotional distress.

    Entrapment is an affirmative defense recognized under federal criminal law. The jury instruction tendered by the Defendant regarding emotional duress is an affirmative defense to a charge of murder under Kentucky state law. KRS 507.020. Defendant cites no case in support of the proposition that a federal criminal jury should be instructed on an affirmative defense recognized under state law. Federal criminal law recognizes affirmative defenses for both entrapment and duress, and the Sixth Circuit has Pattern Criminal Jury Instructions for both when the evidence warrants that a defense instruction be given.

    A Defendant is not entitled to a jury instruction on the defense theory of the case where it is not supported by the evidence. In *United States v. O'Neal*, 1999 WL 777307, 1999 U.S. App. LEXIS 23517 (6th Cir. 1999) (unpublished), the panel explained the law as follows: "Although a jury instruction 'should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation,' if there is even weak supporting evidence, '[a] trial court commits reversible error in a criminal case when it fails to give an adequate presentation of a theory of defense.'" 1999 WL at 1, 1999 LEXIS at 3, *quoting United States v. James*, 819 F.2d 674, 675

(6th Cir. 1987) and *United States v. Plummer*, 789 F.2d 435, 438 (6th Cir. 1986). In *O'Neal*, the panel concluded that the trial court properly refused a defense instruction because it was not supported by the evidence.

In this case, the evidence at trial will not support giving either of the defense instructions proposed by the Defendant. Duress is an affirmative defense; it does not negate the *mens rea* for an offense. Defendant is not entitled to a duress jury instruction unless she has satisfied her burden of persuasion. *Dixon v. United States*, 548 U.S. 1 (2006).

The appropriate instruction to give if one is warranted under the evidence in the case is not the state law instruction proposed by the Defendant but the Sixth Circuit's Pattern Criminal Jury Instruction 6.05 on duress. The court identified the elements of this defense in *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994) as follows:

> (1) that defendant was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that the defendant had not recklessly or negligently placed herself in a situation in which it was probable that he would be forced to choose the criminal conduct; that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (3) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;
>
> (4) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Riffe*, *supra* at 569, *quoting United States v. Newcomb*, 6 F.3d 1129, 1134-35 (6th Cir. 1993) and *citing United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990).

The duress defense requires a threat of physical harm. *See United States v. Huff*, 1998 WL 385555, 5, 1998 U.S. App. LEXIS 14988, 10 (6th Cir. 1998)(unpublished) (affirming refusal to

give duress instruction because no evidence of a threat of physical harm), but the threat of death

or serious bodily harm may be a threat against another.  In *United States v. Garner*, 529 F.2d

962, 969-70 (6th Cir. 1976), a coercion instruction was required when a defendant alleged that

she committed the illegal acts because of anonymous threats against her daughter.

To raise the defense and warrant an instruction, the defendant need only present some

evidence, even weak evidence, of all five elements of the defense.  *United States v. Riffe*, *supra* at

570, *citing Newcomb*, 6 F.3d at 1132.  *See also United States v. Garner*, 529 F.2d 962, 970 (6th

Cir. 1976).  As to the standard of proof, once an instruction is warranted, the burden to establish

the defense is on the defendant based on *Dixon v. United States*, 126 S. Ct. 2437, 2447-48 (2006).

Defendant has submitted a proposed entrapment instruction.  [DN 52, PageID # 203].

Defendant has submitted the Eighth Circuit's Model Criminal Jury Instruction § 9.01 (2021) on

entrapment, as opposed to the Sixth Circuit Pattern Criminal Jury Instruction § 6.03.

Today, "a valid entrapment defense has two related elements: government inducement of

the crime, and a lack of predisposition on the part of the defendant to engage in criminal

conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). "Predisposition, the principal

element in the defense of entrapment, focuses upon whether the defendant was an unwary

innocent or, instead, an unwary criminal who readily availed himself of the opportunity to

perpetrate the crime." *Id*. at 63 (citations and internal quotation marks omitted). "[T]he fact that

officers or employees of the Government merely afford opportunities or facilities for the

commission of the offense does not defeat the prosecution." *Jacobson v. United*

*States*, 503 U.S. 540, 548, (1992) (internal quotation marks omitted).

The ***defendant*** has the burden of making the "two-part threshold showing in order to put

an entrapment defense before the jury." *United States v. Montoya*, 2016 WL 7336577 (1st Cir.

Dec. 19, 2016)(emphasis added). "Once that prima facie showing has satisfied the defendant's entry-level burden of production, the government must shoulder the burden of proving beyond a reasonable doubt that entrapment did not occur." *Id*. "The mere existence of friendship, in and of itself, does not constitute improper inducement."

If the defendant shows a predisposition to commit an offense, governmental participation in the commission of an offense by itself cannot be the basis of an entrapment defense. *United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994); *United States v. Leja*, 563 F.2d 244 (6th Cir. 1977).

No instruction on entrapment need be given unless there is some evidence of both government inducement and lack of predisposition. *United States v. Nelson*, supra, 922 F.2d at 317. It is the duty of the trial judge to determine whether there is sufficient evidence of entrapment to allow the issue to go before the jury. If there is, then the burden shifts to the government to prove predisposition. *United States v. Meyer*, 803 F.2d 246, 249 (6th Cir. 1986). The government must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See, e.g.*, *United States v. Jones*, 575 F.2d 81, 83-84 (6th Cir. 1978). "In order to be entitled to an instruction on entrapment, the record must show 'some hard evidence' of both government inducement and the defendant's lack of predisposition. This evidence must be more than uncorroborated self-serving assertions." *United States v. Gonzalez-Perez,* 2015 WL 300967 (1st Cir. Jan. 23, 2015) (citation omitted).

No reasonable jury could find that the defendant in this case was entrapped.  If the Court finds to the contrary, that an instruction on entrapment should be given at the conclusion of the proof, the United States objects to the use of the Eighth Circuit's Pattern Jury Instruction proposed by the Defendant as the Sixth Circuit's Pattern Instruction § 6.03 accurately reflects the law applicable in the Sixth Circuit to this affirmative defense.

**D.     A STATEMENT OF KNOWN OR REASONALY ANTICPATED POTENTIAL TRIAL PROBLEMS OR OTHER ISSUES WHICH MAY ASSIST THE COURT IN TRYING THE CASE.**

The United States is not aware of any other potential trial problems.  The United States will be playing clips from an audio/video recording of a meeting between a Cooperating Witness and the Defendant.  This meeting is not transcribed.  The quality of the recording is good; however headsets may be useful to members of the jury with this specific piece of evidence.

**E.     PROPOSED SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS WITH CITATIONS TO AUTHORITIES.**

The United States has tendered proposed jury instructions by separate filing.  [DN 80].

**F.     PROPOSED VOIR DIRE QUESTIONS**

The United States previously filed proposed questions for the *voir dire* of the prospective jurors.  [DN 76].  The United States incorporates by reference those questions previously submitted, and requests that the Court also include questions about media exposure the use of a cooperating witness and undercover activities.  There have been some news stories with a national reach published about the case, as well as at least one podcast about it.  The United States proposes the following additional questioning about media and the use of a cooperating witness and undercover investigation[1]:

---

[1] The Defendant has also submitted proposed *voir dire* questions related to pretrial publicity.  [DN 82, PageID # 341-342.]

**MEDIA**

1. To what extent, if any, have you read or heard any publicity, news reports, or listened to any podcast relating to this trial or the defendant?

2. Is there anything that you have read or heard that would cause you to form an opinion as to the guilt or innocence of the defendant or your ability to be fair and impartial to either the government or the defendant?

3. Will you be able to set aside anything you may have read or heard and judge the case fairly and impartially based on the evidence and the law as the judge instructs you?

**COOPERATING WITNESS & UNDERCOVER ACTIVITIES**

4. Some of the audio and video evidence obtained by the law enforcement agencies involved in this case was obtained through the use of a cooperating witness working with law enforcement agents. This is a lawful investigative technique. Do you have any views about the use of this lawful technique that would make it difficult for you to be fair and impartial in this case?

5. This case involves the use of an FBI agent who was working undercover.  This is a lawful investigative technique. Do you have any views about the use of this lawful technique that would make it difficult for you to be fair and impartial in this case? Do you feel that there is something wrong with law enforcement agents using this technique as part of a criminal investigation?

6. During this trial you will hear testimony from an FBI agent who acted in an undercover capacity. That is, he assumed a fictitious identity and had phone conversations and exchanged text messages with the defendant while employing that fictitious identity.

7. Do you have any personal feelings about the testimony of a law enforcement officer who worked undercover using a fictitious identity?  Do you thin there is something unfair about this lawful investigative technique?

8. Do you have any personal feelings about law enforcement's use of video recordings made without the defendant's knowledge that would prevent you from fairly considering the evidence in this case?

9. Do you have any opinions about law enforcement use of ruses or deception to investigate criminal activity that would make it difficult for you to serve as a juror in this case?

10. Do you have any opinions about law enforcement use of cooperating witnesses to investigate criminal activity that would make it difficult for you to serve as a juror in this case?

The Defendant filed proposed *voir dire* questions.  [DN 82].  The United States objects to Questions 20, 21, and 31, and can address these objections either through a motion *in limine* or at the final pretrial conference on November 16, 2023.

<div style="margin-left: 40%;">

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

*Marisa J. Ford*
Marisa J. Ford
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5911
Marisa.ford@usdoj.gov

</div>