UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                                    CRIMINAL ACTION NO. 3:22-CR-58-DJH

STEPHANIE M. RUSSELL                                                         DEFENDANT

**UNITED STATES RESPONSE TO DEFENDANT'S
MOTION TO EXCLUDE REBUTTAL TESTIMONY**

Comes the United States, by counsel, for its response to the motion of the Defendant to exclude proposed rebuttal testimony as untimely. [DN 100].

As Defendant observes, the proposed testimony is that of Dr. Kelli Marvin. Dr. Marvin is the forensic psychologist who performed custodial evaluations for the family court in the custody dispute between Defendant and her ex-husband. Dr. Marvin conducted extensive interviews of Russell and her ex-husband, and prepared lengthy reports. As Defendant notes, those reports have been in defense counsel's possession since August 2022, and were provided to the Defendant's expert witnesses, forensic psychiatrist Walter Butler, M.D. [Id. at PageID # 424] to use in preparation of his report.

What Defendant omits from her diatribe, however, is the actual substance of the evidence the United States advised Defendant it intended to use in rebuttal. On November 15, 2023, the United States advised Defendant it intended to call Dr. Marvin in rebuttal to testify:

Despite the multitude of child abuse allegations made by Russell, there is no medical evidence that [the Defendant's ex-husband] is engaging in abusive behavior. In fact, Russell had engaged in emotional abuse of the subject child … which has been ongoing since 2018. Specifically, videos and audio recordings downloaded [seemingly,

1

from the cloud] and/or stored on mother's cell phone, which was seized by law enforcement/CACU indicate the following:

- Respondent Russell induced distress in the subject child … by making a series of communications, over time, that his sibling is unsafe in the care of petitioner. Over a period of time, [the child] is made upset by the respondent until such time he engaged in an uncontrolled, violent tantrum, punctuated by screams and hysterical, loud crying.

- Video/audios are present that indicate that respondent Russell rehearses with the subject child … until an allegation[s] of sexual abuse is generated.

- In a series of recordings, duplicate conversations are taped. During one of the versions of the conversations, the subject child … is talking and then pauses. The respondent, or someone present with the respondent, with sound amplification provided by CACU/LMPD, can be heard whispering "c'mon" to the child during the pause in his conversation – the conclusion of [LMPD CACU] and the undersigned is that the child is likely being prodded to generate an allegation of abuse against the father consistent with the allegations in audio/video tapes generated in the same timeframe.

- Audio recordings establish that respondent Russell interrogated this child about his time in his father's care. For example, on 8/29/2018: "Can u talk to me about Rick's house? … Can you take your paccy out of your mouth and talk to me about Rick's house? …. Did he let you watch TV? What did you watch on TV? What did you watch on TV? What [did you] watch on TV? What did you watch on TV?' Indeed, in one short exchange, mother asks child 8 times what he watched on TV at father's house.

- Numerous audio recordings demonstrate that the respondent makes negative comments about father directly to the child …, the purpose of which is intended to damage the father in the eyes of this child.

- Audio recordings capture the respondent speaking to the father in a hostile and accusatory tone in the presence of the children; on one occasion, she makes clear to the verbal child … that the father is unconcerned with "[the children's] life or death"; recordings of the respondent's statements make evident that father is stupid, incompetent, and even dangerous.

- Written statements from staff at Sacred Heart, where the subject child … attends preschool, document teachers' observations that the mother has led [the child] to make abuse allegations against the father.

The United States advised Defendant that Dr. Marvin may be called to rebut Dr. Butler's anticipated testimony that:

> We must remember that Dr. Russell began displaying this decompensated thinking and behavior in the context of a contested divorce when **she believed her two children had been neglected or abused by her then estranged husband**. Her behaviors and thinking during the Family Court divorce case and thereafter decompensated along the pathways identified in Dr. Harper's testing report in the manner that she was pre-disposed to. This decompensation in thinking and the disturbances in her behaviors deteriorated to the point of a delusional psychosis under increasing intensities of stress and distress related to a very contentious custody battle in which she saw her husband as dangerous to her children.
>
> Dr. Harper noted that based on testing results, Dr. Russell's delusional thinking and reckless behaviors arose from her **self-perceived need to protect her children** and crossed the threshold into psychotic thinking as predicted by the psychological testing results.
>
> In her disturbed state of mind, [the Defendant] regressed into a kind of psychotic "road rage state of mind." While the normal elements of life and work were superficially maintained, in the context of dealing with the issues relating to her estranged – later divorced - husband and her two young children, Dr. Russell became profoundly delusional and obsessively fixated. Her thoughts and behaviors were rageful, distorted from reality, delusional and psychotic. Within the context of this altered internal reality of protracted "road rage" psychosis, **her behavior became singularly focused and obsessively goal directed in compelling that she protect her children at all costs.** (emphasis added).

Defendant has introduced the notion of sexual abuse to one of her minor children as a defense to her efforts to hire a hitman to execute her ex-husband. While Dr. Marvin is the type of witness who would typically be characterized as an expert witness, contrary to Defendant's assertion, the United States does not intend to elicit "complex and specialized psychiatric testimony" from her at trial. [DN 100, Page ID# 428]. The statement that "there is no medical evidence that [the Defendant's ex-husband] is engaging in abusive behavior" is not a statement of opinion. It is a statement of fact. It is a fact that has been adjudicated by the family court, and the Defendant should be estopped from relitigating that claim in federal court. The statement that "video/audios are present that indicate that respondent Russell rehearses with the subject

3

child… until an allegation[s] of sexual abuse is generated" is not expert opinion testimony. It is a statement of fact and one that was observed not just by Kelli Marvin, but by the investigator with LMPD's Crimes Against Children Unit.

The primary case cited by Defendant, *United States v. Moya*, 748 Fed. Appx. 819 (10th Cir. 2018), in support of her argument that Dr. Marvin should be barred from testifying in rebuttal is distinguishable. In *Moya*, the United States disclosed two weeks before trial that it intended to call a toxicologist as an expert witness during its case-in-chief to testify as to a victim's cause of death. That is not the case here.

Russell has signaled that she intends to mount a defense that she reasonably believed that her children were being physically or sexually abused by her ex-husband and she acted in a state of extreme emotional distress in hiring someone to execute him. The family court found as a matter of fact that there was no evidence the victim was abusing or neglecting his children. If Russell chooses to go forward and put her mental state in issue at trial, Dr. Marvin's testimony merely summarizes certain salient facts already adjudicated to a final judgment in the family court that directly contradict Russell's argument. In short, one cannot reasonably believe that she was acting "to protect her children at all costs" when she has been found, as a matter of fact, to have been coaching her child to make false allegations of abuse.

Respectfully submitted,

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

/s/ *Marisa J. Ford*
Marisa J. Ford
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5930