UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                        PLAINTIFF

v.                                                                CRIMINAL ACTION NO. 3:22-CR-58-DJH

STEPHANIE M. RUSSELL                                                        DEFENDANT

### UNITED STATES OBJECTIONS TO DEFENDANT'S PROPOSED SUBSTANTIVE JURY INSTRUCTIONS

Defendant has submitted proposed substantive jury instructions for the two counts of the Second Superseding Indictment in this case. Because Defendant's proposed instructions significantly misrepresent the law applicable to charges under 18 U.S.C. § 1958 (use of a facility in interstate commerce in commission of murder-for-hire) and 18 U.S.C. 2261A(2)(B) (stalking), the United States submits the following objections to Defendant's proposed substantive jury instructions.

**I.   Defendant is not entitled to a jury instruction on the lesser included offense of manslaughter under Kentucky state law.**

Count 1 of the Second Superseding Indictment charges Defendant with a violation of 18 U.S.C. § 1958 which provides, in pertinent part:

> Whoever, travels in or causes another to travel…in interstate…commerce, or uses or causes another…to use the mail or any facility of interstate commerce…, **with intent that a murder be committed in violation of the laws of any State**…as consideration for the receipt of, anything of pecuniary value,…shall be… imprisoned for not more than ten years….(emphasis added).

The crime of murder under Kentucky state law is codified in K.R.S. 507.020. The statute includes an affirmative defense – the existence of the state of mind of extreme emotional

1

disturbance reduces the offense of murder to the lesser-included offense of manslaughter in the first degree. The EED defense, as it appears in Kentucky state law, specifically provides:

> …[I]n any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.

KRS. 502.070(1)((a).

Russell has included an affirmative defense recognized under Kentucky state law in her proposed jury instruction for the violation of a federal statute, 18 U.S.C. § 1958. Russell is not charged with murder under Kentucky state law, however. Rather, she is charged with using a facility in interstate commerce to hire another person to commit the crime of murder. The affirmative defense under state law isn't available to Russell in defense of the charged federal crime, and no instruction should be given to the jury which incorporates the affirmative defense from KRS 502.070(1)(a).

An analogous federal statute is the one proscribing violent crimes in aid of racketeering (VICAR). Title 18, United States Code, Section 1959 provides, in part:

> Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity,…murders,…or threatens to commit a crime of violence against any individual *in violation of the laws of any State* or the United States…(emphasis added).

The language of the murder-for-hire statute referencing the laws of any State is identical to the VICAR statute where courts have held that the gravamen of the statute is a violation of federal law and, therefore, reference to "violation of the laws of any state" in the statute merely defines the unlawful conduct constituting the predicate offense, and the statute does not incorporate the substantive requirements of state law or a state's evidentiary rule underlying a murder offense.

*United States v. Diaz,* 176 F.3d 52, 100 (2d Cir. 1999)("the racketeering statutes are not meant to incorporate state procedural and evidentiary law; rather, references to state law in these statutes merely serve a definitional purpose, that is, to identify generally the kind of conduct made illegal by the federal statute.")

In *United States v. Petrucelli*, 97 Fed. Appx. 355 (2d. Cir. 2004), the defendant, like Russell here, argued that that the jury should have been given the option of returning a manslaughter verdict because manslaughter would have been a lesser included offense if he had been tried for murder in a New York state court. Again, the Second Circuit held Petrucelli's argument was foreclosed by *United States v. Diaz*, 176 F.3d 52, 101 (2d Cir. 1999) where the appellant argued, as Petrucelli did, that manslaughter should be available to the jury because the predicate murder offense was charged under state law, and state law provided for manslaughter as a lesser included offense to murder. *Diaz* rejected this argument on the ground that murder in aid of racketeering was "a distinct substantive offense" from murder under state law and was "not simply a federalized version of the state crime." *Id.*

Russell wants to offer evidence of a non-insanity mental state in her defense. She may do so under several affirmative defenses recognized under federal law in the Sixth Circuit. But rather than incorporating a state law affirmative defense, if Russell offers proof of her mental state at trial sufficient to warrant a jury instruction one of those recognized by the Sixth Circuit in its pattern criminal jury instructions, for example for coercion/duress (6.05), or justification (6.07), should be given.

Of course, the entire issue may be moot if the Defendant exercises her right under the Fifth Amendment and chooses not to testify at trial. The only way Russell can assert her mental

state as a defense is if she testifies at trial. She cannot offer testimony, even thru her expert witnesses, of out-of-court statements that Russell believed her ex-husband was abusing their children. These out-of-court statements would be inadmissible hearsay under Fed. R. Evid. 802.

> II. **A conviction under the stalking statute does not require the United States to prove Defendant made a threat of death.**

Defendant has tendered definitions to the Stalking charge that define "intimidate," and "harass" to require that a victim be put in fear of death or bodily injury, or an act of unlawful violence. [DN 92-1, PageID # 379.]

**A. Prior versions of the cyberstalking statute**

The interstate stalking statute was originally passed in 1996, as part of the Violence Against Women Act. *See* National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 104-201, 110 Stat. 2422, 2655 (1996). It is codified at 18 U.S.C. § 2261A. From September 23, 1996 to October 27, 2000, § 2261A only proscribed stalking based on interstate travel "with intent to injure or harass another person." 18 U.S.C. § 2261A (1996). Since October 28, 2000, § 2261A has included two provisions: Subsection 1 (the interstate stalking provision), and Subsection 2 (the cyberstalking provision).

Prior to January 2006, § 2261A(2) proscribed the use of "the mail or any facility of interstate or foreign commerce to engage in a course of conduct that places [a] person in reasonable fear of the death of, or serious bodily injury to, [that person, an immediate family member of that person, or the spouse/intimate partner of that person]." 18 U.S.C. § 2261A(2) note (2006 Amendments) (2013). The statute further required that the defendant have acted with the intent "to kill or injure," *id.* § 2261A(2)(A), or to place a person in reasonable fear of the death of, or serious bodily injury to, that person, an immediate family member, or a

4

spouse/intimate partner. *Id.* § 2261A(2)(B). Finally, the statute required that the victim be located "in another State or tribal jurisdiction, or within the special maritime and territorial jurisdiction of the United States." *Id.*

Thus, this original version of § 2261A(2) was limited as to the criminal intent (that is, "to kill or injure" or "to place a person in another State... in reasonable fear of the death of, or serious bodily injury to [that person, an immediate family member of that person, or the spouse/intimate partner of that person]"). *Id.* § 2261A(2)(A) & (B). It also did not protect against any harm other than fear of death or physical injury. Both subsections (A) and (B) further required that the perpetrator and the victim be located across certain geographical boundaries (that is, state jurisdiction, tribal jurisdiction, or special maritime and territorial jurisdiction).

From January 5, 2006 to September 30, 2013, § 2261A(2) read:

> Whoever—
>
> * * *
>
> **(2)** with the intent—
>
>> **(A)** to kill, injure, harass, or place under surveillance with intent to kill, injure, *harass, or intimidate, or cause substantial emotional distress to* a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States; or
>>
>> **(B)** to place a person in another State or tribal jurisdiction, or within the special maritime and territorial jurisdiction of the United States, in reasonable fear of the death of, or serious bodily injury to—
>>
>>> **(i)** that person;
>>>
>>> **(ii)** a member of the immediate family (as defined in section 115) of that person; or
>>>
>>> **(iii)** a spouse or intimate partner of that person;
>
> uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial

> emotional distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to, any of the persons described in clauses (i) through (iii) of subparagraph (B);
>
> shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A(2) note (2013 Amendments) (2013).

This version of § 2261A(2) substantially expanded the statute's coverage in a number of ways. First, the mens rea element was broadened to include an intent "to... harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to" the intended victim. *Id.*

Second, the instrumentalities of the crime were expanded to include "any interactive computer service."

Third, in terms of the requisite harm, causing "substantial emotional distress" to the victim was added to the prior requisite harm of placing a person "in reasonable fear of the death of, or serious bodily injury to" the victim or related persons. 18 U.S.C. § 2261A(2) note (2013 Amendments) (2013). This significantly expanded the protection of victims who could be harassed, embarrassed, or ***defamed*** to the point of suffering severe, non-physical injury, even if the perpetrator did not place them in fear of injury or death to themselves or a loved one.

Though much broader than its prior iteration, this version of § 2261A(2) still required the perpetrator and the victim to be located in different jurisdictions when the proscribed "course of conduct" occurred. Thus, the stalker who used a social networking application or email/instant message service from another state could be prosecuted under § 2261A(2), but the stalker who did the same from across the university campus, down the office corridor, or elsewhere within a state could not. As a result, the statute offered no protection to victims of cyberbullying, extortion, harassment, or threats perpetrated by those geographically close to them. *See,*

*e.g.*, *United States v. Borker*, 2011 WL 1630344, at * 1 (S.D.N.Y. Apr. 28, 2011) (dismissing cyberstalking count "because 18 U.S.C. § 2261A 'requires that the perpetrator and the victim be situated in different states' ").

### B. The current stalking statute

The stalking statute as amended in 2013 is a much broader and more powerful tool than its predecessors. Regardless of the location of the defendant or the victim, it can be used against cyberbullying, extortion, defamation, threats, spying, and even murder, death or serious bodily injury resulting from digital harassment, intimidation, or surveillance.

The new § 2261A(2), which became effective on October 1, 2013 and which has been substantially rewritten, provides:

> Whoever--
>
> * * *
>
> > **(2)** with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
> > > **(A)** places that person in reasonable fear of the death of or serious bodily injury to a person described in clause (i), (ii), or (iii) of paragraph (1)(A); or
> > >
> > > **(B)** causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A(2) (2013).

The new § 2261A(2) updated its predecessor in three key ways. First, and most significantly, it eliminated the requirement that the perpetrator and the victim be located in separate jurisdictions. Section 2261A(2) now enables the Government to prosecute a wide range of stalking conduct where the perpetrator and victim are in relatively close proximity. Such cases could range from those resulting in harassment causing emotional distress or fear of death or injury, to those involving the use of digital technology to commit premeditated murder.

Second, the new § 2261A(2) further expands the types of instrumentalities that may be used to violate the statute. In particular, § 2261A(2) adds two new types of technologies to those that are covered: "electronic communication service[s]" and "electronic communication system[s] of interstate commerce."

Third, the new § 2261A(2) expressly applied to conduct that "attempts to cause, or would be reasonably expected to cause" substantial emotional distress. When proceeding under an emotional distress theory, proof that a victim actually suffers substantial emotional distress is no longer required. This change should allow law enforcement to act more quickly on cyberstalking allegations without having to wait for a victim to actually suffer severe emotional distress or worse.

Reported cases often deal with the intent to harass, intimidate, and to place under surveillance. The terms "harass" and "intimidate" are to be given their ordinary meanings, which "can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning." *United States v. Bowker*, 372 F.3d 365, 381 (6th Cir. 2004) (quoting *Staley v. Jones*, 239 F.3d 769, 791-92 (6th Cir. 2001)). To "harass" can be defined as "to disturb persistently; torment." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 870 (2d ed.1996). To

"intimidate" can be defined as "to make timid; fill with fear." *Id.* at 1000. Courts generally do not labor to find sufficient evidence of intent to harass or intimidate. *See, e.g.*, *United States v. Petrovic*, 701 F.3d 849, 860 (8th Cir. 2012) (finding intent to harass and intimidate where defendant posted a Web site displaying sexually explicit images of victim taken during their relationship and sent postcards to her ex-husband, employer, family members, and local businesses regarding the Web site); *United States v. Al-Zubaidy*, 283 F.3d 804, 809 (6th Cir. 2002) (intent may be inferred from totality of circumstances).

Contrary to the proposed jury instruction submitted by Russell, under the current iteration of the stalking statute, the United States has a lighter burden as to the final element of the crime- the effect of the defendant's actions on the victim. Under § 2261A(2)(A) and (B), the defendant's course of conduct must either:

1. Place the targeted victim in reasonable fear of death or serious bodily injury, or
2. Cause, attempt to cause, or would reasonably be expected to cause substantial emotional distress to the targeted victim or to an immediate family member, spouse, or intimate partner of the victim. *See id.* 8 § 2261A(2)(A),(B).

Under the current statute, the United States still can prove that reasonable fear of death/injury resulted from the defendant's actions. Alternatively, and even more broadly, the Government can prove that the defendant's actions:

1. Actually caused
2. Attempted to cause, or
3. Would reasonably be expected to cause

substantial emotional distress. Unlike under prior law, whether the defendant tries or succeeds in causing emotional distress is no longer determinative, so long as a reasonable person would have been expected to suffer such.

For the reasons set forth above, Russell's tendered jury instruction defining "intimidate" as putting in fear of death or serious bodily injury, and "harass" to require a "true threat" to commit an act of violence against the victim is an inaccurate statement of the law.  Accordingly, the United States objects to the definitions tendered by Defendant with its proposed substantive jury instruction for Count 2 of the Second Superseding Indictment.

        Respectfully submitted,

        MICHAEL A. BENNETT
        UNITED STATES ATTORNEY

        */s/  Marisa J. Ford*
        Marisa J. Ford
        Assistant United States Attorney
        717 West Broadway
        Louisville, Kentucky 40202
        (502) 582-5930