UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ELECTRONICALLY FILED**

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                          CRIMINAL ACTION NO. 3:22-CR-00058-DJH

STEPHANIE RUSSELL                                                   DEFENDANT

**STEPHANIE RUSSELL'S RESPONSE TO
GOVERNMENT'S OBJECTIONS TO
HER PROPOSED JURY INSTRUCTIONS**

Defendant Russell has offered jury instructions for the Court's use when advising the jurors of the elements of the federal statutes prohibiting murder for hire (18 U.S.C. § 1958) and stalking (18 U.S.C. § 2261A). (Russell Revised Jury Instr., R. 92-1, Page ID # 372-382.) The government objects to aspects of the instructions for each statute. The prosecution contends, first, that the Court should depart from the Kentucky law defining murder and omit any mention in the murder-for-hire instruction of the statutory principle that extreme emotional disturbance precludes a finding of guilt under state law; second, the government argues that Ms. Russell's recommended definitions of "intimidate" and "harass" are too strict for defining the elements of the stalking

statute. Ms. Russell's proposed instructions are well-founded in law; as demonstrated below, the government's objections are not.

1. **The instruction for 18 U.S.C. § 1958 must inform the jury of Kentucky's entire statutory definition of murder, including the element regarding emotional distress.**

To be found guilty under the murder-for-hire statute, a defendant must act "with intent that a murder be committed in violation of the laws of any State...." § 1959(a)(1). The latest superseding indictment, like its predecessors, faithfully adheres to this statutory directive by alleging that Ms. Russell acted "with intent that the murder of R.C. be committed in violation of the laws of the Commonwealth of Kentucky...." (R. 94, Page ID # 396.)

A person commits murder in violation of the laws of Kentucky when:

> With intent to cause the death of another person, he causes the death of such person ...; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime....

KRS 507.020(1)(a).  Simply put, "once evidence of EED is introduced, the *absence thereof becomes an element of the offense of murder*."  *Coffey v. Mes*ser, 945 S.W.2d 944, 946 (Ky. 1997) (emphasis added).

Ms. Russell's proposed instruction for the § 1958 offense calls for the government to prove that "the defendant [used a facility of interstate commerce] with the intent that a murder be committed in violation of the laws of Kentucky," (Russell Revised Jury Instr., R. 92-1 pg. 1, Page ID # 372), and advises the jury that "[a] person commits murder as defined by Kentucky law when he or she: (1) causes the death of another person, and (2) does so intentionally and not while acting under the influence of extreme emotional disturbance." (*Id.* at pg. 3, Page ID # 374.)  The government's objection does not attempt to argue that the latter instruction is incorrect in any detail; indeed, the proposed language is what any trial court in Kentucky would read to a Kentucky jury in a murder prosecution.  *Cf.* William S. Cooper, *Kentucky Instru. to Juries (Criminal)* § 3.21 (1993).

Rather than contend that the proposed instruction wrongly describes Kentucky's law, the government argues that the language amounts to a request for a lesser included offense and, as such, it is improper in a § 1958 prosecution.  (Obj., R. 103 pg. 2, Page ID # 442.)  This claim clearly misunderstands Kentucky law: as noted a moment ago, "once evidence of EED is introduced,

3

the absence thereof becomes an element of the offense of murder." *Coffey*, 945 S.W.2d at 946.

The government's argument also misunderstands § 1958. The Sixth Circuit has observed that "Section 1958(a) is a jurisdictional statute allowing federal prosecutors to bring specific types of state murder cases into federal court." *United States v. Johnson*, 443 F.App'x 85, 97 (6th Cir. 2011). Consistent with this formulation, district courts in the Sixth Circuit have routinely used state law to define "murder" in murder-for-hire cases, and the Court of Appeals has regularly noted this with approval. *See United States v. West*, 70 F.4th 341, 345 (6th Cir. 2023) (district court's instructions "defined 'murder' under Michigan law"); *United States v. Watson*, 852 F.App'x 164, 169 (6th Cir. 2021) (district court "provided the jury with the Michigan Model Criminal Jury Instructions' definition for first degree murder"); *United States v. Acierno*, 579 F.3d 694, 699 (6th Cir. 2009) (elements of offense included "intent that a murder be committed, in violation of the laws of Ohio"). The Fourth Circuit put the point with great clarity: "In order for the jury to decide whether [the defendant] intended that a murder that violated state law be committed, an instruction on the elements of murder under state law [is] not only appropriate but required." *United States v. Cottone*, No. 90–5328, 1991 WL 34996 at *3 (4th Cir. March 19, 1991).

The government's objection does not attempt to address these cases (all of which were cited in Ms. Russell's revised pretrial memorandum (*see* R. 91 pg. 3, Page ID # 366)); nor does it cite any other case law interpreting § 1958. Rather, the government's pleading relies on a Second Circuit case construing a different statute, 18 U.S.C. § 1959, and even this case is of dubious worth: it has been strongly criticized in later Second Circuit opinions, and the Department of Justice has advised prosecutors to apply a different rule.

The prosecution's chosen case is *United States v. Diaz*, 176 F.3d 52 (2nd Cir. 1999), where the court observed:

> Murder under [§ 1959(a) (VICAR) and § 1962(c) (RICO)] … is not simply a federalized version of the state crime. Rather, it is a distinct substantive offense that requires proof of its own particular elements. As such, under the elements test, manslaughter is not a lesser included offense of RICO and VICAR murder under federal law. Therefore, the district court properly declined to provide a lesser-included offense instruction for manslaughter.

*Id.* at 101 (cited in Obj., R. 103 pp. 2-3, Page ID # 442-443)). Just a year later, though, the Second Circuit examined a racketeering prosecution where the trial judge had refused to define the state law elements of the predicate crimes, and the court held that *Diaz*'s seeming endorsement of this choice was deeply flawed. *United States v. Carrillo*, 229 F.3d 177, 182-186 (2nd Cir. 2000).

Addressing the government's argument, based on *Diaz* and an earlier Second Circuit case (*United States v. Bagaric*, 706 F.2d 42 (2nd Cir. 1983)), that "generic definitions of the crimes suffice" for a RICO prosecution, *Carrillo*, 229 F.3d at 182, the Second Circuit observed:

> If the conduct proved at trial did not satisfy the elements of the offense as defined by state law, a jury could not find that the defendant had committed the state law offense charged as a predicate act of racketeering. Likewise, even assuming evidence from which a jury *could* find a violation of state law, if the defendant's acts as found by the jury did not include all the essential elements of the state law offense, by definition, no state offense would have been found.

*Id.* at 183 (emphasis in original). The Second Circuit then offered a hypothetical strikingly similar to Ms. Russell's situation. "Assume a defendant charged with a RICO violation based on a predicate racketeering act of murder," the court began. *Id.* at 184. Suppose, too, that "the evidence includes testimony that could support the requisite state of mind; the defendant contests it and asserts he acted in self-defense; the jury is instructed simply to find whether the defendant committed the offense of 'murder,' but is not instructed as to the requisite state of mind or the law respecting self-defense; the jury finds that the defendant committed the predicate act of murder and is guilty on the RICO charge." *Ibid.* In such a situation, the Second Circuit explained, "[t]here would be

6

no way for the reviewing court to know whether the jury had found facts constituting murder. Affirming such a conviction would be seriously problematic," the court continued, "because the defendant's actions, as found by the jury, might not constitute murder. An appellate court would have no way of knowing what the jury found the defendant's state of mind to be." *Ibid.* Not surprisingly, said the Second Circuit, "district judges conventionally instruct juries on the elements of the state law offenses charged as predicate acts. We think in most circumstances that is the best practice." *Id.* at 184-185.

The *Carrillo* opinion thus urged district courts in the Second Circuit to shun requests for "generic description[s]" of state crimes and opt instead to "giv[e] the jury the elements in full." *Id.*, 229 F.3d at 185. "Declining to instruct the jury on the elements of state law offenses charged as predicate acts under RICO, VICAR, and similar statutes, can prejudice the defendant," the Second Circuit advised. *Ibid.* "The safer course is for trial judges to instruct the jury on the elements of the predicate offenses." *Ibid.*

The Department of Justice eventually counseled RICO prosecutors to do exactly what the *Carrillo* opinion recommended. In a RICO case before the court for the Eastern District of Michigan, the trial judge confirmed that "the Government recognizes it must still prove that the crime of violence violated all of the elements of the predicate state-law offense beyond a

7

reasonable doubt at trial, and that the jury must be instructed on those elements as well." *United States v. Mills*, 378 F.Supp.3d 563, 575 (E.D. Mich. 2019).  The prosecution's admission on this point cited the *Carrillo* opinion, *see ibid.*, and the district court added that "[t]he Government's position is consistent with the recommendations of the Staff of the Organized Crime and Racketeering Section of the U.S. Department of Justice." *Id.* n.8 (citing *Violent Crimes in Aid of Racketeering 18 U.S.C. § 1959: A Manual for Federal Prosecutors* at 25 (Dec. 2006)).  The district court quoted the DOJ manual: "[W]hen a Section 1959 charge is based upon a violation of state or federal law that satisfies the generic definition of the predicate violent crimes listed in Section 1959, the government must prove, and the jury must be instructed on, all the requisite elements of that state or federal offense." *Ibid.*

  The government's objection in our case urges the Court to give a generic (and frankly inauthentic) definition of "murder" when it instructs the jury.  This runs counter to case law regarding § 1958 in the Sixth Circuit, and likewise deviates from case law regarding § 1959 in the Second Circuit.  There is no good reason for the Court to adopt the government's unsupported position.

* * * * *

  The prosecution's discussion of the § 1958 jury instruction concludes with a somewhat extraneous comment that "[t]he only way Russell can assert her mental state as a defense is if she

testifies at trial. She cannot offer testimony, even through her expert witnesses, of out-of-court statements that Russell believed her ex-husband was abusing their children." (Obj., R. 103 pp. 3-4, Page ID # 443-444.) The government's reasoning on this claim is that "[t]hese out-of-court statements would be inadmissible hearsay under Fed. R. Evid. 802." *Ibid.* Suffice it for present purposes to say that the government's claim is plainly wrong: "Rule 801(c) of the Federal Rules of Evidence defines hearsay as 'a statement … offered in evidence to prove the truth of the matter asserted.' Where the statement is offered to prove the state of mind of the declarant, that statement is not being offered for the truth of the matter asserted." *United States v. Mayhew*, 380 F. Supp. 2d 961, 971 (S.D. Ohio 2005) (citing *United States v. Williams*, 952 F.2d 1504, 1518 (6th Cir.1991) and *Anthony v. DeWitt*, 295 F.3d 554, 563 (6th Cir. 2002)). "By definition, hearsay is offered to prove the truth of the matter it asserts. 'An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.'" *In re LTV Steel Co., Inc.*, 297 B.R. 509, 513 (Bankr. N.D. Ohio 2003) (citing Fed. R. Evid. 801(c), quoting *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir.1993)).

9

2.  **First Amendment principles require the use of narrow definitions of "intimidate" and "harass" in the jury instructions for stalking.**

The federal crime of stalking requires proof that the defendant acted "with the intent to … harass [or] intimidate" the victim. 18 U.S.C. § 2261A(2). Ms. Russell's proposed jury instructions offer these definitions of "intent to harass" and "intimidate":

> Intent to "intimidate" means to act with the specific intent or purpose of putting a person in fear of death or bodily injury.
>
> Intent to "harass" means to act with the specific intent or purpose of causing distress by a "true threat…."

(Russell Revised Jury Instr., R. 92-1 pg. 8, Page ID # 379 (citing *United States v. Yung*, 37 F.4th 70, 80 (3rd Cir. 2022)). A "true threat" is defined as "a serious threat expressing an intent to commit an act of unlawful violence against the person…." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (definition of "true threat").

In its recent *Yung* decision, the Third Circuit explained carefully and persuasively that the narrow definitions quoted above are mandated by the Constitution. Speaking of the statutory terms "intent to harass or intimidate," the court explained that "[i]f we read those words broadly, the law will reach protected speech." *Id.*, 37 F.4th at 78. The verb "harass," for instance, can be defined broadly to mean "to vex, trouble, or annoy continually or

10

chronically"; to "intimidate" can "mean broadly 'to render timid, inspire with fear; to overawe, cow.'" *Ibid.* (citations omitted). "[C]riminalizing that speech would collide with the First Amendment," the Third Circuit explained: "The First Amendment protects at least some speech that persistently annoys someone and makes him fearful or timid." *Ibid.* With this concern in mind, the court held that "[t]o 'intimidate,' ... a defendant must put the victim in fear of death or bodily injury. And to 'harass,' he must distress the victim by threatening, intimidating, or the like." *Id.* at 80. "That reading limits intent to harass to criminal harassment, which is unprotected because it constitutes true threats or speech that is integral to proscribable criminal conduct," *ibid.* (citation and punctuation omitted), and "[i]t also limits 'intent to intimidate' to ... a form of true threats or speech integral to a crime." *Ibid.* (citations omitted). "Those narrow readings ensure that protected speech largely escapes the law's net," the court concluded.

The government's exegesis of § 2261A's evolution (Obj., R. 103 pp. 4-8, Page ID # 444-448) would find more traction if there were no First Amendment principles to consider. As it is, however, Congress's intent to broaden the statute cannot override the First Amendment's countervailing mandates. The government's objection fails to come to terms with this inescapable

11

fact, and thus its argument for broader definitions of "harass" and "intimidate" must be rejected.

> Respectfully submitted,
>
> *Michael R. Mazzoli*
> Scott C. Cox
> Michael R. Mazzoli
> Scott Coleman Cox, II
> COX & MAZZOLI PLLC
> 600 West Main Street, Suite 300
> Louisville, Kentucky 40202
> 502-589-6190
> MMazzoli@coxandmazzoli.com
>
> and
>
> David B. Mour
> Law Office of David B. Mour
> 513 S. Second Street
> Louisville, KY 40202
> 502-473-6464
> dmour@louisvillefirm.com
>
> Attorneys for Defendant Russell

## CERTIFICATE OF SERVICE

On December 4, 2023, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

> *Michael R. Mazzoli*
> Michael R. Mazzoli