UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                                                      Plaintiff,

v.                                                                                          Criminal Action No. 3:22-cr-58-DJH

STEPHANIE M. RUSSELL,                                                                                          Defendant.

\* \* \* \* \*

**MEMORANDUM AND ORDER**

Defendant Stephanie M. Russell is charged with use of interstate commerce facilities in the commission of murder-for-hire in violation of 18 U.S.C. § 1958 and stalking in violation of 18 U.S.C. § 2261A(2)(B). (Docket No. 95) The United States objects to Russell's proposed jury instructions defining the elements of each offense. (D.N. 103) Specifically, the United States objects to Russell's attempt to include instructions on extreme emotional disturbance in the murder-for-hire context (D.N. 103, PageID.441-44) and to limit the scope of stalking to those actions that threaten physical violence. (D.N. 103, PageID.444) Russell responded, defending both instructions. (D.N. 111) After careful consideration, the Court will sustain the government's objections for the reasons explained below.

**I.**

The federal murder-for-hire statute criminalizes using a facility of interstate commerce "with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value." § 1958(a). The second superseding indictment alleges that Russell intended that a murder be committed in violation of the laws of the Commonwealth of Kentucky. (D.N. 95, PageID.400)

> Under Kentucky law,
>
> > [a] person is guilty of murder when:
> > (a) With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.

Ky. Rev. Stat. § 507.020(1).

Russell proposed a jury instruction that defines murder as causing the death of another person "intentionally and not while acting under the influence of extreme emotional disturbance." (D.N. 92-1, PageID.374)  The United States objects to this instruction, arguing that the murder-for-hire statute's reference to murder in violation of the laws of any state does not import substantive defenses to murder recognized under state law but not federal law. (D.N. 103, PageID.442)  Russell responds that the absence of extreme emotional disturbance is an element of the Kentucky murder statute and so an intentional killing committed under extreme emotional disturbance would not constitute murder according to Kentucky law. (D.N. 111, PageID.471)

Lost in the back-and-forth between the parties on the availability of an extreme-emotional-disturbance instruction is the fact that Russell is not charged with committing murder but with using a facility of interstate commerce with intent that murder be committed. (D.N. 94, PageID.396; D.N. 92-1, PageID.372)  Russell's proposed jury instructions accurately describe the intent required to be convicted under 18 U.S.C. § 1958: "intent that a murder be committed in violation of the laws of Kentucky." (D.N. 92-1, PageID.372)  Under Russell's proposed instruction and the language of the murder-for-hire statute, the government must prove that Russell intended for a third party to violate Ky. Rev. Stat. § 570.020, not that she herself violated the

Kentucky murder statute.[1]  *See* § 1958.  Although Russell cites several Sixth Circuit cases to support her contention that the jury must be instructed on the elements of murder under state law, none stands for the proposition that the government must prove that a person who attempted to hire a hitman committed murder under state law.  *See, e.g.*, *United States v. Watson*, 852 F. App'x 164, 169 (6th Cir. 2021) (holding that district court correctly gave the basic definition of murder under Michigan law and appropriately omitted an instruction that an element of the offense was "that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime"); *United States v. Acierno*, 579 F.3d 694, 699 (6th Cir. 2009) (holding that the government was required to prove that the defendant acted with the "intent that a murder be committed, in violation of the laws of Ohio");  *United States v. Cottone*, No. 90-5328, 1991 WL 34996 at *3 (4th Cir. March 19, 1991) ("In order for the jury to decide whether [the defendant] intended that a *murder that violated state law be committed*, an instruction on the elements of murder under state law [is] not only appropriate but required." (emphasis added)).  At most, those cases indicate that the Court should instruct the jury on the elements of murder because the jury must decide whether Russell meant for a purported hitman to commit each of those elements.  *See Acierno*, 579 F.3d at 699.

A survey of Sixth Circuit precedent reinforces this view.  The Sixth Circuit has recognized that "[t]he plain language of the statute makes clear that the evil it intended to proscribe was the interstate travel and use of facilities in interstate commerce with intent that a murder-for-hire be

---

[1]  Both parties cite case law interpreting 18 U.S.C. § 1959, the Violent Crimes in Aid of Racketeering (VICAR) statute. (D.N. 103, PageID.442; D.N. 111, PageID.473-75)  The VICAR statute only penalizes the person who commits a crime of violence in exchange for consideration from, or membership in, a racketeering enterprise.  § 1959.  It does not criminalize hiring another person to commit an act of violence.  *Id.*  Cases interpreting § 1959 therefore shed limited light on the proper instructions for a non-hitman § 1958 prosecution.

committed." *United States v. Ng*, 26 F. App'x 452, 462 (6th Cir. 2001). Following this reasoning, the Sixth Circuit has upheld instructions that require the jury to find that the defendant intended that a third party commit murder.[2] *See United States v. Watson*, 852 F. App'x 164, 169 (6th Cir. 2021) (holding that the second element of the murder-for-hire statute "requires the government to prove that [the defendant] had 'intent that a murder be committed in violation of the laws of any State or the United States'"); *see also United States v. Degan*, 229 F.3d 553, 558 (6th Cir. 2000) (affirming jury instructions that "told the jury that it must find that Degan caused Noel to travel from Mississippi to Tennessee with the intent to have Noel kill his ex-wife"). An instruction on the elements of the state murder statute is therefore appropriate only to instruct the jury on what the government must prove that Russell intended another person to do. *See Watson*, 852 F. App'x at 169; *Degan*, 229 F.3d at 558.

Because the intent required under § 1958 is the "intent that a murder be committed," extreme emotional disturbance is not a proper component of the instruction defining murder under Kentucky law in this case. The Kentucky Supreme Court has held that "[a]n instruction on murder need not require the jury to find that the defendant was not acting under the influence of extreme emotional disturbance unless there is something in the evidence to suggest that he was, thereby affording room for a reasonable doubt." *Greene v. Commonwealth*, 197 S.W.3d 76, 81 (Ky. 2006)

---

[2] The Sixth Circuit has occasionally described the intent required under the murder-for-hire statute as the intent to murder. *See United States v. Winters*, 33 F.3d 720, 721 (6th Cir. 1994) (stating that to be convicted under the murder-for-hire statute, "a defendant must act 'with intent' to murder"); *see also United States v. Hall*, 165 F.3d 29 at *3 (6th Cir. 1998) (remarking that "the intent element of the crime refers only to the defendant's intent to commit murder"). However, none of these cases addressed the question of whether the intent required is the intent to murder or the intent that a murder be committed. Instead, each case either casually referenced the intent element or observed that the statute does not require specific intent to use facilities of interstate commerce in commission of the crime. *See Winters*, 33 F.3d at 721; *Hall*, 165 F.3d at *3. In any event, the cases did not hold that the government must establish that a defendant who attempted to hire a hitman committed each of the elements of the state murder statute.

(quoting *Gall v. Commonwealth*, 607 S.W.2d 97, 109 (Ky.1980)).  Since the murder instruction serves only to define the crime that Russell allegedly intended another person to commit, any evidence of her own emotional disturbance is irrelevant.[3]  Thus, the instruction should not include any reference to extreme emotional disturbance.  *See id.*; *see also* William Cooper & Donald Cetrulo, *Kentucky Instructions to Juries, Criminal* § 3.20 (6th ed. 2022) (instructing the jury on the elements of murder without reference to the absence of extreme emotional disturbance, accompanied by commentary noting that the instruction should be used where there is no evidence that the alleged killer acted under extreme emotional disturbance).  The Court will therefore sustain the government's objection to Russell's proposed instruction defining the elements of murder under Kentucky law.[4]

---

[3] Moreover, the plain language of the Kentucky murder statute does not contemplate the application of extreme emotional disturbance beyond state prosecutions under that statute. *See* § 507.020 (providing that "a person *shall not be guilty under this subsection* if he acted under the influence of extreme emotional disturbance" (emphasis added)).

[4] The Court reaches this conclusion regardless of whether extreme emotional disturbance is an affirmative defense or whether it becomes an element of the offense once there is evidence of the defendant's emotional distress.  The Kentucky Supreme Court has provided little clarity on that issue, at one point expressly overruling precedents that interpreted extreme emotional disturbance as an element of the offense and later holding that it is an element after all. *See Greene*, 197 S.W.3d at 81 ("Admittedly, there have been some inconsistencies in our prior decisions . . . . However, our more recent opinions have categorized EED, or more properly, the absence of it, as an element of the substantive offense, rather than as a defense."); *Wellman v. Commonwealth*, 694 S.W.2d 696, 697 (Ky. 1985) ("To the extent that [earlier] cases declare absence of extreme emotional distress to be an element of the crime of murder, they are expressly overruled.").  Even those cases that characterize extreme emotional disturbance as an element of the offense require an instruction on the theory only where the evidence requires it. *See Greene*, 197 S.W.3d at 81.

## II.

Russell is also charged with stalking in violation of 18 U.S.C. § 2261A, which applies to persons who,

> with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, use[] the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress.

§ 2261A.  The United States objects to Russell's proposed instruction defining intimidation as "putting a person in fear of death or bodily injury" and harassment as acting with the specific intent to cause distress by a "serious threat expressing an intent to commit an act of unlawful violence against the person." (D.N. 92-1, PageID.379; *see* D.N. 103, PageID.444)  The government argues that the proposed instruction understates the scope of the modern version of the stalking statute, which the government claims reaches conduct that either attempts to cause or may be reasonably expected to cause substantial emotional distress. (D.N. 103, PageID.448)  Russell asserts that the definitions of harassment and intimidation are restricted to "true threats" of unlawful violence by the First Amendment. (D.N. 111, PageID.478-79 (citing *United States v. Yung*, 37 F.4th 70, 80 (3rd Cir. 2022)))

The stalking statute does not define the terms "harass" and "intimidate." *See* 18 U.S.C. §§ 2261A, 2266.  Citing a single Third Circuit case, Russell argues that the Court must nevertheless instruct the jury on narrow definitions of the terms to avoid a constitutionally overbroad interpretation of the statute. (D.N. 111, PageID.478-79 (citing *Yung*, 37 F.4th at 80))  But in *Yung*, the Third Circuit acknowledged that it was alone in holding that courts must narrow the definitions of harassment and intimidation, noting that other circuits had held that the requirement that the conduct cause at least substantial emotional distress—i.e., the results element

6

of the offense—prevents the statute from reaching protected speech.[5] *See* 37 F.4th at 76 (citing *United States v. Ackell*, 907 F.3d 67, 74-77 (1st Cir. 2018) (holding that the results element of the statute saves it from overbreadth)). In fact, several circuits have held that the results element sufficiently restricts the stalking statute and that the terms "harassment" and "intimidation" may therefore be given their broad, common meaning. *See, e.g.*, *United States v. Fleury*, 20 F.4th 1353, 1362-63 (11th Cir. 2021); *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) (holding that "the statute need not define 'harass' and 'intimidate' because they are not obscure words and are readily understandable by most people" and are further limited by the statute's definition of the results of the conduct); *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) ("we concur in the Eighth Circuit's reasoning that, '[b]ecause the statute requires both malicious intent on the part of the defendant and substantial harm to the victim, it is difficult to imagine what constitutionally-protected speech would fall under these statutory prohibitions.'" (quoting *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012))). In the absence of contrary guidance from the Sixth Circuit, the Court will follow the majority of circuits in instructing the jury to give the terms "harass" and "intimidate" their natural meanings. *See Fleury*, 20 F.4th at 1362-63; *Ackell*, 907 F.3d at 74-77; *Conlan*, 786 F.3d 386; *Osinger*, 753 F.3d 945.

---

[5] Russell also mischaracterizes the holding of *Yung* as limiting harassment to true threats of physical violence. (D.N. 111, PageID.478; D.N. 92-1, PageID.379) The *Yung* court held that the statute appropriately reached not only speech that constitutes a "true threat" but also "speech that is integral to proscribable criminal conduct," such as defamation. *See Yung*, 37 F.4th at 80 (quoting *Ackell*, 907 F.3d at 76).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the United States' objections to Russell's proposed substantive jury instructions (D.N. 103) are **SUSTAINED**.

January 17, 2024

David J. Hale, Judge
United States District Court