Filedred          18-CI-501606     03/01/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                         NOT ORIGINAL DOCUMENT
                                                         05/02/2022 09:36:36 AM
                                                         81535

No.18CI501606                              JEFFERSON CIRCUIT COURT
                                          FAMILY DIVISION SEVEN (7)


RICKY CRABTREE                                        PETITIONER


vs.        **FINDINGS OF FACT, CONCLUSIONS OF LAW**
                  **AND CUSTODY DECREE**


STEPHANIE RUSSELL                                    RESPONDENT

                         *******************

        This case came before the court on trial on December 10-11, 2020, March

4-5, 2021, March 23-25, 2021, and April 16, 2021. Petitioner was present,

represented by Jesse Mudd and Laurel Doheny. Respondent was present,

represented by Allison Russell and David Mour. Jim Murphy was present as

Guardian Ad Litem for the children. Also testifying were Dr. Kelli Marvin, Lisa

Houghlin, Detective Samantha Ernst, Dr. Ginger Crumbo, Susan Buhmann-Riehl,

Dr. Carole Jenny, Tonesha Hearn, Leticia Bautista Leba, Dr. Sheila Guelda, Dr.

Alphonso Nichols, and Tammy Lewis.

        It was also before the court on May 13, 2021 for a hearing on the Guardian

Ad Litem's motion to modify the parenting schedule. Petitioner was present,

represented by Laurel Doheny and Jesse Mudd. Respondent was present,

represented by Allison Russell and David Mour. Jim Murphy was present as

Guardian Ad Litem. Also testifying was Dr. Ginger Crumbo.

        It was also before the court at motion hour on on Respondent's motion to

set aside the parties' final order on financial issues and on December 13, 2021 on

EXB : 000001 of 000098

Filed          18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                          NOT ORIGINAL DOCUMENT
                                                          03/02/2022 09:26:36 AM
                                                          81535

Respondent's motion to modify the parenting schedule and for make-up time. Pursuant to CR 52.01, having weighed the evidence and considered the arguments of the parties, the Court hereby finds, by a preponderance of the evidence, the following facts:

## FINDINGS OF FACT

1.  Petitioner and Respondent were married on October 31, 2015. The parties were divorced on February 7, 2020. The decree reserved all issues.

2.  The parties had a trial on the financial issues scheduled for February 6, 2020 and February 7, 2020. The court heard proof on February 6, 2020. The February 7, 2020 date was rescheduled at request of Respondent, due to illness.

3.  The parties' financial issues were resolved by agreed order of October 1, 2020, prior to the court hearing the second day of trial.

4.  The remaining issues to be resolved are custody, parenting time, child support and attorney fees. There are also various motions that have been previously passed to trial or have been filed since the conclusion of trial.

5.  Two (2) minor children were born during the marriage, J.H.C., age 6, and K.E.R., age 4.

6.  Petitioner is the legal father of the two (2) children. Respondent is the natural mother of the minor children.

7.  Since August 2019, Respondent has repeatedly challenged Petitioner's status as legal father, based on the children being conceived through in vitro fertilization using donor sperm.

EKB : 000002 of 000098

Filedred        18-CI-501606        03/02/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                            NOT ORIGINAL DOCUMENT
                                                            05/02/2022 09:36:56 AM
                                                            81535

8. The court has addressed Respondent's position as to the legal paternity of the children in written orders entered in this case on June 21, 2019, December 23, 2019, and December 8, 2020. Those findings and conclusions related to paternity are hereby incorporated into this order by reference.

9. The court did not take additional proof as to the issue of paternity at the time of trial. The court has made specific findings and conclusions on the issue during the course of this litigation and considers the issue properly preserved for appeal by Respondent.

10. Petitioner began their romantic relationship in 2002 and began residing together in November 2005, when they relocated to Louisville from Owensboro, KY. They became engaged in 2006. Respondent began the IVF process in 2010. Both parties reported significant strains on their romantic relationship prior to and following the birth of the children.

11. Petitioner and Respondent were residing together at the birth of both children. Both parties worked full-time, with Petitioner as the primary financial earner for the family and Respondent the primary decisionmaker for the children. The parties utilized two (2) live-in au pairs to assist in caregiving for the children.

12. Petitioner asserts he acted as an unsupervised caregiver for the children during this time, usually caring for the children from 5:00 pm to 7:00 pm on weeknights while Respondent was still at work.

13. Petitioner reports Respondent has always been hypervigilant and critical as to his parenting, which became a source of friction between the parties. Petitioner's medical records from April 2017 support this description, as

EXB : 000003 of 000098

Filedred          18-CI-501606     03/01/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                    NOT ORIGINAL DOCUMENT
                                                    05/01/2022 09:56:36 AM
                                                    81535

Petitioner's neuropsychiatrist noted concerns about Petitioner's anxiety related to Respondent's excessive attention to Petitioner's parenting. This resulted in a recommendation that the parties attended marital therapy. A second medical provider for Petitioner made a similar observation in January 2018, noting home life stressors in Petitioner's medical evaluation, including Respondent's hyper-awareness to safety concerns for the parties' older child.

14. Respondent alleges Petitioner was an inattentive and uninterested parent during the marriage and did little to no caregiving for the children. Video, photo and text communication from Respondent's phone show this description is inaccurate and Petitioner did participate in caregiving for the children prior to the date of separation.

15. Respondent previously filed a divorce action on January 16, 2017, as Petitioner in that action. The parties attended mediation in that action in May 2017. Following mediation, Respondent sought reconciliation, based on her belief that she would be unsuccessful in her request for sole custody and supervised parenting time for Petitioner. Petitioner agreed to reconcile based on his desire to keep the family structure intact. The first divorce action was dismissed on June 13, 2017, by agreement of the parties.

16. In July 2017, Respondent drafted an agreement that Petitioner would not be alone with the children until Respondent allowed. This document was requested by Respondent to address her ongoing belief that Petitioner's cognitive impairment was a threat to the children's safety. Petitioner signed the agreement, believing it would alleviate some of Respondent's fears and

EKB : 000004 of 000098

Filed red          18-CI-501606      03/01/2022       David L. Nicholson, Jefferson Circuit Clerk
                                                                    NOT ORIGINAL DOCUMENT
                                                                    05/01/2022 08:36:36 AM
                                                                    81535

ongoing conflict between the parties. Petitioner also asserts financial duress was a factor in signing the agreement, as he believed Respondent would back out on finalizing the purchase of a home if he did not sign the agreement, resulting in a significant loss of money.

17. At the same time, Petitioner signed a separate agreement that he would keep all medications in the garage, as Respondent asserted Petitioner was leaving medication within the reach of the oldest child.

18. On May 25, 2018, Petitioner moved out of the marital residence.

19. Following Petitioner's relocation from the marital residence, Respondent limited Petitioner's access to the children to short periods of time and no overnights. The parenting time was supervised by Respondent or the au pairs, with Respondent relying on the agreement of July 2017 as support for this position.

20. Petitioner filed this action on June 12, 2018. Respondent filed her answer and counter-petition on July 5, 2018.

21. On July 17, 2018, both parties filed motions for a temporary parenting schedule. Petitioner was requesting a shared parenting schedule. Petitioner was requesting Petitioner only have limited, supervised parenting time.

22. On August 14, 2018, Respondent filed a motion to enforce the agreements of July 2017, requiring Petitioner's parenting time to be supervised.

23. After hearing arguments on the motions, the court did not find grounds sufficient to require Petitioner's parenting time to be supervised. On August 16, 2018, the court entered an order for Petitioner to have unsupervised parenting time. On August 22, 2018, the court entered a specific parenting time schedule, with

EXB : 000005 of 000098

SR-35

Filed    18-CI-501606   03/01/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:56:56 AM
81535

Petitioner having overnight parenting time five (5) out of every fourteen (14) days.

24. On September 11, 2018, Respondent filed a motion to modify the parenting schedule, based on an elbow injury to the oldest child and two (2) alleged ear bruises on the younger child, both of which Respondent asserted occurred while the children were in the care of Petitioner. These allegations were also the subject of an Emergency Protective Order, which this court dismissed on September 12, 2018, after making a finding that no act of domestic violence occurred.

25. On September 25, 2018, Respondent filed a second motion to modify the parenting schedule, based on an alleged back injury to the oldest child on September 15, 2018. Respondent believed Petitioner injured the child by dropping him. Respondent's belief is based solely on statements made by the oldest child. Petitioner denies he dropped the child. Petitioner does not believe the child suffered a back injury.

26. On September 27, 2018, this court entered an order denying Respondent's motion to modify the parenting schedule. The order required the parties to return to the parenting schedule order of August 22, 2018. The order also required the parties to provide notice of their intent to travel outside of Louisville with the children, as well as awarding the non-possessory parent daily FaceTime contact with the children.

27. On October 24, 2018, the court appointed Rosalie Guthrie as Friend of Court, Ms. Guthrie served as friend of court until April 16, 2019.

EXB : 000006 of 000098

Filed    18-CI-501606   03/01/2022    6David L. Nicholson, Jefferson Circuit Clerk

Filed    18-CI-501606    03/31/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:56:56 AM
81535

28. On November 1, 2018, the court again ordered the parties to resume the parenting time schedule ordered on August 22, 2018. The order also prevented a party from being present at school drop off/pick up and medical appointments during the other party's parenting time, unless agreed in advance.

29. On December 11, 2018, Petitioner filed a motion to modify the parenting schedule to equal timesharing. The motion was referred to mediation. Petitioner re-filed his motion on May 7, 2019, after Respondent refused to attend a scheduled mediation.

30. Petitioner's motion was granted by order of June 21, 2019. Under the new parenting schedule, Petitioner was awarded parenting time every other weekend, from Friday at 5:00 pm to Monday at 9:00 am, plus two (2) overnights per week. The overnights alternated as Monday and Tuesday in one week and Wednesday and Thursday in the second week.

31. The parties utilized the shared parenting schedule above until July 1, 2020, when Petitioner was granted temporary sole custody of the minor children, as discussed in detail below. Since that time, Respondent has only had supervised parenting time with the children.

32. Beginning on July 7, 2020, Respondent had supervised Zoom visits with the children on Tuesday, Thursdays and Sundays. The visits were scheduled for one (1) hour each. During the visits, Respondent was at Children's Safe Haven, which monitored the calls. The children participated from Petitioner's home, with Petitioner present. Respondent was responsible for 100% of the cost associated with Children's Safe Haven.

EXB : 000007 of 000098

Filedred        18-CI-501606      03/01/2022    David L. Nicholson, Jefferson Circuit Clerk
                                              NOT ORIGINAL DOCUMENT
                                              05/01/2022 09:36:55 AM
                                              81535

33. On July 27, 2020, Respondent filed a motion to modify the supervised parenting time order, seeking in-person parenting time.  The motion was denied by order of August 4, 2020, as the court continued to have the same safety concerns that existed at the time of July 1, 2020 order.

34. On August 11, 2020, Respondent filed a motion to modify the parenting schedule. Respondent asserted in her motion that Petitioner does not consider her a safety risk, as evidenced by the exchange of items by the au pair and the children's presence near Respondent's place of employment. Respondent's motion also referenced issues occurring during the supervised Zoom visits.

35. On September 29, 2020, Respondent filed a motion to modify the parenting schedule. In the motion, Respondent again questioned the genuineness of Petitioner's fears, based on a children's book that was visible during the Zoom visitation.

36. Respondent's request to modify the temporary schedule was passed to trial by order of October 1, 2020.

37. On October 13, 2020, the court modified the order of July 1, 2020 to allow Respondent to participate in the Zoom visits from her home, rather than requiring her to travel to the Children's Safe Haven facility. Children's Safe Haven continued to monitor the visits over Zoom. The order specifically stated Respondent was to use a virtual background consisting of one color.

38. On October 13, 2020, the first visit following this modification, Respondent appeared on camera from the older child's room, surrounded by pictures and toys. This was reported to the court, including a screenshot of Respondent from

EXB : 000008 of 000098

Filedred          18-CI-501606     03/01/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        03/01/2022 09:36:36 AM
                                                        81535

the parenting time. Documentation from Children's Safe Haven as to the visit shows the older child became upset during the visit when Respondent questioned him as to Dr. Crumbo sessions and showed a decreased desire to interact with Respondent following this incident.

39. Children's Safe Haven records from November 16, 2020 show Respondent later questioned the staff as to who reported Respondent's violation of the order as to the background. Respondent insists she was unaware of the virtual background portion of the order.

40. Records from Children's Safe Haven reflect other issues that occurred during this period of time. Specifically, there were technical issues, mostly on Petitioner's end. The children were not always actively engaged with the Respondent during the visits. The visits did not last the full scheduled time, instead lasting less than thirty (30) minutes each time. The parties also spoke directly to each other at times during the visits, with these discussions becoming disagreements in front of the children. Respondent continued to question the older child as to his health/injuries, appearance, diet, tv consumption, and general level of care he was receiving in Petitioner's custody. Respondent was often critical during the visits, insisting the older child work on his letters instead of watch television because his teachers say he is behind. Respondent would also involve the supervisors in this behavior by asking if they were documenting things she found concerning and whether the issues would be reported to Child Protective Services to be included as part of their investigation.

EXB : 000009 of 000098

SR-39

Filed red 18-CI-501606 03/02/2022 David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:56:58 RM
81535

41. On January 5, 2021, Respondent filed a motion to modify the visits to in-person, based on issues related to the Zoom visits, including scheduling with Children's Safe Haven.

42. At the time, both parties reported ongoing concerns with the visits. Petitioner reported the timing of the visits was disruptive to the children's schedule, Respondent continued to engage in behaviors that caused the older child anxiety, such as excessive questioning as to his health and injuries, causing Petitioner to intervene in the visits. Respondent reported Petitioner interfered with the visits by giving the children snacks, leaving the television on, and speaking directly to Respondent or the children. Both parties reported the children were unable to maintain interest in the visits for the full hour, with the visits usually lasting less than thirty (30) minutes.

43. On February 16, 2021, Petitioner filed a motion as to visitation issues.

44. On March 4, 2021, the parties entered an agreed order as to the parameters for the visits. Petitioner was no longer allowed in the room during the visits, but was allowed to participate via Zoom, with his camera and audio turned off. During the visits, the children were to be supervised by Stacy Keith or Richard Nassr. Respondent was to use a neutral background and not bring any toys or other items to the visits. The children could have a snack and Respondent could provide an activity or game, so long as it was submitted to Petitioner for approval at least seven (7) days prior. Respondent was not to question the children as to safety, care or injury and was not to request a visual inspection of the children's bodies. The parties were not to speak directly to each other

EX6 : 000010 of 000098

Filedred        18-CI-501606      03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                         NOT ORIGINAL DOCUMENT
                                                         05/02/2022 09:58:35 AM
                                                         81535

during the visits. Neither party was to ask about the other or make disparaging comments in front of the children.

45. On March 9, 2021, Respondent filed a motion to modify the parenting schedule to three (3) times per week, as the new supervisors were able to accommodate it in their schedule. Respondent also requested Petitioner contribute to the fees associated with the services.

46. Following the March 25, 2021 trial day, the court granted Respondent's pending motions to modify the parenting schedule, giving her supervised in-person parenting time. After extensive discussions, the court and the parties agreed to a framework for the visits. This framework was made an order of court on March 26, 2021.

47. Under the order, Respondent received in-person parenting time on Mondays, Tuesdays, and Thursday, from 5:00 pm to 7:00 pm, at a park, effective March 29, 2021. Respondent was allowed to bring an agreed upon meal and other items. Respondent was not allowed to take pictures or videos during the parenting time or allow third parties to be present. Petitioner was to provide transportation, with Respondent prevented from being alone with or transporting the children at any time. Discretion was given to the supervisor to determine the appropriate public location for the visits.

48. To help initiate the changes, the parties agreed to discuss it with Dr. Crumbo and to follow all directions of Dr. Crumbo, the supervisor and the court.

49. On April 6, 2021, the Guardian Ad Litem filed a motion to modify the parenting schedule, asserting the in-person visits had caused a negative change in the

EXB : 000011 of 000098

Filedred        18-CI-501606      03/01/2022      [1]David L. Nicholson, Jefferson Circuit Clerk

Filedred          18-CI-501606     03/01/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                          NOT ORIGINAL DOCUMENT
                                                          05/02/2022 09:36:36 RM
                                                          81535

older child's behavior. The motion was accompanied by an affidavit from the child's therapist, Dr. Crumbo.

50. According to Dr. Crumbo, she witnessed a noted improvement in the older child's affect between June 2020 and November 2020, describing the child as going from agitated and pressured to relaxed, playful and happy. Due to the improvement, the child's appointments were reduced from weekly to every two weeks to monthly.

51. Dr. Crumbo reports the child's anxiety began increasing after the parenting schedule was modified to in-person visits, based on the reports of Petitioner as to the child's behavior and affect. Dr. Crumbo had sessions with the child on March 15, 2021, April 21, 2021, and April 26, 2021. The March 15, 2021 session was prior to the modification to in-person parenting time. The April 2021 visits occurred following the filing of her affidavit with the Guardian Ad Litem's motion. Dr. Crumbo's observations as to the child's behavior and affect during her sessions were consistent with the reports of Petitioner.

52. The parties agree the child has been experiencing toileting regression, but disagree as to when it began and the underlying cause. Petitioner reports it has only begun recently and is a sign of the child's distress over the in-person visits. The regression has resulted in three (3) incidents occurring over a span of two (2) visits, plus three (3) incidents at Petitioner's home and one (1) at school during the course of a week.

53. Respondent believes the toileting regression began prior to March 2021 and is a sign of Petitioner sexually abusing the child. Records from Children's Safe

EXB : 000012 of 000098

SR-42

Filed red        18-CI-501606      01/01/2022        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:36:36 AM
81535

Haven indicate the older child has a toileting accident at the visit on November 5, 2020. There is also a video from June 23, 2019 obtained from Respondent's phone in which Respondent questions the older child repeatedly as to why he urinated on the floor during bath time.

54. Dr. Crumbo believes the increase in the child's anxiety was a result of the change to in-person parenting time with Respondent. Based on her observations and the reports of Petitioner as to the child's behavior, Dr. Crumbo chose to increase the child's sessions to every two (2) weeks.

55. On June 22, 2021, the Guardian Ad Litem filed a motion to appoint a new supervisor and therapist, as both had chosen to terminate services for the family. According to the documents attached to the motion, Dr. Crumbo chose to terminate services after Respondent filed a professional complaint against her following her testimony at the May 13, 2021 hearing in this action. The parenting time supervisors chose to terminate services as they found Respondent unresponsive to their directions, which they felt was unlikely to change going forward.

56. Respondent filed the same motion on the same day, requesting the court appoint a volunteer supervisor chosen by Respondent.

57. Children's Safe Haven was re-appointed as the supervisor by order of July 19, 2021.

58. On July 20, 2021, Respondent filed a motion to set aside the July 19, 2021 order. The motion was denied by order of July 27, 2021.

EXB : 000013 of 000098

SR-43

Filed          18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                          NOT ORIGINAL DOCUMENT
                                                          03/02/2022 09:36:36 RM
                                                          81535

59. On December 7, 2021, Respondent filed a motion to modify the parenting schedule. Respondent is requesting that her long-time employee be the parenting time supervisor.

60. Respondent's motion also included a request for make-up parenting time. Respondent attached a calendar asserting eleven (11) days of missed parenting times in 2021, two (2) of those virtual and the remaining nine (9) in-person. These visits were missed for a combination of reasons, mostly related to scheduling or illness/COVID exposure. Respondent also asserts she missed five (5) Zoom visits in 2020.

61. Counsel for the parties, including the Guardian Ad Litem, participated in a phone conference with representatives from Children's Safe Haven regarding issues with Respondent's parenting time visits. These issues included Respondent's desire to film or photograph the children, which is against the policy of Children's Safe Haven, as well as make-up time for missed visits.

62. At motion hour on December 20, 2021, counsel for the parties reported they had reached an agreement as to a new supervisor and would be tendering an agreed order on the issue.

63. It is Petitioner's wish that he be granted sole custody of the minor children, with supervised parenting time for Respondent. Petitioner initially sought joint custody with a shared parenting schedule. Over the course of this litigation, Petitioner has changed his position, as Respondent's actions have convinced him that Respondent lacks the capacity to co-parent and to make decisions in the best interest of the children.

EXB : 000014 of 000098

Filedred        18-CI-501606      03/01/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                               NOT ORIGINAL DOCUMENT
                                                               05/01/2022 09:56:56 AM
                                                               81535

64. It is Respondent's wish that she be granted sole custody of the minor children, with no visitation to Petitioner. If visitation is awarded to Petitioner, Respondent asserts it needs to be supervised. Respondent's request is based on her belief that Petitioner is abusing the children and he lacks the mental capacity to provide adequate care for the children.

65. The children in this case were not interviewed by the court as to their wishes for custody and parenting time, given their young ages.

66. On October 3, 2018, the court appointed a Guardian Ad Litem to represent the best interest of the children. It is the position of the Guardian Ad Litem that it would be in the best interest of the minor children for Petitioner to be awarded sole custody, with supervised parenting time to Respondent.

67. Both parties assert they would be unable to jointly co-parent the children with the other party, including an inability to communicate. Petitioner initially attempted to co-parent with Respondent, but reports her actions have made it impossible to do so. Respondent has consistently refused to co-parent with Petitioner, as she does not consider him an equal parent to the children.

68. Respondent demeans Petitioner's parental role, including in statements made in front of the children, implying they are unsafe or not properly cared for by Petitioner, to the point that the older child became hysterical while in Respondent's care. In the past, Respondent has attempted to micromanage Petitioner's parenting time, including what the children eat, what clothing they wear, and how much screen time they have, as Respondent does not believe Petitioner has the parental capacity to make these decisions on his own.

EXB : 000015 of 000098

Filedred          18-CI-501606          03/81/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                            NOT ORIGINAL DOCUMENT
                                                            05/02/2022 09:56:56 AM
                                                            81535

Respondent does not acknowledge Petitioner as the children's father and refers to him as Rick to the children. Petitioner is listed as Satan in Respondent's phone contacts. Respondent has called Petitioner a monster and child molester to third parties. Respondent has attempted to have Petitioner incarcerated.

69. Multiple parties also report Respondent openly discussed allegations of abuse against Petitioner and other adult issues in front of the children in a manner that was inappropriate. This includes the child's therapist, teachers, and the custody evaluator. When the therapist attempted to direct Respondent away from the behavior, Respondent indicated she did not find it to be problematic behavior.

70. On April 23, 2019, an anonymous email was sent to Petitioner's employer, making abuse claims against Petitioner similar to the claims asserted by Respondent in this action. Petitioner believes this was done by a third party associated with Respondent. Respondent denies any knowledge as to who sent the email.

71. The record contains third party observations as to Respondent's communication with Petitioner. These observations have been reported by the child's therapist and medical providers, school staff, the custody evaluator in this action, and have been reflected in videos obtained from Respondent's phone. At various points, Respondent's tone with Petitioner has been described as demeaning, degrading, condescending, harsh, sarcastic, hostile, accusatory, and threatening. The staff at the child's school have reported

EXB : 000016 of 000098

Filedred          18-CI-501606          03/81/2022          16David L. Nicholson, Jefferson Circuit Clerk

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:30:36 AM
81535

Respondent to be very vocal in her dislike of Petitioner. The custody report described Respondent speaking to or about Petitioner as though he is stupid, incompetent, dangerous, and unconcerned about the safety of the children. There are also videos of Respondent berating Petitioner in front of children over issues such as proper car seat usage, the children's schedule, flossing teeth and screen time, including threatening court involvement over these issues.

72. When faced with this verbal abuse by Respondent, Petitioner has shown an ongoing pattern of not engaging back while also attempting to de-escalate the situation, often by removing himself. Petitioner's reactions in these situations are non-threatening and non-abusive.

73. Respondent asserts she is unable to communicate with Petitioner, due to Petitioner's abusive and aggressive behavior. In the course of this litigation, Respondent has described Petitioner as aggressive, dangerous, violent, coercive, controlling, sexist, callous, unemotional, and a perpetrator of physical and emotional domestic violence. Respondent also alleges Petitioner made previous threats to ruin her as revenge.

74. This behavior has only been reported by Respondent or third parties aligned with her, such as Dr. Sheila Guelda and Leticia Bautista, Respondent's employee. Ms. Bautista's immigration status was connected to her employment with Respondent during the period of time in which Ms. Bautista alleges Petitioner displayed inappropriate behavior, such as standing to close to her during the exchange of the children. Ms. Bautista continued to reside with Respondent until October 2020.

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:26:36 AM
81535

75. These descriptions are not consistent with the descriptions of Petitioner given by uninterested third parties involved with this family, including Dr. Marvin, Dr. Crumbo, Detective Samantha Ernst, Child Protective Services representatives, and staff from the children's school.

76. The parties' difficult co-parenting relationship has been referred to as a stressor by third parties involved with this family. Records from Child Protective Services contains a notation that the parties are unable to communicate effectively and have difficulty co-parenting. Petitioner's medical records show previous medical providers also noted concerns about the parties' level of discord.

77. The parties' inability to co-parent and its negative impact on the children is clear from the voluminous record in this case.

78. Specifically, the parties have a history of being unable to agree on medical treatment for the children. This has resulted in delays or disruptions to the children's treatment, as well as the children being taken to multiple providers for the same issues, resulting in over exposure to medical providers. In September 2018, PFM noted in a report that the parties' discord was detrimental to the children.

79. In August 2018, Respondent took the oldest child to see Dr. Alphonso Nichols, alleging the child was suffering from severe separation anxiety and nightmares. Dr. Nichols received all the intake information from Respondent. Dr. Nichols did not meet the child or observe any of the behavior reported by Respondent. Based on the statements of Respondent, Dr. Nichols believed Petitioner's parenting time with the child should be supervised.

EXB : 000018 of 000098

Filed   18-CI-501606   01/31/2022   David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
05/01/2022 09:36:35 RM
81535

80. Petitioner objected to the older child attending therapy with Dr. Nichols, as Petitioner believed Respondent had manipulated information provided to Dr. Nichols to make Petitioner appear to be abusive. It was also the understanding of Petitioner that Dr. Nichols was a friend of Respondent's close friend, Dr. Sheila Guelda, which Petitioner viewed as a conflict of interest in the treatment.

81. In September 2018, the parties agreed to the oldest child attending therapy with Dr. Ginger Crumbo. This therapy continued until April 2019, when Dr. Crumbo declined to provide services on a consent by session approach requested by Respondent. Petitioner wished for the child to continue in therapy with Dr. Crumbo at the time.

82. On November 25, 2019, the Guardian Ad Litem filed a motion to appoint Dr. Ginger Crumbo as the therapist for the oldest child. This recommendation was made by Dr. Kelli Marvin. Dr. Marvin had reservations as to the child being treated by Dr. Nichols. The motion was granted by order of December 2, 2019.

83. On April 2, 2019, the Guardian Ad Litem filed a motion to change the children's primary care physician.

84. On June 21, 2019, this court entered an order granting the GAL's motion and changing the children's pediatrician to Brownsboro Pediatrics. The order specifically states the parties agreed to use Brownsboro Pediatrics, which was suggested by both parties.

85. On July 1, 2019, the Guardian Ad Litem filed a motion to modify the June 21, 2019 relating to the appointment of the pediatrician. It had now been

EXB : 000019 of 000098

Filed red          18-CI-501606      03/01/2022       David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:36:36 AM
81535

determined the parties were referring to two (2) separate medical practices with similar names and did not actually agree to the same provider.

86. The motion was granted on July 12, 2019 and the pediatrician was changed to Dr. April Mattingly with Norton Children's Medical Association in Crestwood. The children continue to use Dr. April Mattingly at this time.

87. The parties' inability to co-parent has also impacted the children's school and childcare.

88. On June 23, 2019, a third party connected to Respondent contacted Prospect Latin School, where Petitioner had enrolled the children in childcare. The third party made allegations about Petitioner similar to the allegations Respondent has made against him throughout this litigation. The third party also indicated Respondent did not agree to the children's placement at the school and threatened potential legal action against the school. The children were ultimately unenrolled from the school.

89. Following this, Respondent enrolled the children at Sacred Heart Model School. Respondent did this without consulting with Petitioner. Upon being informed of Respondent's choice, Petitioner ultimately agreed to the children remaining in the school. As of this order, the children continue to attend Sacred Heart. However, the school reports concerns with Respondent attempting to place staff in the middle of custody issues. The staff reports no issues with Petitioner's behavior.

90. On August 24, 2021, Petitioner filed a motion to prevent Respondent from interfering with the children's childcare provider. According to the motion,

EXB : 000020 of 000098

SR-50

Eiledred          18-CI-501606          03/01/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                                     NOT ORIGINAL DOCUMENT
                                                                     05/01/2022 09:56:55 RM
                                                                     81535

Petitioner had obtained an au pair through a service the parties used during the marriage. A third party then contacted the au pair and made allegations similar to those made during the course of the litigation. As a result, the au pair terminated her contract with Petitioner. Petitioner's motion was granted by order of September 17, 2021.

91. Petitioner has not co-parented with Respondent since the entry of the temporary sole custody order on July 1, 2020.

92. There have been previous attempts to address the co-parenting and communication issues. The parties jointly participated in co-parenting therapy in March 2018 and April 2018, prior to the filing of this action. Documentation from the sessions describe both parties as angry and fighting constantly about issues related to the children. Respondent was described as being demeaning and sarcastic. The parties also demonstrated a lack of trust.

93. The therapy was ultimately unsuccessful and was terminated in August 2018. The provider noted the parties needed a more specialized family therapist and referred each to individual therapists.

94. The court has also attempted to manage the parties' co-parenting through court orders.

95. The parties entered into an Agreed Order on September 27, 2018. Under that order, neither party is to seek or obtain medical or mental health treatment for either child without the agreement of the other party, with the exception of emergency situations. The parties further agreed to provide the date and time of any appointment in advance.

EKB : 000021 of 000098

Filedred          18-CI-501606     03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:36:38 AM
81535

96. Despite this agreement, Respondent did not consult Petitioner prior to taking the child for follow up treatment and consenting to the child receiving an MRI for a back injury Respondent alleges the child received while in the care of Petitioner. The MRI was scheduled for October 23, 2018. Respondent informed Petitioner of the MRI appointment on October 22, 2018.

97. On November 6, 2018, a subsequent order was entered, restricting Respondent from ordering, performing or referring any non-emergency medical procedures or testing. The order was requested by motion of Petitioner, who believed Respondent was using her position as a pediatrician to treat the children.

98. On December 25, 2018, Respondent diagnosed and treated the younger child for the flu. Respondent testified she did this at the direction of the children's pediatrician, but did not present any documentation to support this claim. In this litigation, Respondent has used Petitioner's lack of attention to the younger child's health in this incident as support for her position that he is neglectful in the children's medical care.

99. Following the diagnosis by Respondent, she took the child for medical treatment. Medical records show that the child was alert and active at the time of the appointment, with a temperature of 99.4.

100.    On November 1, 2018, this court entered an order that neither party was to make disparaging comments about the other in front of the children.

101.    On August 14, 2018, Respondent motioned the court for the appointment of a custody evaluator, which was granted by order of August 22, 2018, with

EKB : 000022 of 000098

Filedred        18-CI-501606        03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                         NOT ORIGINAL DOCUMENT
                                                         05/01/2022 09:35:35 AM
                                                         81535

the parties ordered to take all steps to begin a custody evaluation with Dr. Kelli
Marvin. The parties were ordered to divide the costs equally, pursuant to this
court's order of September 27, 2018.

102.   As part of the evaluation process, Dr. Marvin met with Petitioner five (5)
       times between November 5, 2018 and July 7, 2020, for a total of more than
       thirteen (13) hours. Dr. Marvin met with Respondent six (6) times between
       November 8, 2018 and June 30, 2020, for a total of more than twenty (20)
       hours. Dr. Marvin also observed the parties' interactions with the children in
       June 2020. Dr. Marvin contacted numerous collateral sources, including the
       older child's therapist, Petitioner's medical providers, representatives from the
       Crimes Against Children Unit of Louisville Metro Police Department,
       representatives from Pediatric Forensic Medicine, and Petitioner's former wife.
       Dr. Marvin also reviewed medical reports from Pediatric Forensic Medicine and
       the older child's therapist, the Child Protective Services file, the CACU report
       regarding an investigation of Petitioner, reports from exchange supervisors and
       the former Friend of court, and written communications between the parties, as
       well as a multitude of video and audio recordings obtained from Respondent's
       cell phone.

103.   Following her evaluation process, Dr. Marvin filed a 298 page report. The
       report contains five (5) sections, completed between July 24, 2020 and August
       12, 2020. The report also contains a twelve (12) page response from
       Respondent, provided to Dr. Marvin by Respondent on July 3, 2020, following
       their final meeting.

EXB : 000023 of 000098

Filedred       18-CI-501606     03/02/2022     David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:26:36 AM
81535

104.   Dr. Marvin provided a complete copy of her file to counsel for both parties
in July 2020, pursuant to this court's order of July 24, 2020. By agreed order
entered the same day, the parties agreed the report would not be provided to
the parties or third parties. The order contains a provision noting the order does
not apply to any expert witnesses.

105.   On August 12, 2020, Dr. Marvin issued her recommendations in this case.
Dr. Marvin recommends sole custody be awarded to Petitioner, as she believes
Respondent's parental judgment is critically compromised. The conclusion is
based on Dr. Marvin's determination that Respondent suffers from a
Personality Disorder with narcissistic and anti-social traits, which affects
Respondent's ability to parent the children in a responsive and empathetic
manner, as the personality disorder results in a party being self-focused,
reacting negatively to perceived criticism, failing to heed important warnings
based on a feeling of superiority, and lacking personal insight, which manifests
itself as an inability to participate in and comply with therapy.

106.   Dr. Marvin also recommends Respondent be granted supervised parenting
time only. Dr. Marvin concluded Respondent presents a safety risk to the
children, necessitating supervised contact with the children, as Respondent
engaged in an ongoing pattern of emotional abuse of the older child since 2018,
consisting of Respondent engaging in acts of parental alienation involving the
children's relationship with Petitioner, including coaching the older child to
make false allegations of abuse and inducing anxiety and fear in the older child
regarding his level of care from Petitioner. Respondent also pursued

EXB : 000024 of 000098

SR-54

Filedred          18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:36:36 AM
81535

unnecessary medical treatment for the children and exposed the older child to developmentally atypical experiences (such as therapy at less than three years old) in an effort to gain support for her legal agenda. These behaviors by Respondent have resulted in a risk to the children's emotional and psychological development by causing the children to question safe attachments and making them prematurely sensitive to sexual issues, as well as being over exposed to medical treatment. Dr. Marvin believes Respondent will continue this pattern of emotional abuse if her parenting time is unsupervised.

107.   Dr. Marvin also believes Respondent presents an ongoing threat of potentially absconding with the children or physically harming the children and/or Petitioner

108.   The parties' interactions with the children have been witnessed by various third parties involved with the family, including Dr. Kelli Marvin, Dr. Ginger Crumbo, the former Friend of Court, exchange supervisors, and staff with Sacred Heart Preschool and Child Protective Services.

109.   All of these individuals report the children have positive interactions with Petitioner, with no reason for concerns.

110.   Dr. Marvin observed Petitioner with the children in June 2020, as part of the custody evaluation process. In her observations, the interactions are typical and represent secure bond, with no signs of discomfort or fear. The children were in good moods, well-behaved and compliant during the observed period. Dr. Marvin reports Petitioner can properly empathize with the children

EXB : 000025 of 000098

Filed   18-CI-501606   03/31/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:36:56 PM
81535

emotionally and shows a good level of introspection and personal insight into his parenting role.

111.   Dr. Crumbo has also witnessed Petitioner and the children interact throughout her treatment of the child. In her observations, Petitioner and the child have always shown a secure bond with no attachment issues. Dr. Crumbo also reports Petitioner and the children show love and affection towards each other.

112.   Sacred Heart staff reports the older child is always happy to see Petitioner and all of their observed interactions have been normal. The staff reports no indications the children are afraid, fearful, or reluctant to go with Petitioner. The staff has not heard the child make negative statements about Petitioner and they have seen no indications of maltreatment.

113.   Respondent reports concerns with Petitioner's parenting skills and choices, which she believes places the children at risk for harm. Among the concerns listed by Respondent about Petitioner's interactions with the children are Petitioner cutting a piece of fruit while holding one of the children, leaving sharp objects in the reach of the children, and not following property safety around stairs, such as spinning the child in the air near the stairs and not properly closing baby gates.

114.   Both Dr. Crumbo and Dr. Marvin have expressed over Petitioner's parenting knowledge. Both observed instances of Petitioner not appropriately interpreting potentially dangerous situations involving the children and showing a lack of intellectual empathy with the children. This includes not following COVID

EXB : 000026 of 000098

SR-56

Filedred          18-CI-501606      03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        05/01/2022 09:56:56 AM
                                                        81535

protocols and purchasing bunk beds for the older child.   Both also report

Petitioner struggles to manage the logistics of two (2) small children, resulting

in the older child running from Petitioner at times.

115.   Petitioner acknowledges these parenting weaknesses and has taken steps

to address them. Petitioner has sought out instruction and followed the advice

of professionals. It has consistently been reported that Petitioner is receptive

to instruction and willing to modify his behaviors.

116.   Respondent also believes the children are scared of Petitioner and do not

wish to have parenting time with him. This report has been contradicted by

independent third party observations. Sacred Heart staff has specifically stated

that Respondent's reports to them of the older child's fear of Petitioner are not

consistent with their observations of the parent-child interactions between

Petitioner and the older child. Child Protective Services records also note the

older child was observed to be excited to go to Petitioner's home.

117.   There have been mixed reports as to the interactions between Respondent

and the older child.

118.   Dr. Marvin observed Respondent with the children in June 2020. Dr. Marvin

reports Respondent handled both children without issues and enforced

appropriate safety boundaries, including proactively anticipating safety issues.

119.   In the visit, the younger child and Respondent showed normal parent-child

interactions, including displays of affection. The older child displayed some

defiant behavior with Respondent, such as refusing to follow directions and

resisting affection from Respondent. Dr. Marvin described the older child's

EXB : 000027 of 000098

Filedred          18-CI-501606        03/01/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
03/01/2022 09:36:56 AM
81535

affect as irritable and non-compliant. At one point, the older child hit Respondent, who was slow to establish boundaries in response. Respondent eventually disciplined the older child, but took the child out of the observation range of Dr. Marvin to do so. Respondent blamed the child's behavior at the visit on Petitioner.

120.   Dr. Crumbo also witnessed Respondent with the children, with the first observation occurring in September 2018, when the older child was two (2) years, nine (9) months old. At that time, the child presented as comfortable and calm with Respondent. The child was able to play independently for extended periods of time without seeking attention from Respondent, indicating a secure bond. At the time of the appointment, Respondent reported the child was anxious and fearful and suffering from separation anxiety, but Dr. Crumbo did not witness these behaviors in the child.

121.   By March 2019, the parent-child interactions between Respondent and the child had changed. Dr. Crumbo observed the child could no longer play independently for any significant period of time and consistently sought reassurance from Respondent, indicating an insecure attachment.

122.   Dr. Crumbo reports Respondent has always shown the children love and affection in her observed interactions.

123.   In March 2020, the older child's school reported the older child was presenting with higher anxiety on days when Respondent brought the child to school, but calmed down within minutes of Respondent leaving.

EXB : 000028 of 000098

Filed
Filedred          18-CI-501606     03/02/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                     NOT ORIGINAL DOCUMENT
                                                     05/02/2022 09:56:56 AM
                                                     81535

124.  Documentation from Children's Safe Haven related to Zoom visits between July 2020 and December 2020 report that the children were happy and excited to see Respondent and would verbally express their love for Respondent during visits.

125.  The quality of the visits started to deteriorate in September 2020, but the reports indicate Respondent and the children continued to show moments of strong parent-child bonds, such as playing together and learning new things.

126.  From birth until April 2018, the children resided with both parties in a home in Norton Commons. From April 2018 through May 2018, the children resided with both parties in a home in Anchorage.

127.  In May 2018, Petitioner moved out of the Anchorage home and back into the Norton Commons home, where he continues to reside.

128.  From April 2018 to March 2019, Respondent remained in the Anchorage residence. At Respondent's insistence, the children spent overnights exclusively with her until August 22, 2018, when Petitioner was granted court-ordered overnight parenting time.

129.  In March 2019, Respondent moved to a four (4) bedroom rental home, where she continues to reside. Respondent exercised her parenting time at the home from March 2019 through June 2020. The children have not spent an overnight in the home since June 29, 2020.

130.  There are no reported concerns with either party's home. Child Protective Services did a home visit at both homes during the course of its investigations, with no reported issues. The custody evaluator also visited each party's home

EXG : 000029 of 000098

Filed red       18-CI-501606    03/02/2022       David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        05/02/2022 09:56:36 AM
                                                        81535

during the course of the evaluation and reports no concerns. Detective Samantha Ernst with the Crimes Against Children Unit, LMPD, visited Petitioner's home during the course of her investigation and reports no concerns with the home.

131.   The children attend Sacred Heart Model School. There is no indication this placement would be disrupted or otherwise affected by the award of custody. However, the school has shown concern over the parties placing the school in the middle of custody issues, as discussed above.

132.   Respondent asserts Petitioner is uninterested in the children's education, which he denies. Petitioner acknowledges he left the majority of on-line schooling to childcare providers during the COVID shutdown, given that his work was extremely busy at the same time. The school reports Petitioner to be adequately invested in the children's schooling.

133.   The children are integrated into their community and there is no indication this integration would be disrupted by an award of custody in this case. Neither party has stated an intention to relocate the children outside of Louisville should they be awarded custody.

134.   Petitioner is fifty-six (56) years old.

135.   Other than discussed below, Petitioner has been in good physical health through this litigation, with no significant physical health issues that would impact his daily routine or parenting.

136.   Petitioner has celiac disease. Petitioner manages this condition through medication and diet.

EXB : 000030 of 000098

Filedred       18-CI-501606      03/81/2022       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
03/01/2022 09:35:55 AM
81535

137.   Petitioner has been diagnosed with a Mild Cognitive Impairment.

138.   Petitioner was initially evaluated for a neurological impairment in 2013. The evaluation was completed by Dr. Burton. Dr. Burton did not diagnose Petitioner with MCI at that time.

139.   Dr. Burton completed a second evaluation of Petitioner in April 2017. Dr. Burton did not diagnose with MCI at that time. The report specifically stated there was no indication of cognitive degeneration since the first evaluation.

140.   Respondent believed Dr. Burton was not adequately evaluating or diagnosing Petitioner's neurological condition as she interpreted it. Respondent reached out to a second provider, Dr. Puri, for an evaluation of Petitioner. This occurred in January 2018. Dr. Puri diagnosed Petitioner with MCI, but noted no other neurological concerns.

141.   In March 2018, Petitioner's primary care physician emailed Respondent regarding the Dr. Puri evaluation, at Petitioner's request. The email, as reflected in medical records, informed Respondent that the only recommendation was marital counseling, as the stress from the marriage could contribute to Petitioner's condition. The email specifically stated the MCI was mild and needed to be followed, but there are no major or worrisome concerns.

142.   Dr. Puri ultimately chose not to continue as a medical provider for Petitioner. Dr. Puri's records indicate the parties' marital strife was part of the reason for his decision.

EXB : 000031 of 000098

SR-61

Filedred          18-CI-501606      03/02/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        05/02/2022 09:36:36 AM
                                                        81535

143.  On April 16, 2018, Dr. Burton performed a third evaluation of Petitioner.
      Again, Dr. Burton did not diagnose Petitioner with an MCI. Dr. Burton believed
      Petitioner's evaluation fell within normal limits.

144.  On December 3, 2019, Petitioner filed a motion to appoint Dr. Perri as a
      neuropsychologist in this case to address medical issues Respondent has
      raised concerning Petitioner's ability to parent the children.

145.  Dr. Perri was recommended by Dr. Marvin without input from either party.
      However, Respondent objected to the use of Dr. Perri, based on some alleged
      connection between Petitioner and Dr. Perri, which would result in a bias.
      Respondent failed to present any support for this allegation.

146.  Petitioner's motion was granted by order of December 23, 2019.

147.  During the evaluation process, Respondent attempted to contact Dr. Perri
      to discuss Petitioner's medical information. Respondent attempted this
      communication prior to Petitioner's initial appointment for the evaluation. Dr.
      Perri's office did not allow the contact, based on federal health privacy laws
      followed by all doctors. Dr. Perri interpreted Respondent's actions as an
      attempt to influence or manipulate the evaluation process. Respondent did not
      feel this was inappropriate behavior on her part.

148.  Due to Respondent's actions, Petitioner filed a motion on February 11,
      2020, seeking an order preventing Respondent from contacting Petitioner's
      medical providers. The motion was granted by order of February 19, 2020.

149.  On April 16, 2020, Dr. Perri tendered a report. Dr. Perri determined
      Petitioner has a Mild Cognitive Impairment, which is currently treated by

EXB : 000032 of 000098

Filedred          18-CI-501606     03/01/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                              NOT ORIGINAL DOCUMENT
                                                              03/01/2022 09:56:56 AM
                                                              81535

medications that minimize the deficits in brain functioning associated with the condition, with no notable impact to Petitioner's overall functioning. The report specifically found that Petitioner's functioning has improved since 2013 as a result of the medication and there is no evidence of ongoing decline. However, the disease may lead to Petitioner developing impairments in the future.

150.    Dr. Marvin interviewed Petitioner for approximately thirteen (13) hours as a part of this evaluation and observed him with the children. Dr. Marvin does not report any concerns as to Petitioner's memory or functioning. Dr. Marvin does not believe Petitioner's cognitive impairment currently affects his ability to parent the children.

151.    Petitioner has been employed as a financial planner since 1995. Petitioner has been at his current employer for over ten (10) years. Petitioner's position requires him to process large amounts of complicated information. Petitioner's high earnings indicate he does this successfully. There have been no allegations that Petitioner's employment has been negatively impacted by his MCI diagnosis. Petitioner has maintained his employment at the same company throughout this litigation, even after his company was informed of the allegations made against Petitioner in this case.

152.    Despite this evidence, Respondent continues to believe Petitioner lacks the mental capacity to safely parent the children. Even after Dr. Perri's evaluation and report, Respondent continued to misrepresent that Petitioner was suffering from dementia, including in filings for Emergency Protective Orders. It is not

EXB : 000033 of 000098

Filedred          18-CI-501606      03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                                        NOT ORIGINAL DOCUMENT
                                                                        05/02/2022 09:56:55 RM
                                                                        81535

realistic that Respondent was confused as to the diagnosis, as she is medical doctor and the evaluation results were explained in detail.

153.   According to Respondent, Petitioner's diagnosis has resulted in Petitioner leaving medication where the children can access it, including dropping pills on the floor. Petitioner denies he leaves medication in places accessible to the children. Petitioner believes Respondent has planted the pills and fabricated stories in order to gain an advantage in this litigation. There have been no reports of accidental ingestion of medication by the children since their births.

154.   Respondent is fifty-one (51) years old.

155.   Respondent has been diagnosed with Multiple Sclerosis. It has been described as mild in nature. Respondent initially had symptoms in 2001, but was not diagnosed until April 2003.

156.   Respondent has received treatment for her MS through the Cleveland Clinic.

157.   Respondent has presented evidence from her medical provider showing she currently has no impairments related to her multiple sclerosis. Petitioner had testing performed in 2018, which showed no notable deficits in her judgment and showed above average functioning overall. The disease is degenerative in nature and Respondent may develop impairments in the future.

158.   Petitioner accepts the medical evidence presented and is not asserting that Respondent's medical condition prevents her from caring for the children.

159.   The older child has no significant physical health issues. Medical treatment related to alleged injuries will be addressed in a separate section.

EXB : 000034 of 000098

Filed red          18-CI-501606     03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                          NOT ORIGINAL DOCUMENT
                                                          03/01/2022 09:56:56 AM
                                                          81535

160.   In June 2018, Respondent took the older child for medical treatment related
       to her view that the child was falling more than normal. Medical records indicate
       the child had low-average coordination for his age, with the recommendation
       that he receive occupational therapy.

161.   The older child does have a speech articulation issue. It does not affect the
       child's vocabulary or ability to communicate his thoughts effectively, but it does
       make it difficult to understand him at times. The child attends speech therapy.

162.   The younger child has shown signs of a potential articulation delay as well.

163.   Both children have experienced common childhood illnesses, such as
       upper respiratory infections, strep, and ear infections. Both children attend
       annual well-check appointments. Both children are up to date on their
       immunizations.

164.   Petitioner has a history of mild anxiety and depression. Petitioner takes
       medication for these conditions. Petitioner is not enrolled in therapy.

165.   Petitioner has also been diagnosed with ADHD. Petitioner is prescribed
       medication for the condition. Petitioner reports he has continuously taken the
       medication as prescribed, with no disruptions to his prescription. Petitioner's
       medical records indicate he last attended an appointment with his psychiatrist
       on August 6, 2019 and his prescriptions would have expired in March 2020.

166.   There is no indication that Petitioner's mental health negatively impacts his
       ability to parent the children or act in their best interests.

167.   Petitioner participated in psychometric testing in August 2019 with Dr.
       Marvin and in February 2020 with Dr. Perri, as part of a neuropsychological

EXB : 000035 of 000098

Filed    18-CI-501606    03/02/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/02/2022 09:56:56 RM
81535

evaluation. Both results were essentially the same and show Petitioner presents as well-adjusted, with no observable signs of maladjustment.

168.   Respondent has not been diagnosed with a mental illness. Respondent reports a history of mild depression and anxiety, which she believes does not interfere with her ability to parent the children. Respondent has never sought or received therapy for these conditions. Respondent has not taken any medications for these conditions.

169.   Respondent participated in psychometric testing in October 2019 as part of the custody evaluation. The testing did not show any elevated levels.

170.   Multiple third parties have expressed concern about Respondent's mental health prior to and during the course of this litigation, including its impacts on the children. In the custody evaluation, Respondent reported that everyone thinks she is crazy.

171.   In August 2018, the co-parenting therapist for both parties referred each to individual therapy after determining their co-parenting issues exceeded her skill set.

172.   On September 28, 2018, the older child was interviewed by the Child Advocacy Center at Family and Children's Place. One of the recommendations following the interview was that both Petitioner and Respondent seek outpatient therapy to address ongoing parental conflict and co-parenting issues.

173.   On October 6, 2018, Pediatric Forensic Medicine recommended both parties obtain parental capacity and forensic mental health evaluations.

EXB : 000036 of 000098

Filed
Eiltedred          18-CI-501606      03/01/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        03/01/2022 09:36:35 AM
                                                        81535

174.   On December 13, 2018, the previous Friend of Court filed a report in this action stating concerns as to Respondent's mental health and recommending both parties participate in individual therapy.

175.   On May 14, 2020, Pediatric Forensic Medicine released a report related to abuse claims made by Respondent against Petitioner. The report specifically notes concerns that Respondent was exhibiting behaviors consistent with Pediatric Condition Falsification through fabrication of false child maltreatment claims. These behaviors include misrepresenting statements by medical providers.

176.   Respondent has also shown signs of being overly enmeshed with the older child, with whom she co-slept until June 2020, when Respondent's overnights were terminated. Dr. Marvin also found Respondent's identity and emotional needs are directly tied to her relationship with the children.

177.   During one of Petitioner's two (2) day periods of unsupervised parenting time in August 2018, Respondent sent 150 texts messages and attempted ten (10) FaceTime calls with the children. Dr. Marvin described the communications from Respondent to Petitioner as emotional and unpredictable, as well as clingy, hysterical and apologetic. All of Petitioner's responses were appropriate and polite.

178.   Respondent denies she has Pediatric Condition Falsification, as her claims of abuse and neglect by Petitioner are true.

179.   In support of her position, Respondent obtained an expert witness, Dr. Carole Jenny. Dr. Jenny is an expert in child abuse. Dr. Jenny was paid by

EXB : 000037 of 000098

Filedred        18-CI-501606      03/01/2022       David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 08:56:56 PM
81535

Respondent for her expert appearance. Dr. Jenny and Respondent have a friend in common.

180.   Dr. Jenny testified she does not believe Respondent meets the criteria for Pediatric Condition Falsification. Dr. Jenny only reviewed the medical records presented to her. Dr. Jenny did not speak to Petitioner, the children, or any other third party involved with this action. Dr. Jenny was not provided a copy of the custody evaluation in this case, despite the provision of the agreed order allowing the report to be provided to expert witnesses.

181.   In her August 2020 final report, Dr. Marvin determined Respondent has a personality disorder. Dr. Marvin recommended Respondent obtain intensive and extended mental health treatment with a court-aware therapist who is highly familiar with personality disorders. Dr, Marvin also recommended the therapist be provided with access to the full custody evaluation.

182.   Respondent testified she attempted to seek treatment with the provider listed in Dr. Marvin's report, but the provider did not agree to treat her.

183.   On June 30, 2020, Respondent obtained an emergency mental health evaluation at the Couch. Documentation from the appointment indicates Respondent was showing symptoms of anxiety and depression and met the requirements for reaction to severe stress. Respondent did not self-report any thoughts of harming herself or others. Based on this, the facility did not believe Respondent to be a threat to herself or others at the time.

184.   Respondent has not enrolled in therapy since June 30, 2020.

EXB : 000038 of 000098

SR-68

Filed red        18-CI-501606     03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                              NOT ORIGINAL DOCUMENT
                                                              05/01/2022 09:38:36 AM
                                                              81535

185.  On July 27, 2020, Respondent filed a motion to modify the parenting time to unsupervised. In the motion, Respondent stated she was seeking therapy.

186.  At the time of the March 4, 2021 trial date, Respondent was not enrolled in therapy.

187.  As of this order, there is no indication in the record that Respondent has enrolled in therapy.

188.  Petitioner believes Respondent has emotionally abused the children by using them to fabricate false physical and sexual abuse claims against him.

189.  Dr. Marvin concurs with Petitioner's position. On January 28, 2020, Dr. Marvin filed an affidavit of emotional injury regarding the children. The affidavit related to the photos and videos of the child taken by Respondent containing the child making disclosures of alleged abuse by Petitioner. Specifically, Dr. Marvin was concerned about the genuine distress showed by the child when videoed, as well as the daily photographing of the children's bodies. Dr. Marvin was also concerned with the amount of medical appointments the children endured as a result of ongoing claims of abuse.

190.  At the time of the affidavit, Dr. Marvin was unable to assign responsibility for the emotional injury, as it could have been caused by the alleged physical and sexual abuse of the older child by Petitioner, or by Respondent manipulating the child into falsely believing he was a victim of physical and sexual abuse by Petitioner.

191.  On February 11, 2020, Petitioner filed a motion to prevent Respondent for videoing or photographing the children, arguing the ongoing attempts by

EKB - 000039 of 000098

Filedred          18-CI-501606     03/81/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                                    NOT ORIGINAL DOCUMENT
                                                                    05/01/2022 09:36:56 RM
                                                                    81535

Respondent to record alleged abuse disclosures by the child was causing emotional harm. The motion was granted by order of February 19, 2020. The order is mutual in nature and prevents both parties from photographing and videoing the children.

192.    There are multiple videos where the older child shows distress at being videoed by Respondent. During these videos, Respondent continues to film despite the child's request to stop. Respondent questions the child repeatedly as to why the child does not want to be filmed, eliciting a response connected to Petitioner. The first of these videos referenced in the custody report is from May 2018.

193.    In a specific set of videos from August 28, 2018, the older child appears fine when picked up by Respondent from Petitioner's home. Over the course of the day, there are multiple videos where the older child becomes extremely upset while in the care of Respondent, after Respondent excessively questions the child as to his time at Petitioner's home and then implies the child's younger sibling is unsafe in Petitioner's care. In one video, the child is crying hysterically. While the child cries uncontrollably, Respondent continues to question the child while filming. Respondent does not offer meaningful reassurance to calm him. Respondent does not stop filming to physically comfort the child during this exchange.

194.    Respondent believes these videos represent evidence that Petitioner is neglecting and abusing the children and the older child fears Petitioner. At the time the August 28, 2018 videos were filmed, Respondent sent these videos to

EXB : 000040 of 000098

Filedred      18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:56:56 AM
81535

Petitioner in an effort to convince Petitioner to return the younger child to Respondent prior to the end of Petitioner's court ordered parenting time. Petitioner agreed to do so upon receiving the videos, given the level of distress the older child showed in the videos.

195.  On February 26, 2020, Respondent filed a motion to set aside the order of February 19, 2020, as she felt it was overly burdensome. The motion was denied by order of October 1, 2020.

196.  On June 25, 2020, Dr. Crumbo filed a CPS report regarding emotional abuse of the older child by Respondent, based on indications the child was being coached by Respondent to make false claims of physical and sexual abuse against Petitioner. Dr. Crumbo felt this was reflected in the changing disclosures by the child to take into account information provided to Respondent, such as the existence of security cameras at Petitioner's home and the lack of a closet with a lock in Petitioner's home.

197.  On June 30, 2020, Dr. Marvin filed a report with Child Protective Services, alleging Respondent was causing emotional injury to the children by generating false beliefs in the older child that he was a victim of physical and sexual abuse by Petitioner and exposing the children to unnecessary medical treatment in order to further her legal agenda. As part of her report, Dr. Marvin includes an affidavit of emotional injury to the child.

198.  On the same day, the Guardian Ad Litem filed an emergency motion for temporary sole custody to Petitioner, with the parenting time schedule modified to supervised visits to Respondent.

EXB : 000041 of 000098

Filedred          18-CI-501606     03/81/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                              NOT ORIGINAL DOCUMENT
                                                              03/02/2022 08:36:36 AM
                                                              81535

199.  A hearing was conducted on the Guardian Ad Litem's emergency custody motion on June 30, 2020. Petitioner was present at the hearing, along with his counsel. Notice was sent to counsel for Respondent, who was present at the heating. Respondent was not present at the hearing.

200.  At the hearing, Dr. Marvin testified as to her conclusion that Respondent was emotionally abusing the child. This included information received from LMPD CACU Detective Samantha Ernst, CACU, following an eight (8) hour interview conducted as part of the custody evaluation process.

201.  The information Dr. Marvin received from the interview led her to the conclusion that Respondent was coaching the child to make false allegations of abuse against Petitioner. These false allegations were resulting in the children being exposed to unnecessary medical treatment in an effort to build evidentiary support for the false abuse claims. Respondent's behavior also generated genuine fear and anxiety in the older child. Based on this, Dr. Marvin concluded Respondent had been emotionally abusing the older child since 2018.

202.  In the narrative portion of her custody report from August 2020, Dr. Marvin stated her belief that Respondent had relentlessly pursued her agenda in this case, with no regard for the children's developmental level and needs, then showed no empathy for the children or remorse for her actions. Dr. Marvin described Respondent's actions as actively engaging in perpetuating a false narrative to establish Petitioner as an abuser by manipulating the older child

EXB : 000042 of 000098

Filered          18-CI-501606     03/31/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                            NOT ORIGINAL DOCUMENT
                                                            03/01/2022 09:36:58 AM
                                                            81535

into making false disclosures of abuse and misrepresenting the information of third parties to make her claims appear more legitimate.

203.   The conclusions of Dr. Crumbo and Dr. Marvin are in line with the concerns of Pediatric Forensic Medicine of Respondent showing behaviors consistent with a diagnosis of Pediatric Condition Falsification related to Respondent's pattern of fabricating child abuse and maltreatment claims and misrepresenting medical information to providers.

204.   At the time of the temporary hearing, Dr. Marvin also had safety concerns for Petitioner and the children, based on Respondent's potential reaction to a loss of custody and parenting time. These concerns included Respondent physically harming Petitioner and/or the children or disappearing with the children. These concerns were supported by Detective Ernst and were serious enough to lead Dr. Marvin to contact the Guardian Ad Litem about developing a safety plan for Petitioner and the children, should an emergency temporary custody order be entered.

205.   At the conclusion of the hearing, the court granted the Guardian Ad Litem's motion for temporary custody and to modify the temporary parenting schedule. By order of July 1, 2020, Petitioner was awarded temporary sole custody of the minor children. Respondent's contact with the children was limited to digital contact only, with the contact to be supervised by Children's Safe Haven or other third party social worker. The order also contains a provision that Respondent may not be within 1,000 feet of Petitioner's home or place of employment.

Filered          18-CI-501606     03/31/2022     43   David L. Nicholson, Jefferson Circuit Clerk

EXB : 000043 of 000098

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:56:56 AM
81535

206.   As part of the custody evaluation, Dr. Marvin performed an assessment for risk factors for future acts of abuse and/or neglect. Dr. Marvin concluded Respondent did present a risk to the children, as Respondent showed behaviors consistent with a diagnosis of a personality disorder with anger, impulsivity, and unstable behavior. Respondent also exhibited extreme minimization of her acts of child abuse, as she believed she was acting in the children's best interest to protect them from Petitioner. Respondent also showed negative attitudes towards intervention, such as a resistance to individual therapy, as she believes she has done nothing wrong. Respondent also demonstrated a distorted attitude.

207.   As part of the Child Protective Services investigation, an assessment of risk factors for child abuse was performed regarding Respondent. The assessment reflected some concerns, including Respondent's dishonest and manipulative communications, her paranoia, and her level of frustration and anger, which appeared out of proportion to the situation.

208.   Respondent asserts Petitioner has physically abused both her and the children. Respondent does not make any allegations of interpersonal or family violence prior to 2017.

209.   Respondent also asserts Petitioner sexually abused the older child. The majority of Respondent's support for this position comes from disclosures made by the oldest child. Respondent also relied on statements attributed to Petitioner's ex-wife, Tammy Lewis, to support her position that Petitioner has a history of sexual attraction to children. The alleged sexual abuse disclosure

EXB : 000044 of 000098

Filed   18-CI-501606   03/02/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:56:56 AM
81535

made by the child have been limited to hand to penis and penis to penis contact involving the older child and Petitioner. They have all involved the use of the term pee pee. Petitioner maintains the older child did not refer to his genitals in this manner prior to the onset of Respondent's allegations. Respondent disputes this assertion. In one video taken by Respondent, the older child makes a statement about a snowman's nose looking like Petitioner's pee pee. This is immediately followed by the child stating, "I don't know what it means." In a forensic interview, the child was unable to identify pee pee on the drawing of a boy. When directed to the genitalia, the child seemed to only identify it as what he goes potty with.

210. In January 2018, prior to the date of separation, Respondent alleges Petitioner injured her wrist during an argument. Both parties agree Petitioner was attempting to leave when Respondent grabbed onto Petitioner's coat to prevent him from doing so. Petitioner asserts he removed Respondent's hand so he could leave. Respondent asserts Petitioner twisted her wrist when removing it from his jacket.

211. Respondent reported the alleged wrist injury and cause to her primary care physician, who noted it in her records. Respondent did not seek medical treatment. Respondent did not seek an order of protection.

212. On June 30, 2018, Respondent filed a petition for an emergency protective order on behalf of herself and the minor children. In the petition, Respondent claimed Petitioner pushed her into a refrigerator while she was holding one of the children.

EXB : 000045 of 000098

SR-75

Filed red    18-CI-501606    03/01/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:36:36 AM
81535

213.    In the incident, Petitioner was attempting to leave the marital residence and Respondent blocked him. Petitioner asserts he brushed past Respondent in order to exit the home. Respondent asserts Petitioner used his shoulder to shove Respondent into the refrigerator while passing. Respondent was holding the older child at the time of the incident.

214.    Dr. Sheila Guelda was present for the incident. Dr. Guelda testified that she did not see Petitioner come into physical contact with Respondent, but did see Petitioner storm past Respondent and Respondent fall against the refrigerator.

215.    The petition was granted by a district court judge during off hours, protecting Respondent only. Respondent was awarded temporary custody of the children as part of the order.

216.    An evidentiary hearing was scheduled for July 11, 2018 on Respondent's request for entry of a Domestic Violence Order. Respondent dismissed that petition voluntarily on the same day, prior to the hearing.

217.    On August 8, 2018, Respondent made a CPS report that Petitioner knocked the child in the head during unsupervised parenting time. Respondent's report was based solely on statements allegedly made by the older child. CPS opened an investigation into the report. It was ultimately unsubstantiated.

218.    On August 11, 2018, Dr. Alphonso Nichols filed a CPS report about Petitioner, based on Respondent's statements. There were no disclosures of abuse made directly to Dr. Nichols by the older child. The report was ultimately unsubstantiated.

EXB : 000046 of 000098

Filedred    18-CI-501606    03/01/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:36:56 AM
81535

219. On September 2, 2018, Respondent reported the younger child had bruises on her ear after Petitioner's parenting time. Respondent took the child to the emergency room for treatment. At the time of the alleged injury, the younger child was wearing a helmet twenty-three (23) hours per day as treatment for a medical condition.

220. A CPS report was filed on the same day and the alleged injury was investigated. It was ultimately unsubstantiated, as it could not be established if the alleged mark was a bruise.

221. As part of the investigation, a skeletal survey was done of the younger child. Medical records indicate Respondent was hesitant to allow the scan, given concerns as to radiation. Pediatric Forensic Medicine felt the necessity of the scan in determining whether child abuse occurred outweighed any actual or potential harm from the scan.

222. On September 6, 2018, a medical provider filed a CPS report regarding an elbow injury to the older child.

223. On September 9, 2018, Respondent filed a second petition for an Emergency Protective Order. The petition was filed on behalf of herself and the children, based on an injury to the older child's elbow on September 7, 2018, and two (2) alleged bruises on the younger child's ear on September 2, 2018.

224. The Emergency Protective Order was granted by a Jefferson District Court judge during off hours, protecting Respondent and the minor children. Respondent was not awarded temporary custody.

EXB : 000047 of 000098

Filed        18-CI-501606    03/01/2022    David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        05/01/2022 09:26:36 RM
                                                        81535

225. A hearing on the petition for a Domestic Violence Order was set for September 12, 2018. On the day prior to the DV hearing, Respondent filed a motion to modify the parenting schedule, based on the same or similar alleged facts in the Emergency Protective Order petition.

226. As to the elbow injury, the child fell while running during Petitioner's parenting time. This resulted in the child receiving scrapes to his knees. Petitioner did not notice any additional injuries to the child at the time. Video indicates the child was happy and showing no signs of pain or distress while with Petitioner following the fall. Petitioner is unsure if the injury occurred during his parenting time, but if it did, he believes it happened as a result of this fall.

227. After returning to Respondent's care, the child began experiencing discomfort in his left arm. A video recorded by Respondent shows the child sitting unattended on a counter, not using his left arm. Respondent took the child to swim practice after this video was filmed, as she states she did not notice the child not using the arm. Following swim practice, Respondent noticed the arm injury. Respondent took the child to the emergency room and an x-ray was performed.

228. The preliminary medical conclusion was that the injury was likely reflective of an inflicted hyperextension of the arm, with medical neglect for not seeking immediate medical attention. A second x-ray was performed on September 22, 2018, which showed no signs of a healing fracture.

EXB : 000048 of 000098

Filed    18-CI-501606    03/01/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:36:36 AM
81535

229.    Respondent believes Petitioner intentionally inflicted the injury on the child

by grabbing his arm while the child was in the stroller. Respondent bases this

belief solely on statements made by the child.

230.    After hearing proof, Respondent's petition was dismissed on September 12,

2018. The court found no act of domestic violence occurred.

231.    Following investigation, PFM revised their preliminary impression to reflect

that the accidental mechanism of injury offered by Petitioner was plausible and

the symptoms such as pain, swelling, and immobility may not have been

present at the time of the initial injury, instead developing on a delayed basis.

The report concluded there was no maltreatment by Petitioner. The report also

concluded the child did not suffer an obvious elbow injury. Based on this, the

Child Protective Services claim was unsubstantiated.

232.    Respondent did not agree with this conclusion by PFM. Respondent

contacted PFM to advocate her position that an injury was inflicted on the child

by Petitioner. When initial contacts were not receptive to Respondent's

arguments, she contacted supervisors to override their decision. The

supervisors declined to do so. During this process, Respondent called the

personal cell phone of one of the PFM supervisors during off hours. The

supervisor does not recall ever providing Respondent with her personal cell

phone or indicating to Respondent that it would be appropriate to contact her

on it after regular work hours.

233.    A third report was issued regarding the elbow injury in July 2020, following

the review of a video from Respondent's phone not previously submitted by

EXB : 000049 of 000098

Filedred        18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/02/2022 09:56:56 AM
81535

Respondent. The report indicated that PFM was ultimately unable to determine when the injury occurred, whether it was a fracture, and whether it was intentionally inflicted.

234.   On September 10, 2018, Dr. Sheila Guelda filed a CPS report regarding Petitioner. The report was incorporated into the ongoing investigation of Petitioner. The report was ultimately unsubstantiated.

235.   On September 13, 2018, an unknown third party identifying themselves as a representative with the older child's school reported abuse allegations against Petitioner to Child Protective Services, similar to those allegations Respondent had been making against Petitioner. It was later determined that the third party was lying as to their connection to the child's school. The identity of the reporting source remains undetermined.

236.   Respondent believes Petitioner dropped the oldest child on September 15, 2018, causing a back injury. The injury was reported to Child Protective Services on September 18, 2018 and added to the ongoing investigation.

237.   Respondent took the child to the emergency room on September 16, 2018. Medical records indicate the child was no in acute distress at the time and there was no spine tenderness. X-rays were performed, which came back negative for an injury. The child was discharged with follow up instructions of Advil for pain and a recommendation to obtain a spine MRI if pain persisted.

238.   It is Respondent's position that the child's back pain persisted. However, videos from Respondent's phone indicate otherwise, showing the child moving freely and without visible signs of pain during the period of his alleged back

EXB : 000050 of 000098

Filedred          18-CI-501606     03/81/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                          NOT ORIGINAL DOCUMENT
                                                          05/02/2022 09:36:36 AM
                                                          81535

injury. This includes a video shortly after the MRI in which the child is playing on a giant bouncy slide during Respondent's parenting time with no indication of pain or limited mobility.

239.    Based Respondent's report of ongoing pain, an MRI was scheduled on October 23, 2018. This was arranged by Respondent without consent of Petitioner, despite a court order requiring both parties to consent to non-emergency medical treatment for the children. The MRI required the child to be sedated. Results came back normal.

240.    The allegations as to the back injury were ultimately unsubstantiated by Child Protective Services, as PFM was unable to determine an injury occurred or that it was indicative of inflicted injury.

241.    On September 20, 2018, Respondent made her first allegation to CPS that Petitioner was sexually abusing the older child. This was based almost entirely on statements attributed to the child. Two (2) other individuals made similar reports on the same day. These individuals are both believed to be connected to Respondent. The reports were included in the ongoing investigation into Petitioner. The reports were ultimately unsubstantiated.

242.    On September 26, 2018, Respondent reported to Child Protective Services that the older child had made disclosures of abuse by Petitioner to Dr. Crumbo. This was not reported by Dr. Crumbo.

243.    On September 28, 2018, the Child Advocacy Center with Family and Children's Place conducted an interview with the older child, who was age two (2) years, ten (10) months at the time. The interview was conducted based on

EXB : 000051 of 000098

SR-81

Filedred          18-CI-501606     03/31/2022       David L. Nicholson, Jefferson Circuit Clerk
                                                    NOT ORIGINAL DOCUMENT
                                                    05/01/2022 09:36:36 AM
                                                    81535

a Child Protective Services referral. The report from the interview concludes the child was insufficiently verbal. Respondent requested a new team be appointed and another forensic interview be scheduled.

244.   On October 6, 2018, Respondent made a CPS report, based on statements the child made during the Child Advocacy Center interview. The statements were similar to those already reported previously. Respondent included in her report her concern about the lack of action by CPS and indicated her intention of involving supervisors and the county attorney.

245.   On October 6, 2018, an unknown third party reported allegations of sexual abuse by Petitioner against the older child. The report specifically included a statement that the child would not tell the truth during the interview, attributable to fear of Petitioner. This report was ultimately unsubstantiated.

246.   The case was subsequently referred to Louisville Metro Police Department, Crimes Against Children Unit, who scheduled another interview for October 7, 2018. During the interview, the child did not make any disclosures of abuse by Petitioner without Respondent present. When Respondent was present, the child made disclosures but did not provide any details.

247.   On October 9, 2018, Respondent filed her third petition for an Emergency Protective Order, based on the allegations of sexual abuse by Petitioner. The petition was for protection of the children only. The petition was granted by a district court judge during off hours. It was on behalf of the children only.

EXB : 000052 of 000098

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:36:36 AM
81535

248.   The petition was dismissed by order of October 17, 2018. The order dismissing included findings that Respondent (Petitioner in that action) was not credible and there was no evidence presented of sexual contact.

249.   On October 23, 2018, Respondent filed a fourth petition for an Emergency Protective Order. Respondent alleges Petitioner physically assaulted her in the hospital parking lot, following the child's MRI. The incident occurred when Petitioner was attempting to place the sedated child in his car and leave. Respondent ended up removing the child from Petitioner's car and leaving with him. This resulted in Petitioner being denied his court ordered parenting time with the child.

250.   The Emergency Protective Order was entered on behalf of Respondent and the children. It was granted by a district court judge during off hours. Respondent was not awarded temporary custody of the children.

251.   Following a hearing, Respondent's petition for a Domestic Violence Order was denied by order of January 23, 2019. That order is hereby incorporated in full, by reference. In the thirteen (13) page order, this court specifically noted that Respondent spoke about Petitioner in a sarcastic manner and demeaned him in front of the child. The court also noted Respondent's (Petitioner in that action) description of the incident was directly contradicted by video evidence and her testimony was exaggerated or outright untrue.

252.   Respondent also sought criminal charges against Petitioner related to the incident. The criminal charges were dismissed with prejudice by agreement on July 21, 2020.

EKB : 000053 of 000098

Filedred          18-CI-501606          03/02/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                                                    NOT ORIGINAL DOCUMENT
                                                                                    03/01/2022 09:56:56 AM
                                                                                    81535

253. On October 24, 2018, Petitioner filed a motion for all petitions for Emergency Protective Orders from this family be heard by this judge, given Petitioner's concern that Respondent was manipulating information to obtain Emergency Protective Orders in off hours from district court judges unfamiliar with the facts and history of this litigation. At the time, all four (4) of the Emergency Protective orders had been obtained by Respondent during off-hours, when they are issued by district court judges. The motion was granted by order of February 6, 2019.

254. On January 22, 2019, CPS received a report that the child made statements about sexual abuse by Petitioner. On January 30, 2019, Respondent asserted to CPS that this occurs every night Petitioner has unsupervised parenting time.

255. On January 30, 2019, Respondent reported a lip injury to the older child, which she stated Petitioner inflicted. There were also claims Petitioner was medically neglectful based on the older child's scrotal infection in October 2018. This is the first time Respondent has raised this particular issue with CPS. Respondent also reported Petitioner ignored the younger child's flu symptoms on December 24, 2018, as well as previous illnesses like strep and ear infections. These claims were ultimately unsubstantiated.

256. On the same day, CPS records show Respondent made an emotional call to CPS, advocating for abuse claims against Petitioner to be substantiated.

257. On February 1, 2019, Respondent attempted to make a CPS report, but CPS declined to accept it, given the number of reports it had received from Respondent. In the report, Respondent claimed she was making the report at

EXB : 000054 of 000098

Filed          18-CI-501606     03/01/2022     David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:36:38 AM
81535

the recommendation of a medical provider.  Respondent was upset during the report at the lack of action by CPS.

258.   On that same day, CPS did a surprise home visit at Petitioner's residence and interviewed the older child, who did not make any disclosures of abuse.

259.   On March 11, 2019, staff of Sacred Heart made a CPS report based on statements of alleged abuse made by Respondent but attributed to the child. The statements were made during a parent teacher conference, without the older child present. The report was not based on any disclosure by the older child directly to the staff. The claims were essentially the same as claims previously reported to CPS, including the elbow injury and sexual abuse. The staff believed Respondent was making the claims to them, as she knew they were mandatory reporters. A Sacred Heart administrator was later contacted by a third party connected to Respondent, who exerted pressure on the administrator to change her previous report to CPS. This was followed by Respondent threatening legal involvement on the issue, which resulted in the administrator contacting the school's legal representative and human resources. The administrator stopped responding to Respondent's emails about the CPS report.

260.   On August 28, 2019, Respondent took the younger child for medical treatment for an alleged ear bruise. Respondent reported the mark to Child Protective Services. A skeletal survey was performed, which came back negative. The report was ultimately unsubstantiated.

EXB : 000055 of 000098

Filed          18-CI-501606     03/01/2022     David L. Nicholson, Jefferson Circuit Clerk

Filedred          18-CI-501606     03/01/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                      NOT ORIGINAL DOCUMENT
                                                      05/01/2022 09:36:36 AM
                                                      81535

261.    On July 19, 2019, the older child participated in a second interview as part
of the Crimes Against Children criminal investigation of Petitioner. The child did
not make any abuse disclosures during the interview.

262.    On August 28, 2019, Respondent made a report to CPS regarding an ear
bruise on the younger child. The report was ultimately unsubstantiated. This
claim was also reported to Crimes Against Children Unit and it was added to
their investigation.

263.    On October 4, 2019, Respondent reported the younger child had a torn
frenulum. This was reported to Pediatric Forensic Medicine, who concluded
there was no definitive injury.

264.    On October 7, 2019, the younger child suffered an injury to her nail.
Petitioner reported this was a result of a toy bubble machine. Petitioner took
the child to the emergency room for treatment. The injury was referred to PFM,
who determined the explanation offered by Petitioner was plausible.

265.    On October 25, 2019, Detective Ernst executed a search warrant on
Respondent's cell phone, which resulted in the confiscation of the phone.
Information retrieved from the phone was included in the investigation and
considered as part of the ultimate conclusion.

266.    On November 2, 2019, the younger child had a thigh bruise. This injury was
referred to the CACU investigation. It was the conclusion of PFM that the injury
was not diagnostic of child abuse.

267.    On November 18, 2019, Respondent made a report of sexual abuse by
Petitioner against the older child. Respondent submitted eight (8) audio/video

EXB : 000056 of 000098

Filed    18-CI-501606    03/02/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:36:36 AM
81535

recordings in which the child makes disclosures. Respondent also included a

recording of a phone conversation with Petitioner's ex-wife.

268.    On November 19, 2019, Dr. Marvin made a similar report to CPS, based on

the recordings of disclosures made by the older child and a phone conversation

between Respondent and Petitioner's ex-wife.

269.    On January 3, 2020, PFM issued a report related to various injuries

discussed above. The report determined there was no maltreatment by

Petitioner regarding the injuries addressed in the report. The report did note

concern as to choices made by Respondent.

270.    The report also included a recommendation for body checks of the children

to be performed at each exchange by a neutral third party, as the investigation

was having difficulty determining who was in possession of the children when

the injuries occurred. A plan for the body checks was developed by PFM, Dr.

Marvin and Dr. Crumbo. Petitioner agreed to its implementation. Respondent

did not.

271.    On January 10, 2020, Respondent took the older child for medical treatment

regarding an abdomen bruise and ear bruise. The medical provider did not

believe the mark raised concerns of child abuse. The mark was reported to

CPS on January 11, 2020. The report was ultimately unsubstantiated.

272.    On March 17, 2020, the older child was subjected to a third forensic

interview by the Crimes Against Children Unit of LMPD. During the interview,

the child did not make any disclosures of abuse by Petitioner. The child did

EXB : 000057 of 000098

Filedred          18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                                NOT ORIGINAL DOCUMENT
                                                                05/02/2022 09:56:56 RM
                                                                81535

make statements indicating Respondent was not being honest in her statements regarding the allegations.

273.   On April 26, 2020, the older child disclosed alleged physical abuse by Petitioner during a therapy session with Dr. Crumbo. The child made statements that Petitioner locked him in a cabinet overnight. The child also disclosed alleged sexual abuse by Petitioner. This is the first time the child made any disclosure of abuse by Petitioner directly to Dr. Crumbo. Dr. Crumbo reported this disclosure to CPS on April 29, 2020. The report was ultimately unsubstantiated, as Petitioner was able to provide video footage from his home security system to show the child's statements were not true.

274.   On May 1, 2020, Respondent filed a fifth petition for an Emergency Protective Order, based on the child's statements to Dr. Crumbo. Respondent alleges the older child made a similar disclosure to Dr. Sheila Guelda. The petition was granted on behalf of Respondent (Petitioner in that action) and the minor children. It was entered by a district court judge during off hours. On May 14, 2020, this court entered an order dismissing the petition. The court concluded that an act of domestic violence had not occurred.

275.   On May 11, 2020, Dr. Crumbo reported to CPS that the older child had disclosed that Petitioner had choked him with bread. This report was ultimately unsubstantiated.

276.   On May 14, 2020, PFM released a third report related to injuries or alleged injuries to the children. Again, PFM concluded there was no maltreatment by Petitioner.

EXB : 000058 of 000098

277.   On June 3, 2020, Respondent reported to Dr. Crumbo that the older child
       was now making statements indicating Petitioner was sexually abusing the
       younger child.

278.   On June 9, 2020, Respondent filed her sixth petition for an Emergency
       Protective Order. Respondent attempted to have the petition directed to a
       district court judge, rather than this court. That attempt was denied based on
       the order of February 9, 2019. After review, this court denied Respondent's
       petition.

279.   Respondent immediately filed a seventh petition, again asserting it should
       be reviewed by a district court judge, as she believed there was a motion
       pending before the Kentucky Supreme Court to disqualify this court. This
       request was again denied, as the Kentucky Supreme Court had already denied
       Respondent's request to disqualify. Upon review by this court, Respondent's
       request for an EPO was denied.

280.   Ms. Tammy Lewis testified at trial. Ms. Lewis was married to Petitioner for
       approximately one (1) year around 2000. At the time of the marriage, Ms. Lewis
       had minor children from a previous marriage, ages six (6) and ten (10).
       Petitioner resided in the home with the children during the marriage but was
       never left in the caregiving role. Ms. Lewis testified she had no concerns about
       Petitioner and her children during the brief marriage. Ms. Lewis denied she is
       scared of Petitioner.

281.   Ms. Lewis was previously contacted by Respondent. Respondent recorded
       the conversation without the consent of Ms. Lewis and after telling Ms. Lewis

EXB : 000059 of 000098

Filed        18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:56:36 PM
81535

she was not doing so. Ms. Lewis became uncomfortable with Respondent's ongoing efforts to contact her and discuss the litigation. Ms. Lewis blocked Respondent's number on her phone. Respondent then called her from other numbers, called her at work, and attempted to contact Ms. Lewis's daughter.

282.   Dr. Marvin reports Petitioner's narrative as to the events of this case has remained constant throughout the evaluation and is fully consistent with the collateral sources and evidence gathered by Dr. Marvin, giving Petitioner adequate reliability as a source of information. Dr. Marvin found Petitioner's stated rationales for his decisions and behaviors throughout this process to be consistently logical, prudent, and goal-oriented.

283.   As part of her evaluation, Dr. Marvin also did a Child Abuse Potential Inventory on Petitioner. The profile came back as valid and reflected Petitioner does not share characteristics with known active child abusers and presented no child-based risk factors indicating a potential for future acts of neglect and abuse. A similar tool was used as part of the Child Protective Services investigation, which also determined Petitioner showed no risk factors for child maltreatment.

284.   From August 11, 2018 through June 2020, Child Protective Services investigated Petitioner regarding approximately twenty-five (25) different reports, including collateral reports, covering all of the incidents discussed above. On all twenty-five (25) reports, Child Protective Services determined the allegations against Petitioner to be unsubstantiated.

EXB : 000060 of 000098

285.   Throughout this process, Respondent has expressed her ongoing distress
       at Child Protective Services lack of action as to the claims, beginning in at least
       October 2018. This distress led Respondent to advocate her position to CPS
       superiors and to contact the office of the governor's wife to obtain assistance.
       In May 2020, Respondent stated her intent to contact the Ombudsmen about
       her concerns regarding the investigation. On May 8, 2020, Dr. Sheila Guelda
       sent a three (3) page email to the CPS Regional Supervisor, which was highly
       critical of CPS an advocated for action to be taken against Petitioner. Dr.
       Alphonso Nichols also sent a letter to CPS on Respondent's behalf, advocating
       her position.

286.   There have been no CPS reports involving the children since the entry of
       temporary custody order of July 1, 2020.

287.   The LMPD CACU investigation was closed on May 14, 2020, after Detective
       Ernst concluded there was no evidence to support any claims that Petitioner
       was physically or sexual abusing the children. The final report in the action was
       approximately eighty (80) pages. In the investigation, which lasted
       approximately eighteen (18) months, Detective Ernst was unable to find
       anything to corroborate the physical and sexual abuse claims made by
       Respondent or others on her behalf. The investigation also did not reveal any
       criminal neglect by Petitioner in his caregiving for the children.

288.   Detective Ernst reported Petitioner was fully compliant with the investigation
       and provided consistent and reliable information, as well as supporting videos
       from his high-quality home security system.

EXB : 000061 of 000098

Filedred          18-CI-501606     03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                       NOT ORIGINAL DOCUMENT
                                                       03/02/2022 09:56:56 AM
                                                       81535

289.   Detective Ernst reported significant concerns about Respondent as
developed through the course of her investigation of Petitioner. Specifically,
Detective Ernst believes Respondent coached and influenced the child to make
false disclosures of abuse about Petitioner, as the disclosures were only made
by the child to Respondent or third parties aligned with her. Detective Ernst also
believes Respondent engaged in deceptive behavior in order to achieve her
goal of having Petitioner criminally charged for sexually and physically abusing
the child.

290.   Detective Ernst's determination as to Respondent coaching the child was
based on videos obtained from Respondent's seized phone, which show
multiples takes of videos in which the child ultimately makes a disclosure of
abuse by Petitioner. The child speaks directly to the camera for many of the
disclosures. These videos involve fun activities for the children or some sort of
treat, such as a snack. On multiple videos, a Respondent or some other third
party present gives a verbal cue.

291.   During the investigation, Detective Ernst contacted Sacred Heart in March
2020. During this contact, Sacred Heart expressed concern over Respondent's
behavior, including observations that Respondent was coaching the older child
to make false allegations of abuse against Petitioner.

292.   Dr. Marvin also believes Petitioner has coached the older child into making
false claims of abuse against Respondent, as Respondent chose to submit only
certain videos from the plethora of disclosures she obtained from the child,
which Dr. Marvin described as cherry-picking the best takes. In the videos

EXB : 000062 of 000098

Filedred          18-CI-501606          03/02/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                                    NOT ORIGINAL DOCUMENT
                                                                    05/02/2022 09:36:36 AM
                                                                    81535

Respondent chose to submit, Respondent's behavior doesn't appear as coaching or leading the child. The videos also showed Respondent in the most positive light and displaying ideal maternal behavior by being empathetic, loving and neutral. In the disclosure videos Respondent deleted or chose not to submit, her questions are leading and her behavior is questionable, including responding to one disclosure with sarcasm. Respondent never informed Dr. Marvin there were multiple takes of the tendered videos. Dr. Marvin also noted that the child was aware of being filmed and often made the disclosure by looking directly into the camera, not at Respondent.

293.   When Dr. Marvin confronted Respondent with evidence of the coaching in July 2020, Respondent stated that she used to engage in the behavior but no longer does so. Respondent denies she knew this was coaching behavior at the time, but now recognizes she engaged in inappropriate parental behavior. Respondent showed no remorse or regret for her actions. Respondent blamed her choice on the advice of her previous attorneys.

294.   Dr. Ginger Crumbo also believes Respondent has coached the older child into making false claims of abuse against Petitioner. This conclusion is based in part on the child's lack of disclosure of abuse in therapy sessions from September 2018 to April 2020, despite the child appearing bonded and comfortable in the therapeutic relationship. The child had made no reference to his genitals in sessions prior to April 2020. The child has also not made any disclosures since the temporary custody order of July 1, 2020.

EXB : 000063 of 000098

SR-93

Filedred        18-CI-501606        03/02/2022        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:26:36 AM
81535

295.   As part of the LMPD CACU investigation, Detective Ernst also reported major concerns as to Respondent's veracity and reliability as a reporter of the alleged abuse. Detective Ernst described this behavior as manipulating, misleading and misrepresenting information to the point that Respondent lacked all credibility. This is similar to behavior the court has witnessed from Respondent in testimony before this court.

296.   Dr. Marvin expressed similar observations as to Respondent's honesty. Dr, Marvin reported Respondent to be superficially cooperative, but internal and external inconsistencies in her narrative made it unreliable, with little or no integrity. According to Dr. Marvin, this makes Respondent a highly manipulative reporter of poor reliability.

297.   Dr. Crumbo cited at least four (4) occasions she knows of in which Respondent misrepresented information from Dr. Crumbo to third parties, with Respondent attributing statements to Dr. Crumbo that Dr. Crumbo denies making.

298.   Child Protective Services records indicate concerns with Respondent's honesty as well, referring to her behavior as dishonest and deflective.

299.   Sacred Heart also reported concerns about Respondent's reliability as an information source, as she had attempted to prevent Petitioner from participating in a Father's Day event at the school, based on her assertion that there was a no contact Emergency Protective Order in place. When the school requested documentation to support this claim, Respondent failed to produce it.

EXB : 000064 of 000098

SR-94

Filed   18-CI-501606   03/31/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:56:55 AM
81535

300.   In their report on October 6, 2018, Pediatric Forensic Medicine expressed significant concerns about Respondent's credibility. Of particular note was Respondent lying as to statements she attributed to a treating ER physician, reporting the doctor concluded one of the children had a bruise. When contacted, the ER provider denied any such statement and informed PFM he expressed no concern as to the mark. They took steps to address with Respondent her pattern of misrepresenting information and providing inaccurate descriptions of PFM findings to third parties.

301.   The child also made statements in at least one (1) forensic interview that contributed to concerns about Respondent's veracity. The child has made similar statements to Sacred Heart staff, Dr. Ginger Crumbo, and Child Protective Services representatives.

302.   It is Petitioner's desire that the children have a relationship with the children, but believes this cannot occur, as Respondent's mental state and pattern of behavior endangers the health and safety of the children and Petitioner.

303.   Specifically, Petitioner believes liberal and unsupervised contact with Respondent will result in ongoing emotional abuse to the children through coaching and fabricated claims of abuse, due to her on-going, unsupported belief that he is abusing the children.

304.   Respondent acknowledges she maintains an ongoing belief that Petitioner is physically and sexually abusing the children. Respondent asserts that any conclusion not in conformance with her beliefs as to abuse are a result of a bias, conspiracy, or corruption/undue influence of the third party by Petitioner

EXB : 000065 of 000098

Filedred          18-CI-501606     01/01/2022     David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:56:35 RM
81535

or someone on his behalf. Respondent has consistently stated throughout this litigation that she does not believe any of the third parties involved with this family have acted to protect the safety of the children. This includes Child Protective Services, the Guardian Ad Litem, the former Friend of Court, Dr. Ginger Crumbo, medical professionals at Pediatric Forensic Medicine, the LMPD Crimes Against Children Unit, Dr. Kelli Marvin, and this court.

305.   Petitioner asserts this same belief may result in her absconding with the children or harming the children and/or Petitioner. Petitioner's concern with Respondent disappearing with the children has been consistent throughout this litigation, due to statements Respondent had made to him in the past when discussing divorce, custody and parenting time.

306.   Petitioner believes Respondent has a capacity for violence, as Petitioner asserts Respondent has been physically aggressive in the past, beginning around 2010, including slamming doors, throwing items, and blocking his exit from emotionally fraught situations.

307.   Petitioner testified Respondent has made statements in the past that she would kill him in his sleep. Respondent acknowledges telling the former nanny she was desperate regarding preventing the children from being around Petitioner unsupervised. In June 2018, Respondent mentions getting rid of Petitioner in a text exchange. In March 2019, Respondent sent a text indicating she wished someone would run Petitioner over.

308.   Petitioner also believes Respondent has considered having him killed in the past, based on conversations between Respondent and a former nanny, as

EXB : 000066 of 000098

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:36:36 RM
81535

relayed to Petitioner by the former nanny. The record in this case contains an

affidavit signed by the nanny, Kim Steinboch, on May 23, 2018, describing the

alleged conversations.

309.   Respondent acknowledges conversations between Ms. Steinboch and

herself about killing Petitioner. Respondent asserts Ms. Steinboch initiated the

conversations and made the statements, with Respondent not taking the

comments seriously and offering only vague, joking responses in return. The

record in this case contains an affidavit signed on June 18, 2018 by a separate

employee of Respondent's, Steffanie Nelson, supporting Respondent's version

of the events.

310.   Neither Ms. Steinboch nor Ms. Nelson testified at trial.

311.   Petitioner also believes Respondent is responsible for recruiting a third

party to harass and intimidate him from November 17, 2018 to August 9, 2019.

During this time, the individual approached Petitioner at his place of

employment and left disturbing voicemails on Petitioner's unlisted cell phone in

which he threatened to publish abuse accusations made by Respondent

against Petitioner. The individual also came to Petitioner's home and left a note

inside of Petitioner's garage, causing Petitioner to fear for his safety. An

anonymous letter was left on cars at Petitioner's place of employment,

containing abuse claims against Petitioner similar to claims asserted by

Respondent in this action. Petitioner believes this was done by the same man.

312.   Respondent initially acknowledged being contacted by the same individual

during this period of time and providing him with extensive information as to

EXB : 000067 of 000098

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk

Filedred      18-CI-501606      03/01/2022      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:56:35 RM
81535

Petitioner and this case, but asserted she did not know the third party individual. Respondent testified she believed his claims that he was a local reporter investigating the case.

313.   Samantha Ernst of the Crimes Against Children Unit determined during the course of the investigation that the individual was connected to Respondent. The individual's phone number was saved in Respondent's phone under his actual name, not the name provided to Petitioner. The individual left a voicemail for Respondent on July 19, 2019, referencing the older child's second forensic interview, which was conducted on the same day.

314.   At trial, Respondent offered a barely plausible story regarding her connection to the individual, asserting he was a caregiver for her biological father, with whom she has minimal contact. According to Respondent's story, the individual must have overheard phone discussions between Respondent and her father, which inspired him to take action against Petitioner without the knowledge or consent of Respondent.

315.   Petitioner also points to Respondent's pattern of escalating her accusations and/or behavior when she is unsuccessful in obtaining her objective of sole possession of the children, which Petitioner believes also indicates a likelihood that she will abscond with the children or resort to physical violence.

316.   As recently as June 2021, the parenting time supervisor reported Respondent regularly discussed the litigation with him and appeared to have grown angrier and more desperate since the onset of his involvement with the case in April 2021.

EXB : 000068 of 000098

Filedred          18-CI-501606     03/02/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                            NOT ORIGINAL DOCUMENT
                                                            03/02/2022 09:36:36 AM
                                                            81535

317.   Dr. Marvin also believes Respondent could escalate her behavior and presents a high risk for violence, with Dr. Marvin phrasing it as uncomfortably high. Dr. Marvin believes Respondent's behavior is rooted in a severe, unspecified personality disorder, the effects of which are exacerbated during times of stress. Dr. Marvin described the actions of Respondent during this litigation as highly manipulative and indicative of extensive planning. Dr. Marvin believes Respondent's behavior represents the upper extremes of maternally toxic behavior, to a degree that is extremely rare, as it was very intentional and required Respondent to involve the older child in generating false claims of abuse against Petitioner. This shows an extreme lack of compassion and empathy for the child and an ability by Respondent to ignore the child's distress in order to obtain her legal objective. Dr. Marvin also reports the level of coaching used by Respondent shows an extreme maternal psychopathology rarely seen in even the most contentious of custody cases.

318.   Both Detective Samantha Ernst and Dr. Kelli Marvin consider Petitioner's safety fears regarding Respondent to be legitimate, given the totality of Respondent's actions in her pursuit of sole possession of the children.

319.   Petitioner's concern is compounded by Respondent's ongoing access to guns.

320.   On July 23, 2019, the Guardian Ad Litem filed a motion for an order to surrender all firearms, based on the request of Dr. Kelli Marvin. According to the motion, the request was based on Dr. Marvin's preliminary review of the

EXB : 000069 of 000098

Filedred      18-CI-501606    03/02/2022    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
05/02/2022 09:36:36 RM
81535

file, which she believed raised safety concerns. At the time of the motion, Dr. Marvin had not completed a violence risk assessment on the parties.

321.    Petitioner did not object to the motion.

322.    The motion was granted by order of July 30, 2019.

323.    On August 6, 2019, Respondent filed a motion to vacate the surrender firearms order, citing her constitutional rights. Respondent's motion was granted by order of December 23, 2019.

324.    In July 2020, Petitioner requested the return of his guns, which were being held by Respondent's friend, Dr. Sheila Guelda. Dr. Guelda did not return the guns, which Petitioner believed was a result of Respondent's actions.

325.    On August 4, 2020, Petitioner filed a motion for return of his guns. Petitioner was concerned about Respondent having access to the guns through Dr. Guelda, given the allegations Respondent was a threat to the safety of Petitioner and/or the children.

326.    The motion was granted by order of August 10, 2020, which required the guns to be returned by August 11, 2020 at 5:00 pm.

327.    One (1) gun was not returned at the time of the exchange, a Beretta handgun. The gun was referenced in the parties' October 1, 2020 financial issues final order, which states Respondent represents she is not in possession or control of the gun, but it shall be returned to Petitioner, if located.

328.    The gun was found by Respondent's friend and returned in January 2021.

329.    Petitioner cites Respondent's refusal to follow court orders as further evidence that Respondent is a threat to the safety of himself and the children.

EXB : 000070 of 000098

SR-100

Filedred          18-CI-501606     03/31/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        05/02/2022 09:36:36 RM
                                                        81535

330.   While this court has not found Respondent in contempt for violating court
       orders in this case, the court has made multiple findings of fact regarding
       incidences of Respondent not following court orders. This includes Respondent
       obtaining medical treatment for the children without consent of Petitioner,
       Respondent diagnosing and treating the younger child, Respondent unilaterally
       withholding the children from parenting time with Petitioner, Respondent failing
       to appear for mediation, and Respondent failing to complete the birth certificate
       process for the younger child.

331.   Further, Respondent seems unlikely to change her behavior, as she has
       consistently failed to accept responsibility for any of her actions in this case.
       Rather, when questioned about her choices, Respondent asserts no
       ownership, instead assigning responsibility for her actions to third parties,
       including medical providers, previous counsel, and various parties involved in
       the investigation of Respondent's abuse allegations against Petitioner.

332.   It is clear from the record that Respondent has no likelihood of allowing
       frequent, meaningful and continuing contact with Petitioner, as Respondent
       maintains an ongoing belief that Petitioner is abusing and neglecting the
       children. Respondent has consistently stated her desire to eliminate all contact
       between Petitioner and the children, or to make it extremely limited and
       supervised.

333.   During the period the parties used a shared parenting schedule, Sacred
       Heart reported Respondent had a pattern of keeping the older child out of

EXB : 000071 of 000098

Filedred          18-CI-501606      03/01/2022          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:36:36 AM
81535

school on Tuesdays, which was interpreted as an attempt to prevent Petitioner

from picking the child up in the afternoon.

334.    Respondent also maintains an ongoing belief Petitioner is not a father to the

children, does not love them, and has no legal basis for a custody claim, which

also indicates she has no desire to allow frequent, meaning and continuing

contact with Petitioner.

335.    On November 13, 2018, Petitioner filed a motion to compel Respondent to

add his name as father on the younger child's birth certificate. At a Case

Management Conference, counsel for Respondent did not assert an objection

to the motion.

336.    On January 22, 2019, Petitioner filed a second motion to compel

Respondent to add Petitioner's name to the younger child's birth certificate, as

this had not been done since the Case Management Conference. The motion

included a request for attorney fees.

337.    The issue was addressed in the court's order of June 21, 2019, which

compelled Respondent to complete the process to add Petitioner to the birth

certificate of the younger child. This was to be done within fifteen (15) days of

the entry of the order.

338.    Respondent did not complete the paperwork as ordered.

339.    On July 23, 2019, Petitioner filed a motion to hold Respondent in contempt

for failure to complete the birth certificate process as ordered. The motion was

denied by order of December 23, 2019. The order did note that Respondent

EXB : 000072 of 000098

SR-102

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:36:36 AM
81535

failed to comply with the order to complete the birth certificate process for the younger child.

340.   On August 6, 2019, Respondent filed a motion to set aside all temporary orders relating to the children, including the parenting schedule and appointment of the Guardian Ad Litem, based on Respondent's assertion that Petitioner was not the legal father of the children and had no standing to assert custody rights.

341.   On August 8, 2019, Respondent filed a motion to amend her answer and counter-petition to remove the children, requesting to amend it to reflect her new position that Petitioner is not the legal father of the children.

342.   Those motions were denied by order of December 23, 2019.

343.   On November 20, 2020, Respondent filed a motion for summary judgment as to paternity of the children. That motion was denied by order of December 6, 2020.

344.   Petitioner is requesting an award of child support.

345.   The first child support motion in this case was filed on October 24, 2018, requesting temporary child support from Petitioner. At the time of the motion, the parties were using a parenting schedule where the children resided with Respondent nine (9) out of fourteen (14) overnights.

346.   The motion was ruled on by order of November 6, 2018, setting Petitioner's temporary child support obligation at $2,148.00 per month, effective November 5, 2018. The amount included Petitioner's portion of work-related childcare

EXB : 000073 of 000098

Filed red          18-CI-501606        03/01/2022         David L. Nicholson, Jefferson Circuit Clerk
                                                           NOT ORIGINAL DOCUMENT
                                                           05/01/2022 09:36:56 RM
                                                           81535

incurred by Respondent. The parties were ordered to divide uninsured medical expenses, with Petitioner paying 62% and Respondent paying 38%.

347.   In the order, the court concluded Petitioner had gross income of $26,850.00 per month and Respondent had income of $16,427.00 per month, based on the limited income information available to the court at the time.

348.   On October 1, 2020, the court entered an order holding Petitioner's temporary child support obligation in abeyance, given the temporary custody order placing the children with Petitioner.

349.   On September 29, 2020, Petitioner filed a motion for temporary child support. In the motion, Petitioner listed his monthly income as $28,875.00, which included $875.00 per month in rental income.

350.   Petitioner is employed with as a financial adviser with Morgan Stanley.

351.   As of November 30, 2020, Petitioner had year to date earnings of $316,746.30, or $28,795.00 per month.

352.   In 2019, Petitioner had total income of $446,219.00. This amount reflects $301,909.00, or $25,159.00 per month, in W-2 wages, and $144,310.00 in debt forgiveness from his employer.

353.   Respondent is self-employed as a pediatrician, D/B/A Kidzlife Pediatrics. The practice has about 2,500 patients.

354.   In 2017, Respondent had income of $197,122.00, or $16,427.00 per month. In 2018, Respondent had income of $164,863.00, or $13,739.00 per month.

355.   The court could not find income documentation in the record for Respondent for 2019, 2020, and 2021.

EXB : 000074 of 000098

Filed red          18-CI-501606        03/01/2022         David L. Nicholson, Jefferson Circuit Clerk

Filedred        18-CI-501606     03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:35:55 AM
81535

356.   Respondent filed a response to the motion on October 16, 2020, in which she claimed she was unable to afford to pay child support. According to Respondent, her income at her medical practice has decreased as a result of this litigation and the impacts of the COVID pandemic. Because of this, Respondent reported she was not always able to pay herself a salary on time.

357.   Respondent also asserted she pays various expenses for the children, including clothing, medical bills and $783.50 per month for the older child's Sacred Heart tuition. Respondent was also depositing $300.00 per paycheck into a savings account for the children.

358.   Petitioner provides health and dental insurance coverage for the children through his employment. The cost of the coverage for the children only is $237.50 per month.

359.   Petitioner pays work-related childcare for the children at a cost of $1,374.64 per month, plus a $50.00 per month activity fee. This covers the younger child's full day care, plus the older child's afternoon care. The payments are for ten (10) months of the school year, resulting in an average monthly cost of $1,187.20, which includes the monthly activity fee for ten (10) months.

360.   On October 22, 2019, Petitioner filed a motion for reimbursement of uninsured medical expenses for the children.

361.   On August 18, 2021, Petitioner filed a motion for reimbursement of uninsured medical expenses for the children. Petitioner asserts Respondent owes $3,363.10 as her 38% portion of uninsured medical expenses he has incurred on behalf of the children from November 2018 through May 2021. This

EXB : 000075 of 000098

SR-105

calculation included an offset of $1,372.29 for Petitioner's 62% portion of uninsured medical expenses for the children paid by Respondent as of November 2019. Respondent did not provide documentation of expenses for reimbursement since that time.

362.  Petitioner is requesting an award of attorney fees, based on Respondent's actions during this litigation, including false allegations of abuse. In addition to defending five (5) unsuccessful DVO petitions, Petitioner also asserts Respondent's actions delayed the proceedings on multiple occasions, including her lack of compliance with the mediation order and the custody evaluation process, both of which required multiple motions by Respondent.

363.  As of December 2, 2020, Petitioner had incurred attorney fees and costs totaling $298,059.00. That was prior to the start of the eight (8) day trial. It also does not include post-trial motions and the Guardian Ad Litem's post-trial hearing to modify the parenting schedule.

364.  On December 19, 2018, the parties were ordered to mediation with retired Judge Stephen George. On February 11, 2019, the parties and Judge George agreed to a mediation date of May 1, 2019.

365.  Shortly before the scheduled mediation, Respondent obtained new counsel. Respondent's new counsel then refused to attend the previously scheduled mediation due to work commitments on his part.

366.  On May 7, 2019, Petitioner filed a motion to hold Respondent in contempt for failure to attend mediation as ordered. Petitioner's motion requests attorney fees in the amount of $1,100.00.

EXB : 000076 of 000098

SR-106

Filedred        18-CI-501606     03/02/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                    NOT ORIGINAL DOCUMENT
                                                    03/02/2022 09:36:36 AM
                                                    81535

367.   In response to the motion, Respondent argued she was not required to
attend mediation as she believed she was a victim of domestic violence.

368.   Respondent's argument was rejected by this court in its order of June 21,
2019 and the parties were re-referred to mediation. The order specifically
stated the parties were to re-schedule mediation within ten (10) days. The issue
of contempt and the award of attorney fees were passed to trial.

369.   On July 2, 2019, Respondent appealed the mediation issue to the Court of
Appeals.

370.   On July 23, 2019, Petitioner filed a motion to hold Respondent in contempt
for failure to comply with the June 21, 2019 order re-referring the parties to
mediation. Respondent refused to reschedule mediation, based on the pending
appeal. Mediation was not re-scheduled within the allotted ten (10) days.
Respondent's appeal as to the mediation order was dismissed by order of
November 13, 2019. The parties never attended mediation.

371.   The motion also requested Respondent be held in contempt for failure to
complete the birth certificate process for the younger child and for obtaining
medical treatment for the children without the consent of Petitioner. The motion
included a request for an award of attorney fees.

372.   The motion was denied by order of December 23, 2019. While finding
Respondent did violate the order as to medical treatment and completing the
birth certificate process, the court took into account mitigating factors when
determining Respondent's actions were not a willful disregard of the court.

EXB : 000077 of 000098

Filedred          18-CI-501606     03/02/2022        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/02/2022 09:56:56 AM
81535

373.   On July 23, 2019, Petitioner filed a motion to hold Respondent in contempt for taking the child to an appointment with Dr. Alphonso Nichols without consent from Petitioner.

374.   Respondent acknowledges she did not obtain consent from Petitioner for the June 29, 2019 visit to Dr. Nichols.

375.   Respondent also took the child to an appointment with Dr. Nichols on November 6, 2019, without the consent of Petitioner.

376.   On July 23, 2019, Petitioner filed a motion to hold Respondent in contempt for taking the children to a medical appointment with Dr. Renita Price without Petitioner's consent. The appointment occurred on July 3, 2019, following the Guardian Ad Litem's motion, but prior to an order specifying the children's pediatrician.

377.   On March 12, 2019, Petitioner filed a motion to compel Respondent to provide her address. Petitioner's motion was granted by order of March 19, 2019.

378.   On December 17, 2019, Petitioner filed a motion to compel Respondent to comply with discovery requests, which was addressed in an order from March 16, 2020. On April 14, 2020, Petitioner filed a motion to hold Respondent in contempt for failure to comply with the discovery order entered on March 16, 2020. The motion requested an award of attorney fees.

379.   The motion for contempt was denied by order of June 4, 2020, as the actions at issue occurred in the early stages of the COVID pandemic shutdown.

EXB : 000078 of 000098

SR-108

Filed    18-CI-501606    03/02/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/02/2022 08:36:36 AM
81535

In the same order, Respondent was ordered to mail the documents to counsel for Petitioner by close of business on June 5, 2020.

380.   On June 23, 2020, Petitioner filed a motion to hold Respondent in contempt for failure to comply with the parenting schedule on June 19, 2020. By order of October 1, 2020, the issue was passed to trial, including Petitioner's request for an award of attorney fees.

381.   On August 4, 2020, Petitioner filed a motion for the return of his guns, held by a close friend of Respondent. Petitioner believed Respondent was interfering with the return of the guns. Petitioner requested an award of attorney fees in his motion. By order of August 10, 2020, Petitioner's motion was granted.  The issue of attorney fees was reserved.

382.   On October 30, 2020, Petitioner filed a motion for an order compelling Respondent to complete the Disney paperwork, as required under the parties' final agreement as to financial issues. The documents were to be completed by September 18, 2020. Petitioner requested an award of attorney fees for bringing the motion.

383.   On November 20, 2020, Respondent filed a motion to disqualify Petitioner's counsel, Jesse Mudd. This motion was denied by order of December 8, 2020.

384.   Petitioner also asserts Respondent delayed the custody evaluator process, resulting in increased attorney fees for him. The custody evaluator also testified that Respondent's behavior resulted in multiple delays in the process. The custody report indicates there were three (3) significant delays in the report, all caused by Respondent.

EXB : 000079 of 000098

SR-109

Filedred          18-CI-501606     03/02/2022     David L. Nicholson, Jefferson Circuit Clerk
                                                                   NOT ORIGINAL DOCUMENT
                                                                   03/02/2022 09:56:56 AM
                                                                   81535

385. The parties equally divided the flat rate $6,000.00 fee for Dr. Marvin's custody evaluation, per the court's order. Neither party is contesting this payment.

386. Petitioner was fully compliant with the custody evaluation process. Petitioner paid the fees and responded promptly to contact and requests from the custody evaluator.

387. The custody evaluator sent out the contract and request for deposit on September 28, 2018. Respondent did not return the paperwork or pay the deposit in a timely manner. On October 23, 2018, Petitioner filed a motion to compel Respondent to comply with the custody evaluation order.

388. In May 2019, the custody evaluator requested a second interview with Respondent. Respondent did not agree to a date for the meeting.

389. On August 4, 2019, the Guardian Ad Litem filed a motion to compel Respondent's attendance at an appointment with the custody evaluator. It was the belief of the Guardian Ad Litem that Respondent was engaging in delay tactics.

390. On August 13, 2019, Petitioner filed a similar motion, requesting an order that Respondent appear for evaluation.

391. On August 15, 2019, Respondent was ordered to appear for the custody evaluation on September 11, 2019. A similar order was entered on August 20, 2019. Respondent completed the second interview on September 11, 2019, approximately four (4) months after it was requested.

Filedred          18-CI-501606     03/02/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                      NOT ORIGINAL DOCUMENT
                                                      05/02/2022 09:36:36 AM
                                                      81535

392.    An additional delay occurred in November 2019, when Respondent refused
        to consent to the use of Dr. Perri for a neuropsychological evaluation of
        Petitioner, based on unsupported allegations of conflict and/or bias. As a result,
        Petitioner sought an order appointing Dr. Perri over Respondent's objections.
        Petitioner's motion was granted by order of December 19, 2019.

393.    The parties incurred additional Dr. Marvin fees for the affidavits and
        testimony related to the July 1, 2020 temporary custody order and the trial.
        These were not included as part of the flat fee for the custody evaluation.

394.    On December 1, 2020, Respondent filed a motion for Petitioner to be
        responsible for 100% of Dr. Marvin's fees associated with the June 30, 2020
        emergency temporary custody hearing. At the time of the motion, each party
        had been charged $750.00 for Dr. Marvin's services. The motion was passed
        to trial by order of December 8, 2020.

395.    On March 16, 2021, Petitioner filed a motion to compel Respondent to pay
        Dr. Marvin's fees and to compel Dr. Marvin's testimony. It was Petitioner's
        concern that Respondent would attempt to use the outstanding balance to
        discredit Dr. Marvin's testimony as to her custody evaluation.

396.    Petitioner paid his 50% share of Dr. Marvin's fees for the temporary custody
        motion. Respondent did not pay her 50% share. The outstanding balance as of
        December 10, 2020 was $625.00.

397.    On December 1, 2020, Dr. Marvin spent six (6) hours preparing for the
        deposition scheduled by counsel for Respondent for December 8, 2020. Dr.
        Marvin attempted to collect payment of these fees, plus the outstanding

EXB : 000081 of 000098

Filedred          18-CI-501606     03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        03/01/2022 09:36:56 AM
                                                        81535

balance owed from the temporary custody motion, from Respondent, prior to the December 9, 2020 deposition.

398.   Emails submitted show Respondent indicated she would pay the balance on December 4, 2020, but never followed through on that statement. As a result, Dr. Marvin did not agree to appear at the deposition on December 8, 2020.

399.   Dr. Marvin agreed to testify at trial on December 10, 2020, despite the outstanding balance, as she felt it would be a disservice to the court to refuse to testify after her extended commitment to this case. Dr. Marvin charged the parties for her preparation and testimony, as it was not included in the flat fee. Petitioner called Dr. Marvin as a witness on the first day of trial. Petitioner paid a deposit for Dr. Marvin to appear.

400.   As of March 15, 2021, the outstanding balance owed to Dr. Marvin was $2,125.00, which included $625.00 outstanding from the June 30, 2020 fees, plus $1,500.00 in fees incurred for deposition prep.

401.   On August 24, 2021, Respondent filed a motion to stay enforcement of the parties' agreed order as to financial issues. Respondent's motion alleges that she discovered assets held by Respondent and not disclosed prior to the entry of the agreement. The alleged undisclosed assets are stock units and deferred compensation awarded to Petitioner through his employer. Respondent believes the stock units and deferred compensation paid in 2020 were actually earned in 2019.

EXB : 000082 of 000098

Filedred            18-CI-501606      03/02/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                    NOT ORIGINAL DOCUMENT
                                                    03/02/2022 00:56:36 AM
                                                    81535

402. As set out in this court's order of October 1, 2020, the parties originally entered into a verbal agreement on the record on September 3, 2020, with a more detailed written agreement to follow, to be signed by both the parties and their counsel.

403. The parties' written agreement as to financial issues was filed with this court on September 11, 2020. It was made an order of the court on October 1, 2020.

404. Under the agreement, each party was awarded the retirement and investment accounts in their respective name.

405. The agreement also required Respondent to reimburse Petitioner $55,000.00 for expenses related to the previous marital residence. That amount was to be paid in full by September 3, 2021. Any balance remaining as of September 3, 2021 was to be paid from Respondent's IRA account. The agreement also contained a provision that Respondent would be responsible for Petitioner's reasonable attorney fees incurred to collect the past due sums.

406. Numerical paragraph eighteen (18) of the agreement specifically states, "Rick represents and warrants that he has made full and complete disclosure of all assets to Stephanie during the litigation of this action. Any asset which has not been disclosed shall be allocated or divided in accordance with the terms of KRS 403.190."

407. Respondent's motion requested she not be required to make the $55,000.00 payment owed to Petitioner under the agreement until such time as the alleged undiscovered assets were divided.

EXB : 000083 of 000098

SR-113

Filedred     18-CI-501606     03/02/2022     David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:56:56 AM
81535

408.   Petitioner objected to Respondent's motion, as he believes it is an attempt

to get out of paying the agreed upon $55,000.00 reimbursement.

409.   On September 3, 2021, Respondent filed a motion. It appears the motion is

to set aside the parties' final agreement as to financial issues. Petitioner objects

to the filing.

410.   On April 17, 2021, Respondent filed a motion for timely updates regarding

the children's medical treatment and education. Respondent's access to the

information was limited following the entry of the temporary custody order.

411.   On December 7, 2021, Respondent filed a motion for access to the

children's medical and educational records. At motion hour, the parties agreed

to general format for the information to be provided through the Guardian Ad

Litem, which was entered an as order of court on December 17, 2021.

## CONCLUSIONS OF LAW

1. The court concludes the parties are the legal parents of two (2) minor

   children, J.C., age 6, and K.R., age 4, based on the court's previous findings

   of fact and conclusions of law entered on June 21, 2019, December 23,

   2019, and December 8, 2020.

2. KRS 403.220(2) states, in relevant part:

   > The court shall determine custody in accordance with the best
   > interests of the child and equal consideration shall be given to each
   > parent and to any de facto custodian. Subject to KRS 403.315, there
   > shall be a presumption, rebuttable by a preponderance of evidence,
   > that joint custody and equally shared parenting time is in the best
   > interest of the child. If a deviation from equal parenting time is
   > warranted, the court shall construct a parenting time schedule which
   > maximizes the time each parent or de facto custodian has with the
   > child and is consistent with ensuring the child's welfare. The court
   > shall consider all relevant factors including:

EKB : 000084 of 000098

Filedred          18-CI-501606     03/01/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                                    NOT ORIGINAL DOCUMENT
                                                                    03/01/2022 09:36:36 RM
                                                                    81535

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

…

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

3. The court concludes the rebuttable presumption of joint custody has been overcome in this case, as both parties have established by a preponderance of the evidence that an award of joint custody is not in the best interest of the minor children. It is clear the parties have a complete inability to make joint decisions for the children, as Respondent has no desire to do so and

EXB : 000085 of 000098

Filedred          18-CI-501606     03/01/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                                    NOT ORIGINAL DOCUMENT
                                                                    03/01/2022 09:36:38 AM
                                                                    81535

Petitioner is unable to do so due to Respondent's actions. This is the most contentious custody action this court has seen. The parties disagreed on almost every issue related to the children's medical, school, childcare, and parenting time schedule, with almost all of these issues addressed through court involvement. These disagreements directly impacted the children in a negative way, affecting their access to medical treatment, consistent childcare, and contact with both parents. While the court would prefer a situation with joint custody in conjunction with orders addressing the parties' specific issues, it is clear from the history of this case that the approach would not work, as Respondent as shown a compete inability to comply with court orders that she does not agree with.

4.  The court further concludes that almost all of these issues are a result of Respondent's behavior and choices. Respondent refuses to recognize Petitioner's role as a father to the child, or that he is able to provide a safe and loving home environment for them. Respondent disrespects Petitioner's parental role and communicates with him in a manner that is unproductive and diminishes his role as an equal parent. Therefore, the court believes the only solution in this case is an award of sole custody.

5.  As an award of sole custody is appropriate in this case, the court concludes it is in the best interest of the minor children that Petitioner be granted sole custody. This conclusion is in line with the recommendation of the custody evaluator following a thorough and extensive evaluation process, as well as the wishes of the Guardian Ad Litem and Petitioner. Petitioner has been an

EXB : 000086 of 000098

SR-116

Filedred        18-CI-501606     03/02/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                           NOT ORIGINAL DOCUMENT
                                                           05/02/2022 08:56:38 AM
                                                           81535

active parent to both children since birth, despite Respondent's attempts to eliminate him from their lives. Petitioner's interactions with the children are positive and loving, with strong and secure parent-child bonds. Petitioner has been the primary caregiver and financial provider for the children since July 1, 2020, during which time the court has not been presented with any notable safety concerns for the children. Throughout this litigation, Petitioner has always attempted to make decisions in the best interest of the minor children, including over the interference or objection of Respondent. The children are fully integrated into Petitioner's home and their school and their community, with no changes necessary as a result of this custody determination. Petitioner's physical and mental health do not impact his ability to appropriately care for the children, as determined by medical providers and the custody evaluator and supported by the evidence presented in this action. Petitioner has not committed any acts of domestic violence or abuse against Respondent or the children, as consistently determined by this court and independent third parties deeply familiar with this family, including CPS, LMPD, and Pediatric Forensic Medicine.  Finally, Petitioner has shown a likelihood that he will allow frequent, meaningful and continuing contact with Respondent, once Respondent no longer endangers the health and safety of the children. Although there have been some hiccups in the parenting schedule since July 1, 2020, the court concludes these are result of the challenges presented by this case,

EXB : 000087 of 000098

SR-117

Filedred        18-CI-501606        03/01/2022        David L. Nicholson, Jefferson Circuit Clerk
                                                                NOT ORIGINAL DOCUMENT
                                                                05/01/2022 08:56:36 RM
                                                                81535

Respondent, and the COVID-19 pandemic, not because of any intentional action by Petitioner to thwart Respondent's access to the children.

6. While Respondent has made constant allegations that Petitioner is an unfit or abusive parent, the court concludes there is no evidence to support these claims. Over the course of over three (3) years, these claims have been investigated countless times over several agencies, as well as through the custody evaluation. The issues have also been before this court in the form of motion and domestic violence petitions. Despite this, no independent third party has produced any evidence in support of Respondent's claims. Rather, they have all come to the same conclusion, which is that Respondent has fabricated these allegations and then used the children and misinformation in order to build a false narrative that Petitioner is abusive and mentally unable to care for the children due to his MCI diagnosis. Further, the older child's disclosures of alleged abuse are not reliable, given the coaching/influence/manipulation exerted by Respondent to obtain them, as well as the child's young age. The older child appears to be unaware of the meaning of the alleged disclosures. The older child has rarely made these disclosures to independent third parties without Respondent present. Finally, the court does not find Respondent to be a reliable reporting source in this action, due to her ongoing manipulation of information and lack of credibility, as experienced by almost all third parties associated with this litigation.

EXB : 000088 of 000098

Filed   18-CI-501606   03/01/2022   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
03/01/2022 09:56:38 AM
81535

7. Further, the court concludes Respondent is currently unfit to act as a legal custodian for the children, as she lacks the capacity to make decisions in their best interest. Specifically, Respondent's current mental health prevents her from properly parenting the children, as she maintains a false belief that Petitioner is abusing and neglecting the children, despite an overwhelming amount of evidence that this is not the case. This belief negatively impacts her parenting ability, as it results in her obsessively attempting to convince others of Petitioner's status as an abuser, using the children as a tool to reach this objective. In this process, Respondent has emotionally abused the children by coaching the older child to falsely believe he is a victim of physical and sexual abuse by Petitioner, as well as exposing the children to unnecessary medical treatment and the toxic process of this custody litigation, showing a lack of empathy for the children. This behavior also has exposed the older child to atypical childhood experiences, such as therapy at two years old and multiple forensic interviews. It has also resulted in both children experiencing excessive medical treatment and focus on their body and health and has resulted in Respondent having strained relationships with the children's school and medical providers. Respondent's behavior has negatively impacted her relationship with the older child by causing him unnecessary stress and anxiety, as witnessed by third party observers. This court has significant concern that Respondent would expose the younger child to the same pattern of behavior, if allowed. Finally, the court concludes there would be

EXB : 000089 of 000098

Filedred          18-CI-501606      03/81/2022      David L. Nicholson, Jefferson Circuit Clerk
                                                       NOT ORIGINAL DOCUMENT
                                                       05/02/2022 09:56:36 AM
                                                       81535

no likelihood of Respondent allowing frequent, meaningful and continuing contact with Petitioner, as she has shown a consistent pattern in interfering with Petitioner's access to the children, including denying him court ordered parenting time. It is Respondent's stated goal to remove Petitioner from the children's lives completely, at any cost, including their emotional health. This position ignores the role Petitioner has played in the children's life since their births and would disrupt their parent-child bond. For these reasons, the court concludes Respondent is not an appropriate legal custodian for the children at this time.

8. In addition, the court concludes Petitioner established by a preponderance of the evidence that a deviation from an equal parenting schedule is warranted in this action. Specifically, the court concludes that supervised parenting time with Respondent is consistent with ensuring the children's welfare, as Respondent's current mental state is a safety risk at this time. Throughout this litigation, Respondent has exhibited ongoing behavior that raises significant red flags as to the children's safety, as well of the safety of Petitioner, including involving third parties to intimidate and harass Petitioner. This behavior is consistent with Respondent's continuing statements that she will do anything to keep her children safe, the rationalization she has used to justify her actions throughout this case. Respondent has also shown an indifference to obeying court orders in this action, indicating to this court that a less restrictive method would most likely be unsuccessful. Respondent has also shown a resistance to mental health

EKB : 000090 of 000098

Filedred        18-CI-501606     03/31/2022      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:36:56 AM
81535

treatment, despite being referred for it on numerous occasions since 2017 and by multiple individuals, including medical providers, mental health providers, and the custody evaluator in this action, who made the recommendation more than a year ago. Based on this, the court concludes it is reasonable to believe Respondent may abscond with or harm the children if allowed unsupervised parenting time, as she continues to believe Petitioner is a threat to the children and that she is entitled to do anything necessary to protect them. The court also believes the unsupervised contact between Respondent and the children would result in Respondent re-engaging in her pattern of emotional abuse in an effort to further her legal agenda.

9. To maximize the time Respondent has with the children, Respondent shall continue to have in-person supervised parenting time with the children three (3) times per week, for a period of two (2) hours each. These visits shall be scheduled taking into account the schedules of Petitioner, Respondent, the children and the parenting time supervisor. If the parties do not agree to a modification, then the current schedule shall be the permanent schedule going forward. Any change in supervisors must be agreed to in writing, signed by both parties and counsel. If the parties disagree as to a change in supervisors, either party may file a motion with the court,

10. All current orders relating to Respondent's parenting time, including the orders establishing the procedures and parameters of the time, are hereby made permanent orders. Specifically, Respondent shall not be left alone

EXB : 000091 of 000098

SR-121

Filedred          18-CI-501606      01/01/2022          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/02/2022 09:36:36 AM
81535

with the children at any time, in any manner, for any reason. Respondent shall not transport the children at any time. Respondent shall not video or photograph the children, as this has historically caused the older child significant distress while with Respondent. Respondent shall be the only party present at the parenting time. If any third party associated with Respondent appears at the parenting time, the court will interpret this as a violation, regardless of the excuse or explanation offered by Respondent. Respondent shall only bring items pre-approved by Petitioner to the parenting time. Respondent shall not question the children as to their care while with Petitioner. Respondent shall not question the children as to their medical treatment. Respondent shall not subject the children to body inspections.

11. The order preventing Petitioner from taking videos or photos of the children is hereby lifted.

12. The Guardian Ad Litem shall prepare a summary of this court order, approximately two (2) pages, containing a brief background as to Respondent's behavior, as well as a recitation of the current court orders in place. This summary shall be provided to the parenting time supervisor, so that they are aware of the issues in this case and the safety concerns as to Respondent and the children. The Guardian Ad Litem shall circulate a draft to counsel for both parties to review and offer input. However, the Guardian Ad Litem shall have final say over the language in the summary.

EXB : 000092 of 000098

Filedred          18-CI-501606          03/01/2022          David L. Nicholson, Jefferson Circuit Clerk
                                                                                    NOT ORIGINAL DOCUMENT
                                                                                    03/01/2022 08:36:36 AM
                                                                                    81535

13. This final document shall also be provided to the children's school, childcare providers, and regular medical providers, if deemed necessary by Petitioner. Going forward, if Respondent or a third party associated with her contacts a third party with allegations of abuse or neglect by Petitioner, then Petitioner may provide the contacted third party with a copy of the summary as well. This provision is intended to limit Respondent's ability to misrepresent the facts of this case and the orders of this court to third parties, as she has shown a consistent history of doing.

14. Respondent shall be entitled to access to the children's medical and educational records through the process established in the Agreed Order of December 17, 2021, which is hereby made a permanent order of this court.

15. Respondent shall immediately enroll in therapy with a therapist of her choosing. The therapist shall have experience with treating personality disorders and/or in high conflict family litigation. The name of the chosen therapist shall be provided to the Guardian Ad Litem, so he may confirm the chosen therapist's credentials and background. The chosen therapist shall be provided with a copy of this court order by the Guardian Ad Litem. Respondent shall remain in therapy with the chosen therapist until released by the therapist or further court order. Respondent's parenting time will not be modified to unsupervised or overnight until such time as Respondent has made significant, documented progress in her mental health treatment.

16. The children do not need to be enrolled in therapy at this time, if they are not currently enrolled. However, if Respondent begins to make progress on

EXB : 000093 of 000098

her mental health in a manner in which unsupervised parenting time may become a possibility, then the children shall be enrolled in therapy to prepare them for a possible transition to an increase in parenting time with Respondent. Petitioner shall be entitled to pick the therapist. The therapist shall have experience working with children in high conflict divorce cases. The therapist shall be provided with a copy of this court order. Respondent shall sign any releases necessary to allow the children's therapist to discuss Respondent's progress and status with Respondent's therapist.

17. Petitioner's motion for an award of child support is **GRANTED**. The court concludes Petitioner has income of $29,670.00, based on his year to date earnings as of November 30, 2020, plus $875.00 per month in rental income. The court concludes Respondent has income of $13,740.00, based on her 2018 income. This is the best income information the court has at this point for Respondent. For child support calculation purposes, Petitioner will receive a credit of $237.50 per month for health and dental insurance premiums he pays on behalf of the children only.

18. Using these figures, the court concludes Respondent's child support obligation to Petitioner for the two (2) minor children is $939.00 per month. This child support award is effective September 29, 2020, the date Petitioner filed his motion for child support.

19. Further, Petitioner and Respondent shall divide any uninsured medical expenses based on each party's percentage of the combined monthly adjusted parental gross income, currently 68% for Petitioner and 32% for

Respondent. Extraordinary medical expenses are defined in KRS 403.211(8) as uninsured medical expenses in excess of one hundred dollars ($100.00) per child per calendar year. "Extraordinary medical expenses" includes, but is not limited to the costs that are reasonably necessary for medical, surgical, dental, orthodontal, optometric, nursing, and hospital services; for professional counseling or psychiatric therapy for diagnosed medical disorders; and for drugs and medical supplies, appliances, laboratory, diagnostic, and therapeutic services.

20. Petitioner shall provide Respondent with documentation as to all work-related daycare expenses incurred since September 29, 2020. Respondent shall receive a credit for tuition payments she made for the older child during that same time period.

21. Petitioner shall be responsible for any childcare costs associated with the children's care outside of regular working hours. Petitioner shall be responsible for any private tuition for the children, as the decision as to where the children attend school is solely determined by Petitioner.

22. Petitioner's motion for reimbursement of uninsured medical expenses is **GRANTED**. Petitioner is awarded a common-law judgment against Respondent in the amount of $3,363.10, representing Respondent's 38% portion of uninsured medical expenses Petitioner has incurred on behalf of the children through May 2021. The judgment shall bear interest at the statutory rate until such time as it is paid off.

SR-125

23. Petitioner's motion for an award of attorney fees is **GRANTED**. Having considered the financial resources of the parties, as well as Respondent's actions during the course of this litigation, Respondent shall pay Petitioner's attorney fees in the amount of $100,000.00. This is a common-law judgment enforceable in the name of counsel for Petitioner. The judgment shall bear interest at the statutory rate until such time as it is paid off.

24. Respondent shall be 100% responsible for any outstanding fee owed to the custody evaluator.

25. The Guardian Ad Litem's motion to modify the parenting schedule is **DENIED**. The motion was made almost immediately after the children returned to in-person visits with Respondent after over ten (10) months, which would clearly require an adjustment period. The court does not want to reduce Respondent's already limited contact with the children based on issues occurring during this adjustment, as the court does not believe it would be in best interest of the minor children.

26. Respondent's motion to set aside the parties' final financial order from October 1, 2020 is **DENIED**. Respondent did not establish sufficient grounds for setting aside the order.

27. Respondent's motion for make-up parenting time filed on December 7, 2021 is **GRANTED**. The court concludes Respondent is entitled to make-up parenting time based on missed visits from 2020 and 2021. Respondent shall have seven (7) virtual make up visits, with one (1) visit to occur each week, beginning the first Saturday after the entry of this order. Once the

seven (7) virtual visits have been made up, Respondent shall be entitled to

nine (9) make-up in-person visits, with an extra visit per week for nine (9)

weeks. These visits shall occur on Saturdays. If the parties are unable to

agree otherwise, the virtual visits shall be from 4:00 pm to 4:30 pm and the

in-person time shall be from 4:00 pm to 6:00 pm. These visits are subject to

the same parameters as regular visits.

## CUSTODY DECREE

Petitioner is hereby granted permanent sole custody of the two (2) minor

children, J.C. and K.R.

This is a final and appealable order.

JUDGE DENISE BROWN
Jefferson Circuit Court
Family Division Seven (7)

1/31/2022
Date

cc:    Laurel Doheny
       Jesse Mudd
       Counsel for Petitioner
       200 S. Fifth Street, Suite 404 South
       Louisville, KY 40202

       Allison Russell
       Counsel for Respondent
       2429 Bush Ridge Drive, Suite 102

EXB : 000097 of 000098

SR-127

Filed    18-CI-501606    03/01/2022    David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
05/01/2022 09:58:36 AM
81535

Louisville, KY 40245

David Mour
Counsel for Respondent
455 S. 4th Street
Louisville, KY 40202

James Murphy
Guardian Ad Litem
239 S. Fifth Street, Suite 600
Louisville, KY 40202

EXB : 000098 of 000098