UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                          CRIMINAL ACTION NO. 3:22-CR-00058-DJH

STEPHANIE M. RUSSELL                                        DEFENDANT

### UNITED STATES' MOTION IN LIMINE TO PRECLUDE TESTIMONY PURSUANT TO RULE 12.2 REGARDING MENTAL DISEASE OR DEFECT

The United States, by counsel, Assistant U.S. Attorney Marisa J. Ford, moves *in limine* to preclude Defendant Russell from offering at trial expert evidence relating to a mental disease or defect or any other mental condition bearing on the issue of guilt.

### I.     BACKGROUND

Russell is charged in a two count Indictment with murder-for hire and stalking in violation of 18 U.S.C. §§ 1958, 2261A, and 2. The Defendant has provided notice that she intends to raise a mental disease or defect defense under Rule 12.2(b)(1).[1] [DN 46]. Defendant has given notice that she intends to call an expert witness on this issue, Dr. Walter Butler, and provided a copy of a report of evaluation prepared by Dr. Butler. [DN 123-1]. Dr. Butler's report does not provide any specific diagnoses of mental disease or

---

[1] Federal Rule of Criminal Procedure 12.2(b) provides:

> *(b) Notice of Expert Evidence of a Mental Condition.* If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on ... the issue of guilt... the defendant must – within the time provided for filing a pretrial motion or at any later time the court sets - notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.

defect as recognized by *The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, (DSM-5)*(2022). The DSM-5 is recognized in the field of psychiatry as an authoritative resource used to diagnose and classify mental disorders with concise and explicit criteria intended to facilitate an objective assessment of symptom presentation. Instead, Dr. Butler opined that Russell "deteriorated to the point of a delusional psychosis under increasing intensities of stress and distress related to a very contentious custody battle in which she saw her husband as dangerous to her children." He compared it to a "road rage state of mind." [DN 123-1, PageId # 530-531]. [2]

In contrast, the government's forensic psychiatrist found that "[a]ccording to *The Diagnostic and Statistical Manual of Mental Disorders-5,* Dr. Russell meets criteria for the diagnoses: Unspecified Personality Disorder with Antisocial traits. [DN 123-2,

---

[2] Defendant didn't include it as an exhibit with his Offer of Proof [DN 123], but Dr. Butler was supported in his evaluation of Russell by a psychologist, Wayne Harper, who administered a battery of psychological tests to Russell. Harper's report contains similar generic psychological language, without specific diagnosis, that is incorporated by Dr. Butler in his report: "…Dr. Russell's clinical profile was notable for significant elevations for major depression, generalized anxiety, and PTSD." Harper also opined that "…[s]uch persons decompensate along the Obsessive-Compulsive/Histrionic/Narcissistic pathway, as intrapsychic processing and inter-personal problem-solving becomes less organized and more obsessively fixated." [DN 123-1, PageID # 528]. For purposes of this motion *in limine*, we are treating the opinions of Defendant's experts, Butler and Harper, as interchangeable.

PageID # 553. Similarly, Dr. Kelli Marvin, the psychologist who did the forensic evaluation of Russell for the Jefferson County Family Court custody case concluded that "the origin of [Russell's] maladaptive maternal behavior is rooted in a severe Unspecified Personality Disorder, with prominent Narcissistic and Antisocial Traits [Histrionic and Borderline qualities are present but are less pronounced]. [DN 123-4, PageID # 29-30].

## II. The Anticipated Testimony Would Violate the Insanity Defense Reform Act ("IDRA")

The United States moves *in limine* for an Order precluding the defense from offering expert testimony opining that Russell's claimed delusional psychosis and "road rage state of mind," or other personality disorder, somehow deprived her of the *mens rea* necessary to commit the crimes charged in the Indictment. Such testimony could only be offered to support the conclusion, or mislead the jury into concluding, that the defendant was temporarily insane, that her personality disorders caused the defendant to commit the crime or otherwise impaired her ability to exert volitional control, or that her disordered personality impaired the defendant's ability to reflect on the consequences of her conduct. As such, expert testimony of this nature would violate the IDRA.

### A. Applicable Law

The relevant portion of Title 18, United States Code, Section 17 states:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. *Mental disease or defect does not otherwise constitute a defense*.

18 U.S.C. § 17(a) (emphasis added).

Under The Insanity Defense Reform Act of 1984, 18 U.S.C. § 17, all affirmative defenses or excuses based upon mental disease or defect, other than insanity, were eliminated. *See, United States v. Westcott,* 83 F.3d 1354, 1357–8 (11th Cir.), *cert. denied,* 519 U.S. 908 (1996). Specifically, in passing the IDRA, "Congress sought to place a number of limitations on a criminal defendant's ability to introduce mental health evidence." *United States v. Jones*, 2018 WL 1115778, at *4 (S.D.N.Y. 2018). It did so by: (1) eliminating "any form of legal excuse based on a defendant's lack of volitional control"; (2) eliminating "affirmative defenses such as 'diminished capacity,' 'diminished responsibility,' 'mitigation,' and 'justification,' " (3) limiting "the use of expert psychological testimony on ultimate legal issues," (4) altering "the burden of proof to require the defendant to prove the affirmative defense of insanity by clear and convincing evidence," and (5) creating "a special verdict of 'not guilty by reason of insanity,' which triggers federal civil commitment proceedings." *Id.* (citing *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990); *United States v. Sabir*, 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007)).

While Congress intended to bar "alternative 'affirmative defenses' that 'excuse' misconduct," it does not bar mental disease "evidence that disproves an element of the crime itself." *United States v. Pohlot*, 827 F.2d 889, 897 (3d Cir. 1987). Thus, notwithstanding the IDRA, a defendant may "submit[] mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime." *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006).

The district court, however, must police the boundaries between permissible expert evidence that goes to negating the intent element of a crime and impermissible evidence that seeks to "excuse" the crime. As one district court observed:

> There are special concerns for relevance and potential jury confusion in the case of expert testimony regarding mental disease evidence offered in an attempt to negate the intent element of an offense. Testimony about mental disease should not be allowed where it is offered to support the conclusion, or will mislead the jury into concluding, that the disease caused the defendant to commit the crime or otherwise impaired her ability to exert volitional control, or that the disease impaired the defendant's ability to reflect on the consequences of her conduct. Admission of such testimony would run afoul of the IDRA.

*Dupre*, 339 F. Supp. 2d 534, 540–41 (S.D.N.Y. 2004).

Where a defendant fails to meet the IDRA's definition of insanity, the defendant cannot be allowed to admit evidence that she "committed a crime because of a supposed psychiatric compulsion or inability or failure to engage in normal reflection." *United States v. Worrell*, 313 F.3d 867, 873 (4th Cir. 2002). As such, psychiatric evidence must be weighed carefully to ascertain whether it would, if believed, "support a *legally acceptable* theory of lack of *mens rea*." *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (citation omitted) (emphasis in original). For this reason, courts routinely have excluded expert mental disease testimony that tended to show the defendant "lacked the capacity to control or reflect upon his conduct" because it constituted "inadmissible psychological or psychiatric evidence." *United States v. Brown*, 326 F.3d 1143, 1148 (10th Cir. 2003). In *Worrell*, for example, expert mental disease testimony was excluded where the expert determined that the defendant was not able to exercise control over his actions or reflect on their possible consequences. 313 F.3d at 875; *see also Cameron*, 907 F.2d at 1066 (evidence of inability to reflect upon or control behavior is inadmissible).

5

The defendant must also demonstrate a genuine link between the proffered expert testimony and the issue of intent. For this reason, courts have excluded expert mental disease testimony that was so general that it could not explain the effect a mental condition could have on a defendant's ability to form criminal intent. *See Schneider,* 111 F.3d 197, 202 (1st Cir. 1997)(defendant's chemical dependency and "major depression with probable mania" would have produced "impaired judgment"); *Cameron,* 907 F.2d at 1067 (evidence of defendant's schizophrenia did not clarify how she did not intend to distribute crack cocaine).

Moreover, the defendant must demonstrate that the proffered expert testimony would be helpful to the jury by commenting beyond what could be ascertained based on the testimony of laypeople. Expert testimony is properly excludable where persons of "common understanding" are "capable of comprehending the primary facts and of drawing correct conclusions from them." *United States v. Castillo,* 924 F.2d 1227, 1232 (2d Cir.1991). For example, in *United States v. DiDomenico,* 985 F.2d 1159 (2d Cir.1993), the Second Circuit ruled that the district court was acting properly within its discretion in a fraud case when it excluded expert psychiatric testimony that the defendant suffered from "dependent personality disorder" because the defendant's own testimony about her mental state had "covered virtually the entire ground of [the expert's proffered] testimony," *id.* at 1163, and the expert's testimony would have unnecessarily stamped the "imprimatur of a clinical label" on what is already a condition within the jury's experience. *Id.* at 1164.

Thus, "if the risk that the jury will interpret the evidence to support an affirmative defense that is impermissible under the IDRA rather than to negate the *mens rea* element

6

of the offense substantially outweighs the probative value of the evidence, it must be excluded." *Jones*, 2018 WL 1115778, at *5.

### B. Discussion

Expert testimony of the nature proffered by the defense in Dr. Butler's report would violate the IDRA. The opinions and conclusions proffered by Russell's expert witness were designed to establish that she committed the offenses charged in the Indictment because of a compulsion that arose from her claimed delusional state or were the result of an inability to engage in normal reflection. As such, these arguments are foreclosed by the IDRA.

> The pertinent part of Dr. Butler's report concludes:
>
> While the normal elements of life and work were superficially maintained, in the context of dealing with the issues relating to her estranged – later divorced - husband and her two young children, Dr. Russell became profoundly delusional and obsessively fixated. Her thoughts and behaviors were rageful, distorted from reality, delusional and psychotic. Within the context of this altered internal reality of protracted "road rage" psychosis, her behavior became singularly focused and obsessively goal directed in compelling that she protect her children at all costs. Dr. Russell's rigid compartmentalization, as described in Dr. Harper's report, puts even simple acknowledgement of these divergent thoughts and behaviors beyond her awareness or recognition.
>
> Dr. Russell 's alleged behaviors were inflamed, aroused and perpetuated by her longstanding personality pathology to the point of a type of psychosis - a divergence from reality - which overwhelmed her sense of propriety and her otherwise routine acceptance of social norms.
>
> These internal forces overwhelmed her judgment and were an extreme emotional disturbance causing her to behave in a manner entirely inconsistent with her lifetime of medical service and socially acceptable behaviors. These aberrant behaviors and thinking were driven by the compulsion - reasonable to her - to protect her children from perceived further harm.

[DN 123-1, PageID # 530-31]

Russell's expert does not opine that she was insane at the time she hired a hitman to kill her ex-husband. Instead, he opines that her "alleged behaviors" (hiring a hitman with the specific intent that her ex-husband would be murdered) "were inflamed, aroused and perpetuated by [Russell's] longstanding personality pathology to the point of a type of psychosis." These opinions are offered to support the conclusion that Russell's contract killing was undertaken in a heightened state of "altered internal reality." *Id*. When considered against the legal backdrop of the IDRA described above, such a theory could only be offered to support the conclusion that Russell "committed a crime because of a supposed psychiatric compulsion or inability or failure to engage in normal reflection," *Worrell*, 313 F.3d at 873 (citation omitted), or would tend to show (or suggest to the jury) that the defendant "lacked the capacity to control or reflect upon [her] conduct," *Brown*, 326 F.3d at 1148. As such, "volitional" evidence of this type is foreclosed by the IDRA "as evidence of the defendant's inability to control her behavior." *Dupre*, 339 F. Supp. 2d at 544 (citing *Cameron*, 907 F.2d at 1066).

For these reasons, the Court should preclude the defendant from introducing expert testimony to support the conclusion that the defendant's purported mental disease or defect rendered her incapable of making decisions and/or comprehending reality.

### III. The Defendant's Proposed Mental Condition Testimony Should Be Precluded Pursuant to Fed. R. Evid. Rules 401, 403, and 704

To the extent the defense contends that Dr. Butler's testimony would be offered to negate the intent element of the charged crimes, rather than establish an inability to make decisions or comprehend reality, such testimony similarly should be precluded under

8

Federal Rules of Evidence 401, 403, and 704. Defendant's expert psychiatric testimony does not negate criminal intent but is merely an improper attempt to introduce evidence to justify, excuse or explain the Defendant's conduct.

### A.  Applicable Law

Federal Rule of Evidence 702, as explained by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) and their progeny, controls determinations regarding the admissibility of expert testimony. Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert;* and (3) the testimony assists the trier of fact, through the application of specialized expertise to understand the evidence or to determine a fact in issue. *See,* Fed. R. Evid. 702.  In its simplest form under *Daubert* the expert testimony must satisfy two elements. The first prong of *Daubert* asks the Court to assess the knowledge requirement of Fed. R. Evid. 702. This is the reliability assessment and requires the Court to evaluate the methodology used in the expert's analysis. The second prong, referred to as "fit" requires the Court to evaluate the relevance of the evidence or whether the testimony will assist the trier of fact in understanding the issues or determining a fact in issue.

As noted above, even though the IDRA significantly reduced the use of psychiatric testimony outside of the affirmative defense of insanity, it does not eliminate it entirely. *See, United States v. Cameron,* 907 F.2d 1051, 1066 (11th Cir.1990). Psychiatric evidence to negate specific intent was not excluded by Congress under the

9

Act. *Id.* That does not mean, however, that psychiatric testimony is admissible simply because the evidence goes to the issue of explaining whether the Defendant lacked the capacity or was incapable of forming the intent necessary for the crime charged. To answer this question the Court must focus on whether the testimony truly will, if accepted by a jury, negate *mens rea* or rather will only explain or justify the Defendant's conduct.

The Eleventh Circuit counsels that where a defendant claims "lack of capacity" or claims that he was "incapable" of forming the intent necessary for the crime charged "most often that defendant is speaking of an incapacity to reflect or control the behaviors that produced the criminal conduct." *Cameron* at 1066. Relying upon the Third Circuit's discussion of the meaning of *mens rea* in *United States v. Pohlot,* 827 F.2d 889, 906 (3rd Cir.1987), the Eleventh Circuit observed that "[e]vidence offered as 'psychiatric evidence to negate specific intent' often focuses not on a defendant's specific intent at the time the offense was committed, but on the defendant's 'awareness' of intent and whether the defendant was fully reflective or in control of her unconscious motivations." *Cameron* at 1066. The compromise of the usual control structures does not negate mens rea. According to the Eleventh Circuit in *Cameron* where there is "[a] lack of conscious self-reflection [it] does not mean a lack of intent and therefore does not negate mens rea." *Id.* at 1066 n. 30 (quoting *Pohlot,* 827 F.2d at 906).

As such, the IDRA does not *per se* prevent defendants from presenting mental disease evidence for the purpose of negating the intent element of a specific intent crime. Several appellate court decisions cite with approval the following example of a permissible use of expert testimony addressed to a defendant's *mens rea* that does not run afoul of the IDRA:

10

> An expert's testimony that a defendant was "a person more likely to harm himself than to think about directing his aggression towards others" made it more probable that the defendant harbored no criminal intent toward agents who had come to arrest him for desertion. The defendant had picked up a gun and testified that he did so because he was thinking of injuring himself so he would not be taken back to the military.

*Dupre*, 339 F. Supp. 2d at 541 (internal citations omitted) (citing *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977)).

As such, it is necessary for a district court to identify whether any elements of the charged offenses require the Government to prove intent in a way that could be meaningfully refuted by the type of mental disease evidence proffered by the defendant. "Although defendants are not foreclosed from presenting mental disease evidence to negate the *mens rea* element of a charged offense . . . any proffered expert mental disease evidence must nevertheless meet the standards of the Federal Rules of Evidence." *Dupre*, 339 F. Supp. 2d at 540. In this vein, a district court may admit the testimony of an expert if her knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Like all evidence, such expert testimony must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion or the issues, or misleading the jury," Fed. R. Evid. 403. *See United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001).

Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it ...., the judge in weighing possible prejudice against

11

probative force under Rule 403 ... exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation omitted).

### B. Defendant's Expert Opinion Evidence Does Not Negate the Mens Rea for the Charged Crimes

Turning to the expert testimony in the instant case, as reflected in his report, Dr. Butler's opinion is grounded in the premise that Russell "believed her two children had been neglected or abused by her then estranged husband."[3] [DN 123-1, PageID # 530]. Dr. Butler's report does not reflect a clinical diagnosis but is based on the results of two interviews with Russell, the review of documentary materials selected by the defense, and prior testing in the submitted record, and the data and conclusions arising from Dr. Harper's testing report. [Id. at PageID # 529]. Based on those interviews and that review of evidence, he is prepared to testify that:

> [Russell's] personal history and the testing data from several sources were clearly conclusive for the presence of several psychiatric diagnoses coupled with personality disorders that have affected her thinking and behaviors, particularly in the context of the divorce.

Id.

---

[3] But the anticipated testimony regarding what Russell "believed" is not expert testimony at all. It is a regurgitation of the defense uttered through the mouth of an expert. If the defense wishes to put on evidence regarding Russell's beliefs, assuming that such evidence is relevant, it can do so through lay testimony from percipient witnesses who can be subject to cross-examination. It would only confuse the jury and prejudice the government for Dr. Butler to reiterate what would otherwise be hearsay and attach to it the expert label. *Cf. Sun Pharmaceutical Indus. Inc.*, 2021 WL 4803582, at *8 (excluding expert testimony where it "pertains to lay matters which a finder of fact is capable of understanding and deciding without the expert's help ... [a]nd is no more than arguments and conclusory statements about questions of fact masquerading behind a veneer of expertise" (internal quotation marks and citations omitted).

Dr. Butler's report does not state that the Defendant was insane or even close to being legally insane, but instead suffered from underlying personality disorders, and psychiatric conditions including depression, anxiety, and PTSD. Dr. Butler does not state that any of these conditions would prevent the Defendant from understanding the difference between right or wrong. Most importantly, his report does nothing to demonstrate the required link between the proffered expert testimony and the issue of intent to commit the charged crimes. Rather the amalgam of behaviors which comprise her personality disorders caused Defendant to lack the self-reflective mechanisms to control her behaviors. It does not mean that the Defendant lacked the intent to commit the crimes charged. As such, the testimony of Dr. Butler does not negate *mens rea.* His opinions are the kind of generalized psychiatric testimony frowned upon by courts because by its very nature it can mislead or confuse a jury.

Because Butler's opinions do not negate *mens rea* the expert testimony does not satisfy the "fit" or relevance prong of *Daubert* and Rule 702. Therefore, the Defendant should not be permitted to use the testimony of Dr. Butler because it will not be relevant in assisting the jury in determining a fact in issue.

Instead, the anticipated testimony of Dr. Butler seems designed to provide evidence of justification or excuse for the Defendant's actions and does not show or prove the lack of Defendant's intent. The testimony of Dr. Butler simply does not demonstrate that the conduct of Defendant alleged in the indictment was anything less than purposeful.

There also is another risk of jury confusion from Dr. Butler's testimony: Dr. Butler's opinion that Russell's "reckless behaviors arose from her self-perceived need

13

to protect her children" looks strikingly like evidence of the sort of "justification" or "diminished capacity" defenses foreclosed by the IDRA. "The presentation of such evidence to the jury creates a substantial risk that it will be used for an impermissible purpose during deliberations." *Dupre*, 339 F. Supp. 2d at 544.

A justification defense based on psychiatric testimony, as here, presents an inherent danger "that it will distract the jury from focusing on the actual presence or absence of mens rea" and "may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." *Cameron* at 1067. In this case, there is a distinct danger that Dr. Butler's testimony will confuse the jury and cause unfair prejudice to the United States, and those dangers far outweigh any probative value that his testimony could provide. Accordingly, the United States' motion to exclude the testimony of Dr. Butler should be granted.

Finally, even if some expert mental condition testimony is permitted in this context, experts are precluded from reaching a definite conclusion about what mental state a defendant actually possessed at the time of the offense because such testimony "poses a uniquely heightened danger of intruding on the jury's function." *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993). In this vein, expert testimony may not be permitted to "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999). Accordingly, "expert testimony about the mental state or condition of a defendant in a criminal case is treated differently from other types of expert testimony." *Dupre*, 339 F. Supp. 2d at 542 (citing *DiDomenico*, 985 F.2d at 1164). To that end, an expert may not "state an opinion or

14

inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such elements are for the trier of fact alone." Fed. R. Evid. 704(b). Thus, Rule 704(b) prevents experts from "expressly stating the final conclusion or inference as to a defendant's actual mental state at the time of a crime." *Dupre*, 339 F. Supp. 2d at 542.

## CONCLUSION

Accordingly, for the foregoing reasons, the United States respectfully submits that the Court should preclude the defendant from offering expert testimony regarding Russell's mental condition.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney


*/s/ Marisa J. Ford*
Marisa J. Ford
Assistant U.S. Attorney
717 W. Broadway
Louisville, KY  40202
(502) 582-5930
Marisa.ford@usdoj.gov