UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO. 3:22-CR-00058-DJH |
| STEPHANIE RUSSELL | DEFENDANT |

### STEPHANIE RUSSELL'S RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE TESTIMONY OF EXPERT WALTER R. BUTLER, M.D.

The prosecution has moved *in limine* to prevent defendant Stephanie Russell from introducing "expert evidence relating to … any … mental condition bearing on the issue of guilt." (U.S. Mot., R. 125, Page ID # 758-772.) The testimony at issue is that of forensic psychiatrist Walter R. Butler, M.D., who would offer evidence that, when Ms. Russell committed the acts alleged in the indictment, her mental condition left her unable to attain the culpable state of mind required by the criminal charges in this case. As explained below, Dr. Butler's testimony will relate directly to the *mens rea* element, and will not run afoul of the Insanity Defense Reform Act or the Rules of Evidence governing expert opinions. The Court should deny the government's motion and allow Dr. Butler's testimony.

**Relevance and admissibility of defense evidence regarding the accused's state of mind:**

Practically speaking, there is only one element of the charged offenses that the parties dispute in our case: criminal intent. The government's motion, if accepted, would prohibit the defense from contesting the claim that Ms. Russell acted with murderous or harassing intent when she engaged in the conduct for which she is on trial. A ruling in favor of the government would amount to a directed verdict against Ms. Russell on the single most important element in the entire case.

Proof of a defendant's state of mind is so central to guilt or innocence, and the facts that shed light on the accused's *mens rea* are so multifarious, that the range of admissible evidence in a criminal trial on the subject of the defendant's mental state is exceptionally broad. "Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury," said the Supreme Court, and the jury must evaluate the defendant's state of mind "from … all of the surrounding circumstances." *Morissette v. United States*, 342 U.S. 246, 274, 276 (1952). To that end, "evidence having any tendency" to make the existence of a defendant's culpable mental state "more or less probable than it would be without the evidence" is relevant and, as such, presumptively admissible. Fed. R. Evid. 401, 402. "The rules regarding relevancy … are quite liberal," the Sixth Circuit has observed: relevance is to be assessed without

considering the weight or sufficiency of the testimony, and a district court accordingly "may not exclude the evidence if it has even the slightest probative worth," even when the court "believes the evidence is insufficient to prove the ultimate point for which it is offered…." *Robinson v. Runyon,* 149 F.3d 507, 512 (6th Cir. 1998) (quoting *Douglass v. Eaton Corp.,* 956 F.2d 1339, 1344 (6th Cir.1992)). "Logically, evidence with respect to mens rea should be no different than evidence concerning the act itself," wrote one district court: "Where mens rea is at issue, the decisionmaker is obligated to reconstruct a mental state largely on the basis of inferences from the defendant's utterances and actions at a relevant time. Lay witnesses are permitted to testify about the defendant's statements, actions, and demeanor," and mental health experts may properly rely on such information "to formulate diagnoses and opinions." *United States v. Skodnek,* 896 F.Supp. 60, 62 (D.Mass. 1995). Expert opinion has a valuable role when jurors must evaluate a defendant's state of mind: "It would be improper and indeed, unconstitutional, to cut out this one kind of competent evidence – some would say, especially competent evidence – from defendant's arsenal." *Ibid.*

As discussed in Ms. Russell's prior motion *in limine* (*see* R. 124 pp. 2-3, Page ID # 742-743), the rules concerning admission of relevant evidence are particularly tolerant when applied to testimony offered by the accused in his defense. The

Sixth Amendment vests the criminal defendant with the constitutional "right to put before a jury evidence that might influence the determination of guilt." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). Thus, at trial, the jury must be allowed to consider any "defense [that] finds some support in the evidence and in the law…." *United States v. Johnson*, 416 F.3d 464, 467 (6th Cir. 2005). The burden on the defendant in this regard "is not a heavy one," and it is met "even when the supporting evidence is weak or of doubtful credibility." *Ibid.* (quoting *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994) and *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976)). Moreover, "[i]n analyzing whether the defendant has met his burden, the court must construe the evidence in the light most favorable to the defendant." *United States v. Perez-Rodriguez*, 13 F.4th 1, 19 (1st Cir. 2021). "[T]he court is not permitted to weigh the evidence, make credibility determinations, or resolve conflicts in the proof," and it "must draw all reasonable inferences in favor" of the defendant's theory. *Ibid.* (citations and punctuation omitted).

**Testimony about Ms. Russell's mental condition for the purpose of negating the government's proof of mens rea:**

Dr. Butler's testimony, as will be detailed momentarily, "is directly concerned with whether [Ms. Russell] possessed the ability to attain the culpable state of mind which defines the crime." *See*

4

*United States v. Gonyea*, 140 F.3d 649, 651 (6th Cir. 1998). His testimony therefore addresses the question of mens rea, not sanity. The insanity defense "is not concerned with the mens rea element of the crime; rather, it operates to completely excuse the defendant whether or not guilt can be proven." *Ibid.* (quoting *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1988)). The strictures of the Insanity Defense Reform Act, 18 U.S.C. § 17, therefore have no bearing on the consideration of Dr. Butler's testimony. *See ibid.* n. 3; *United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2000); *United States v. Odeh*, 815 F.3d 968, 980 (6th Cir. 2016).

Proof that a mental abnormality prevented the defendant from attaining a culpable state of mind is frequently described as "diminished capacity" evidence. *See Kimes*, 246 F.3d at 806. As with intoxication, which is itself a type of diminished capacity claim, the factual question is whether the defendant's mental condition "preclude[d] the formation of specific-intent…." *United States v. Veach*, 455 F.3d 628, 630-631 (6th Cir. 2006). In a murder prosecution involving intoxication, for instance, "[t]he defense of diminished capacity turns in part on the factfinder's reasoning about what impelled the defendant to kill," the Sixth Circuit wrote: whether it was the defendant's "intent, or the influence of drugs or alcohol on his behavior," that drove the conduct. *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1098 (6th Cir. 1990). "Determinations about intent and causation in such a case

5

are complex depending on inferences to be drawn from the facts," the Sixth Circuit continued, with evidence of "impulsive, reactive and reckless behavior associated with events caused by the influence of drugs and alcohol" weighed against evidence that "tend[s] to establish premeditation...." *Ibid.* In murder cases, therefore, "psychiatric testimony addressing mental disorders affecting the cognitive functions of deliberation and premeditation necessary to form a specific intent is admissible...." *Saranchak v. Beard*, 616 F.3d 292, 308 (3rd Cir. 2010) (citation and punctuation omitted).

Dr. Butler's proposed testimony falls well within the proper bounds for expert evidence concerning a defendant's diminished capacity to form the necessary mens rea. As Dr. Butler explains in his report (R. 123-1, Page ID # 526-531), Ms. Russell's "clinical profile was notable for significant elevations for major depression, generalized anxiety and PTSD," and she also "endorsed almost without exception every item on the OCD (Obsessive Compulsive) scale." (*Id.* at pg. 3, Page ID # 528.) "[I]n times of significant distress and challenge," Dr. Butler observes, people with Ms. Russell's psychological makeup "tend to decompensate along a predicted pathway – becoming rigid and rule bound, ruminative and obsessive and more aggressively goal-directed." (*Ibid.*) Because of her mental condition, Ms. Russell was subject to "rigid compartmentalization of thoughts and feelings, separating

6

outwardly positive thoughts and socially commendable behaviors from darker, forbidden thoughts." (*Id.* at pp. 3-4, Page ID # 528-529.) "In times of great stress," Dr. Butler continues, someone "with this personality pathology can psychologically descend into a severe ruminative and fixated obsessive state" and reach "levels at which paranoid, delusional and psychotic thinking can begin to emerge within the broader context of cognitive compartmentalization." (*Id.* at pg. 4, Page ID # 529.) In keeping with this pattern, Ms. Russell "began displaying this decompensated thinking and behavior in the context of a contested divorce when she believed her two children had been neglected or abused by her then estranged husband," and she steadily "deteriorated to the point of a delusional psychosis under increasing intensities of stress and distress related to a very contentious custody battle…." (*Id.* at pg. 5, Page ID # 530.) By the time Ms. Russell engaged in the actions alleged in the indictment, Dr. Butler observes, she had "regressed into a kind of psychotic 'road rage state of mind.'" (*Ibid.*) Though "the normal elements of life and work were superficially maintained," Ms. Russell "became profoundly delusional and obsessively fixated" when dealing with issues related to her children's welfare. (*Ibid.*) "Her thoughts and behaviors were rageful, distorted from reality, delusional and psychotic," and "her behavior became singularly focused and obsessively goal directed in compelling that she protect her

7

children at all costs." (*Ibid.*) Ms. Russell ultimately found herself in "a type of psychosis – a divergence from reality," and "[t]hese internal forces overwhelmed her judgment...." (*Id.* at pg. 6, Page ID # 531.)

Dr. Butler's testimony thus focuses squarely on Ms. Russell's state of mind in our case. As a district court in Pennsylvania explained in a diminished capacity case, "[t]he mental state at issue is 'actual' mens rea," which is "the state of mind at the particular time in question." *United States v. Bennett*, 29 F. Supp. 2nd 236, 238 (E.D. Pa. 1997), *aff'd*, 161 F.3d 171 (3rd Cir. 1998). "Relevance, therefore, depends on the legal ingredients, or definition, of the pertinent mens rea." *Ibid.* In our case, the "legal ingredients" of the applicable mens rea are "the cognitive functions of deliberation and premeditation," *see Saranchak*, 616 F.3d at 308, or, more colloquially, "what impelled the defendant" to commit the offense: "[her] intent, or the influence" of her mental condition. *See Kordenbrock*, 919 F.2d at 1098. "[I]t must be shown," the Pennsylvania court continued, "that, given the actual facts and circumstances, [the expert's testimony] supports a legally acceptable theory of lack of mens rea. The expert must be prepared to testify to information that supplies at least a partial basis for, or leads to, the logical finding that the mens rea ... was or may not have been present." *Id.* at 239. "If [the defendant's] clinical condition and symptomology can be logically connected to"

the defendant's state of mind at the time of the offense, "such evidence is admissible to show lack of mens rea." *Id.* at 240. Dr. Butler's testimony that Ms. Russell was "obsessively fixated" and "rageful, distorted from reality, delusional and psychotic," and ultimately in "a type of psychosis – a divergence from reality," speaks about conditions directly and logically connected to Ms. Russell's attainment of the mental state of premeditation and deliberation in this case. As such, the testimony is relevant and will assist the jury in its determination of a material fact in the case. *See* Fed. R. Evid. 702.

Dr. Butler lastly will be able to express his opinion without violating the rule against experts testifying that a defendant did or did not have the requisite mental state required for conviction. *See* Fed. R. Evid. 704(b). As Judge Russell explained in one of his cases, an expert may properly testify "as to the typical mental state of a person with a mental disease or defect possessed by a defendant and imply whether a hypothetical person so afflicted might have the requisite mental state." *United States v. Sublett*, Case No. 1:04-CR-00037, 2007 WL 274982 at *2 (W.D.Ky. Jan. 26, 2007) (citing *United States v. West*, 962 F.2d 1243 (7th Cir. 1992)). In his particular case, Judge Russell held that the proposed diminished capacity testimony was admissible:

> Dr. DeLand would testify as to the symptoms of a person with a history of depression who had suddenly discontinued use of his medications and describe the

9

> mental health repercussions which tend to affect persons in that situation, i.e., depression, anxiety, and confusion. The jury could then infer whether Defendant also suffered from those symptoms at the time, and whether the symptoms interfered with his ability to form the requisite *mens rea* for a conviction. … Dr. DeLand may not testify as to the ultimate issue of *mens rea*. The jury can determine whether a person who most likely is depressed, confused, and anxious has specific *mens rea* sufficient for the crime charged.

*Ibid.* Dr. Butler would not, moreover, "merely recit[e] the defendant's statements to the jury in the guise of a medical opinion," but would properly "be testifying regarding his diagnosis of the defendant's medical condition based on an established methodology…." *United States v. Ray*, 583 F.Supp.3d 518, 543 (S.D.N.Y. 2022) (citing *United States v. Finley*, 301 F.3d 1000, 1009 (9th Cir. 2002)). In line with the rules, "the interviews of the defendant would be one of the diagnostic tools the expert would use to reach a conclusion about the state of the defendant's mind; it would not be 'the very substance of the doctor's testimony.'" *Ibid.* (citing *Finley*, 301 F.3d at 1009).

## CONCLUSION

Ms. Russell urges the Court to deny the government's motion *in limine* and allow Dr. Butler to testify in the criminal trial.

10

Respectfully submitted,

*Michael R. Mazzoli*

Scott C. Cox
Michael R. Mazzoli
Scott Coleman Cox, II
COX & MAZZOLI PLLC
600 West Main Street, Suite 300
Louisville, Kentucky 40202
502-589-6190
MMazzoli@coxandmazzoli.com

and

David B. Mour
Law Office of David B. Mour
513 S. Second Street
Louisville, KY 40202
502-473-6464
dmour@louisvillefirm.com

Attorneys for Defendant Russell

## CERTIFICATE OF SERVICE

On March 4, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

*Michael R. Mazzoli*

Michael R. Mazzoli