UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                                               CRIMINAL ACTION NO. 3:22-CR-58-DJH

STEPHANIE M. RUSSELL                                                                       DEFENDANT

UNITED STATES' REPLY TO DEFENDANT'S RESPONSE
TO NOTICE OF RULE 404(b) EVIDENCE

Comes the United States of America, by counsel, for its reply to Defendant's Response to the United States' notice of intent to introduce evidence of other acts. [DN 135].

The United States submits this response solely to clarify Defendant's misunderstanding about the government's notice [DN 132] and its intention at trial. The United States has previously moved *in limine* to exclude entirely from trial any testimony offered by Russell pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure relating to any mental condition bearing on the issue of guilt. [DN 125]. Specifically, the proffered expert testimony of Russell's forensic psychiatrist would (i) violate the provisions of the Insanity Defense Reform Act, and (ii) is irrelevant because it does not go to negate the *mens rea* for the charged crimes and, even if marginally probative, its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury, and should be excluded from evidence at trial under Rules 401, 403, and 704 of the Federal Rules of Evidence. In addition, the United States voiced similar opposition to the evidence in its response to Defendant's Motion in Limine Concerning Admissibility of Mental Health Testimony and Family Court Records. [DN 131].

As the Court indicated in its Memorandum and Order entered April 12, 2024, a ruling is forthcoming on Russell's motion to admit mental-health testimony and records from her custody litigation with her former husband. [DN 133, Page ID # 825]. As the United States indicated in its 404(b) notice, there are a plethora of bad acts attributable to the Defendant over a period spanning several years. The United States continues to maintain that Russell's assertion that she believed, despite substantial evidence to the contrary in the family court litigation, that her former husband was guilty of physical or sexual abuse is irrelevant and inadmissible at trial. If the Court grants the motion of the United States to exclude this evidence, the United States would not seek to admit any evidence of the falsified Emergency Protective Orders; unsubstantiated reports to Child Protective Services; examinations done by Pediatric Forensic Medicine, or the investigation done by Louisville Metro Police Department's Crimes Against Children Unit exonerating Russell's former husband on claims of child abuse.

If Russell's efforts to relitigate the family court case are barred by the Court, as the United States believes they should be, the government's evidence related to the family court litigation would be distilled to the fact that there was a contentious custody dispute between Russell and her former husband over the two children. Ultimately, Defendant's former husband was granted full, permanent custody of the two children in January 2022. Five months later, Russell attempted to hire someone to kill her former husband. The United States does not agree with Russell's assertion that "the parties therefore agree that the proof [of Russell's escalation of spurious claims against her former husband] should be allowed at trial." [DN 135, PageID # 1282]. The United States indicated in its notice that it was attempting to provide the Court with a comprehensive description of Russell's bad acts, and that "[i]t may introduce all or some of the proffered evidence." [DN 132, PageID #817 at fn. 3]. It is only if Russell is allowed to put her

excuse before the jury that the United States intends to introduce evidence that all of her claims against her former husband were investigated and found to be unsubstantiated and that Russell was coaching her little boy to make false allegations against the victim in this case, Russell's former husband.

Finally, Russell appears to have simply misread the government's notice. Russell's assertion to the contrary, the United States, under no circumstances, will seek to introduce a "group of records generated by law enforcement agencies or Jefferson Family Court." [DN 135 PageID #1283]. There are witnesses who are familiar with the resolution of Russell's myriad of false claims who could testify that all of Russell's complaints of abuse to law enforcement were investigated and found to be without merit.[1]

Similarly, Russell should be precluded from offering documents, such as an Emergency Protective Order, in which she made out of court assertions that she thought her child was being sexually abused. Contrary to her assertion, this is not admissible to prove her state of mind. It is a rank hearsay statement of a Defendant made out of court and cannot be offered by the Defendant under any exception to the hearsay rules.

Finally, Russell's argument about summaries also appears to misapprehend the government's notice. The rules cited by Russell apply to summary charts which make voluminous bank records or other information more readily understandable to a jury. Russell suggests that "the underlying evidence must be properly in the record, and the summary itself must be fair and reflective of the actual proof." [DN 135, PageID # 1285].

---

[1] Although the Findings of Fact, Conclusions of Law and Custody Decree of the Family Court are marked for identification on the government's Exhibit List, the United States does not intend to seek admission of this document as an exhibit at trial.

The United States has endeavored to make its position clear on the admissibility of the proffered expert evidence relating to Russell's mental state at the time of the offense conduct. In short, it is irrelevant and misleading and should be excluded in its entirety. Similarly, Russell should not be allowed to put her own out of court statements of abuse made as part of an *ex parte* application for an Emergency Protective Order or a meritless complaint to Child Protective Services into the record. This route leads surely to a trial within a trial. To the extent that Russell may ultimately choose to take the stand herself and state her belief that her child was being abused, the United States should be able to call witnesses who can rebut her continuing lie that "[e]very time Ms. Russell sought help from the authorities, she got nothing." [DN 124, PageID # 746].

    Respectfully submitted,

    MICHAEL A. BENNETT
    United States Attorney

    /s/ *Marisa J. Ford*
    Marisa J. Ford
    David R. Weiser
    Assistant United States Attorneys
    717 West Broadway
    Louisville, Kentucky 40202
    (502) 582-5911