UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Plaintiff, |
| v. | Criminal Action No. 3:22-cr-58-DJH |
| STEPHANIE M. RUSSELL, | Defendant. |

\* \* \* \* \*

### MEMORANDUM AND ORDER

Defendant Stephanie M. Russell filed a motion in limine seeking to admit mental-health evidence and state-court records from Russell's child-custody proceedings. (Docket No. 124; *see* D.N. 123-1; D.N. 123-2; D.N. 123-3; D.N. 123-4; D.N. 123-5; D.N. 123-6) The government timely responded (D.N. 131) and filed a motion in limine to preclude Russell's proposed mental-health evidence (D.N. 125) Russell asserts that the evidence is admissible because it is relevant to her affirmative defense of justification and to negate her criminal intent. (D.N. 124) In response, the United States argues that Russell is not entitled to the justification defense and that the evidence is irrelevant to Russell's mens rea. (D.N. 131) The government also urges the Court to exclude the evidence because it runs afoul of the Insanity Defense Reform Act (IDRA). (D.N. 125, PageID.761, 765) The Court previously ruled that the evidence was not admissible to establish that Russell's actions were justified. (D.N. 133) The Court now considers Russell's argument that the evidence is admissible to prove that she was incapable of forming the required mens rea. After careful consideration, the Court will deny Russell's motion to introduce mental-health evidence and grant the government's motion to exclude Russell's proposed expert testimony for the reasons set forth below.

1

## I.

Russell asserts that the evidence is admissible "because it illuminates [her] state of mind at relevant moments in time." (D.N. 124, PageID.741)  And she argues that evidence of her state of mind is relevant and admissible to show that she lacked the specific intent required by the murder-for-hire and stalking statutes.  (*Id.*, PageID.750, 754)  The government responds that the proffered evidence is "the kind of generalized evidence of [Russell's] mental condition intended as an excuse for her criminal conduct" and is "not being offered to negate the specific *mens rea* of the charged crimes."  (D.N. 131, PageID.807-08)  According to the government, "Russell seeks to offer mental condition evidence that does precisely what Congress intended to limit under the Insanity Defense Reform Act, that is to eliminate any form of legal excuse based on a defendant's lack of control (or 'road rage') as well as eliminating affirmative defenses such as 'diminished capacity.'"  (*Id.*, PageID.812; D.N. 125, PageID.765)

Mental-health evidence is not admissible to support a diminished-capacity defense or other mental-disorder defense short of insanity.  *See United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001) ("The statute makes insanity a defense, but requires the defendant to satisfy the M'Naghten standard . . . . Section 17 further provides that '[m]ental disease or defect does not otherwise constitute a defense.'").  Instead, "diminished capacity may be used only to negate the mens rea of a specific intent crime."  *Id.* (quoting *United States v. Gonyea*, 140 F.3d 649, 650 (6th Cir. 1998)); *see also United States v. Odeh*, 815 F.3d 968, 977 (6th Cir. 2016) (holding that evidence of the defendant's PTSD-related memory loss, which would otherwise be barred by IDRA, was admissible to disprove that the defendant knew that her statements to immigration officials were false as required for the crime charged).

The Sixth Circuit has also held that evidence of an obsessive state that compelled the defendant to commit the crime is irrelevant to the defendant's ability to form the requisite specific intent.  *Gonyea*, 140 F.3d at 650, 654.  The court later reemphasized this conclusion, explaining that it had "rejected the defendant's argument because his alleged inability to resist committing the crime did not negate" his mens rea.  *Odeh*, 815 F.3d at 978-79 (distinguishing *Gonyea* and concluding that "in contrast to the proposed testimony in *Kimes* and *Gonyea*, Dr. Fabri's testimony does not suggest that Odeh felt compelled to commit a crime, but rather that Odeh did not know that her answers on the naturalization application were false").

Several circuits have excluded mental-health evidence on the same grounds, with the Third Circuit similarly holding that evidence of compulsive personality traits that led the defendant to hire someone to kill their spouse was irrelevant to mens rea and should be excluded.  *See United States v. Pohlot*, 827 F.2d 889, 906 (3d Cir. 1987); *see also United States v. Worrell*, 313 F.3d 867, 873 (4th Cir. 2002) ("An example of inadmissible evidence regarding a defendant's mental condition would be testimony that a defendant, who failed to meet IDRA's definition of insanity, committed a crime because of a 'supposed psychiatric compulsion or inability or failure to engage in normal reflection.'" (quoting *Pohlot*, 827 F.2d at 890)); *United States v. Schneider*, 111 F.3d 197, 201-202 (1st Cir. 1997) (applying the reasoning of *Pohlot* to exclude testimony that the defendant's depression impaired his judgment).  In short, expert testimony casting doubt on a defendant's "capacity to think about intended actions, ability to consider possible consequences, and to exercise restraint . . . does nothing to negate the *mens rea* required for the charged offen[s]e" and "serves only to justify or excuse the defendant's actions," a purpose forbidden by IDRA.  *United States v. Stone*, 543 F. Supp. 3d 535, 542 (W.D. Ky. 2021) *aff'd*, 2023 WL 2379013 (6th Cir. Mar. 7, 2023).

Russell's proffered expert testimony must connect any evidence of her mental condition with her capacity to form the intent required by the murder-for-hire and stalking statutes. *See Kimes*, 246 F.3d 806.[1]  Evidence that Russell's abilities to exercise restraint and resist committing the crimes charged were undermined by a mental condition is inadmissible.  *See Odeh*, 815 F.3d at 978; *Gonyea*, 140 F.3d at 650; *see also Stone*, 543 F. Supp. 3d at 542.  As the Court has already noted (D.N. 116), the intent required to be convicted under 18 U.S.C. § 1958 is the "intent that a murder-for-hire be committed." *United States v. Ng*, 26 F. App'x 452, 462 (6th Cir. 2001); *see also United States v. Watson*, 852 F. App'x 164, 169 (6th Cir. 2021) (holding that the murder-for-hire statute "requires the government to prove that [the defendant] had 'intent that a murder be committed in violation of the laws of any State or the United States'").  The intent required under the stalking statute, meanwhile, is "the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person." 18 U.S.C. § 2261A. Russell must therefore demonstrate that her expert testimony is relevant to show that she was not capable of intending that a murder-for-hire be committed or intending to kill, injure, harass, intimidate, or place under surveillance to harass or intimidate her ex-husband. *Kimes*, 246 F.3d 806; § 1958; § 2261A.

Russell's motion makes no attempt to connect the mental-health testimony to Russell's specific intent, however, limiting the analysis to the conclusory statement that the "evidence discussed above offers concrete reason to doubt that Ms. Russell undertook her actions with the deliberate and purposeful desire to cause intimidation and death." (D.N. 124, PageID.755)  Nor

---

[1] Russell provided the government with notice of her intent to introduce evidence of a mental condition (D.N. 53, PageID.206-207) pursuant to Rule 12.2(b), but did not provide notice that she intends to rely upon the defense of insanity within the time required and therefore may not raise an insanity defense. (*See* D.N. 110 ("The pretrial deadlines that have already passed will not be reopened except upon a showing of good cause."); Fed. R. Crim. P. 12.2(a))

do the expert reports themselves opine as to Russell's capacity to form the required intent, indicating only that Russell was predisposed to react to distress by "becoming rigid and rule bound, ruminative and obsessive and aggressively goal-directed."[2] (D.N. 123-1, PageID.528) Ultimately, Dr. Butler opines that Russell acted under an "altered internal reality of protracted 'road rage'" in which "her behavior became singularly focused and obsessively goal directed in compelling that she protect her children at all costs." (*Id.*, PageID.530) Her obsessive focus on protecting her children from her ex-husband, Dr. Butler asserts, "overwhelmed her sense of propriety and her otherwise routine acceptance of social norms." (*Id.*, PageID.531) This testimony tends to show Russell's intent to intimidate and ultimately kill her husband, not a lack of intent. *See Odeh*, 815 F.3d at 979; *Stone*, 543 F. Supp. 3d at 542.

Since Russell's mental condition is irrelevant to the charged offenses, the Court agrees with the government that "Russell's assertion that she believed, despite substantial evidence to the contrary in the family court litigation, that her former husband was guilty of physical or sexual abuse is irrelevant and inadmissible at trial." (D.N. 136, PageID.1289) Russell may not indirectly prove her mental condition by relitigating the family court case or offering evidence that she believed that her children were being abused, as either category of evidence would be irrelevant to the offenses charged and risk misleading the jury. *See* Fed. R. Evid. 401, 403; *see also Schneider*, 111 F.3d at 202 (holding that evidence of the defendant's mental state, which did not negate his mens rea, "had a substantial capacity to mislead the jury" such that "the district court clearly would exclude the evidence under Fed. R. Evid. 403").

---

[2] Russell's motion in limine quotes extensively from her expert reports, which were previously filed under seal. (D.N. 124, 748-49 (quoting D.N. 123-1, PageID.528-31)) Accordingly, the Court finds it appropriate to quote portions of the reports that are relevant to this Order.

## II.

Russell's expert testimony is not relevant to her mens rea and at best supports the kind of diminished-capacity defense that Congress eliminated when it enacted the Insanity Defense Reform Act. *See Kimes*, 246 F.3d 806. The evidence is therefore inadmissible. *See id.* Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     The motion in limine to admit mental-health testimony and records from the family-court litigation (D.N. 124) is **DENIED**.

(2)     The government's motion to exclude evidence relating to Russell's mental condition (D.N. 125) is **GRANTED**. The Court will not permit evidence of Russell's mental condition, including attempts to relitigate the state-court proceedings or establish that Russell believed that her children were being abused. The Court will allow limited evidence of the kind described by the government in its 404(b) notice, that "there was a contentious custody dispute between Russell and her former husband over the two children" and that Russell's ex-husband "was granted full, permanent custody of the two children in January 2022." (D.N. 136, PageID.1289) This evidence provides context for the crimes charged and is relevant to demonstrate Russell's motive, without the risk of misleading the jury. Fed. R. Evid. 404(b).

April 17, 2024

David J. Hale, Judge
United States District Court

6