UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FILED
JAMES J. VILT, JR. - CLERK
APR 2 2 2024
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES OF AMERICA												PLAINTIFF

v.														CRIMINAL NO. 3:22-CR-58-DJH

STEPHANIE M. RUSSELL												DEFENDANT

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) (C) of the Federal Rules of Criminal Procedure, the United States of America, by Michael A. Bennett, United States Attorney for the Western District of Kentucky, and defendant, Stephanie M. Russell, and her attorneys, Scott C. Cox and David B. Mour, have agreed upon the following:

1.  Defendant acknowledges that she has been charged in the Second Superseding Indictment in this case with violations of Title 18, United States Code, Sections 1958, 2261A(2)(B), and 2.

2.  Defendant has read the charges against her contained in the Second Superseding Indictment, and those charges have been fully explained to her by her attorneys. Defendant fully understands the nature and elements of the crimes with which she has been charged.

3.  Defendant will enter a voluntary plea of guilty to Counts 1 and 2 in this case. Defendant will plead guilty because she is in fact guilty of the charges. The parties agree to the following factual basis for this plea:

## Count 1

Stephanie M. Russell, a pediatrician, owned and ran KidzLife Pediatrics in Norton Commons, in Louisville, Kentucky, in the Western District of Kentucky. Beginning in July 2021, Russell caused another to travel in interstate commerce, and used a telephone, a facility of interstate commerce as defined in 18 U.S.C. §1958, with the intent that the murder of R.C. be committed in violation of the laws of the Commonwealth of Kentucky and offered to pay for that murder.

In July 2021, during a contentious custody battle with her ex-husband, R.C., Russell began soliciting multiple KidzLife employees, asking if they knew someone who would be willing to kill R.C. In the spring of 2022, the FBI was notified of Russell's solicitations, and began an investigation. As part of that investigation, a cooperating witness provided Russell with the telephone number of a purported hitman from the Chicago area. That hitman was actually an FBI Special Agent working undercover. Beginning on May 15, 2022, Russell had several recorded telephone conversations with the purported hitman. In one call, Russell and the purported hitman had the following exchange:

Hitman: Obviously you want [R.C.] killed, right, . . . ?

Russell: I want him to be completely gone from my life, yes . . . .

Hitman: Well I mean that can be in the Bahamas, but I don't think we're talking a vacation away. I think we're talking in the ground.

Russell: I mean, do you like, do they disappear? Do you like shoot them on the road? Like what happens? Or should I just not know?

Hitman: It really depends on, I mean, price dictates. That's just how that goes. The more work I got to do, the more it's going to cost you, but it could be, do you want it to look like a suicide? Do you want it to . . .

Russell: Yes, that would be amazing.

Russell ultimately agreed to pay the purported hitman $7,000, with half due up front. On May 18, 2022, Russell was caught on surveillance video leaving $3,500 in a specimen box outside the KidzLife building for the hitman to retrieve. The purported hitman drove to Louisville from Illinois and was videotaped as he picked up the payment. The FBI arrested Russell the next day.

**Count 2**

Between December 1, 2018, and August 9, 2019, Russell, aided and abetted by J.S., used a telephone, an electronic communication system in interstate commerce, to engage in conduct that caused and attempted to cause R.C. substantial emotional distress, and Russell did so with the intent to harass and intimidate R.C. Specifically, Russell encouraged J.S. to harass R.C., and provided J.S. with a burner phone to use while doing so. The harassing conduct included visiting R.C.'s office unannounced; pretending to be a WAVE-3 reporter and leaving R.C. accusatory voicemails from the phone provided by Russell on R.C.'s phone; entering R.C.'s garage and leaving a note inside the garage pretending to be a reporter writing a derogatory story that could involve R.C.; and by leaving fliers, with R.C.'s photograph and other personal identifying information, on cars at R.C.'s office. The fliers contained defamatory allegations of misconduct and were intended to be viewed by R.C.'s co-workers, supervisors, and potentially clients.

4. Defendant understands that the charges to which she will plead guilty carry a combined maximum term of imprisonment of 15 years, a combined maximum fine of $500,000, and a 3-year term of supervised release. Defendant understands that an additional term of imprisonment may be ordered if the terms of the supervised release are violated, as explained in 18 U.S.C. § 3583.

5. Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which Defendant is pleading guilty. In addition, if she is a naturalized citizen, Defendant acknowledges that certain convictions, which may include Defendant's conviction, may expose her to denaturalization under federal law. Because removal, denaturalization, and other immigration consequences are handled in separate proceedings, Defendant understands that no one, including her attorney or the U.S. District Court, can predict with certainty how her conviction may affect her immigration, naturalization, or citizenship status. Defendant agrees to plead guilty with a full understanding

3

that this guilty plea may lead to adverse immigration consequences, including denaturalization and possible automatic removal from the United States.

6. Defendant understands that if a term of imprisonment of more than one year is imposed, the Sentencing Guidelines require a term of supervised release and that she will then be subject to certain conditions of release. §§5D1.1, 5D1.2, 5D1.3.

7. Defendant understands that by pleading guilty, she surrenders certain rights set forth below. Defendant's attorney has explained those rights to her and the consequences of her waiver of those rights, including the following:

    A. If defendant persists in a plea of not guilty to the charges against her, she has the right to a public and speedy trial. The trial could either be a jury trial or a trial by the judge sitting without a jury. If there is a jury trial, the jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict her unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

    B. At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

C. At a trial, defendant would have a privilege against self-incrimination and she could decline to testify, without any inference of guilt being drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

8. Defendant understands that the United States Attorney's Office has an obligation to fully apprise the District Court and the United States Probation Office of all facts pertinent to the sentencing process, and to respond to all legal or factual inquiries that might arise either before, during, or after sentencing. Defendant admits all acts and essential elements of the indictment counts to which she pleads guilty.

9. Defendant acknowledges liability for the special assessment mandated by 18 U.S.C. § 3013 and will pay the assessment in the amount of $200 to the United States District Court Clerk's Office by the date of sentencing.

10. At the time of sentencing, the United States and the defendant agree to the following:

-agree that a sentence of not less than 97 months and not more than 144 months is the appropriate disposition of this case.

-agree that a reduction of 2 levels below the otherwise applicable Guideline for "acceptance of responsibility" as provided by §3E1.1(a) is appropriate, provided the defendant does not engage in future conduct which violates any federal or state law, violates a condition of bond, constitutes obstruction of justice, or otherwise demonstrates a lack of acceptance of responsibility. Should such conduct occur and the United States, therefore, opposes the reduction for acceptance, this plea agreement remains binding and the defendant will not be allowed to withdraw her plea.

-demand forfeiture of $5,975 as property used to facilitate, or intended to be used to facilitate, the commission of the violation of Title 18, United States Code, Section 1958 charged in Count 1.

11. Defendant agrees to the following waivers of appellate and post-conviction rights:

   A. The Defendant is aware of her right to appeal her conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right to directly appeal her conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742.

   B. The Defendant is aware of her right to contest or collaterally attack her conviction and the resulting sentence under 28 U.S.C. § 2255 or otherwise. Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, Defendant knowingly and voluntarily waives any collateral attack argument; and

   C. The defendant knowingly and voluntarily agrees to limit any motion for compassionate release for extraordinary and compelling reasons, pursuant to 18 U.S.C. §3582(c)(1)(A)(i), that the defendant may file in the future to the grounds listed in USSG §1B1.13(b)(1)-(5). The defendant knowingly and voluntarily waives the option to move for compassionate release based on any non-retroactive change in the law, including as provided for under USSG §1B1.13(b)(6) ("Unusually Long Sentence").

12. By this Agreement, defendant agrees to forfeit all interest in the property listed in the Notice of Forfeiture in the Second Superseding Indictment and to take whatever steps are necessary to pass clear title to the United States. These steps include but are not limited to surrender of title, the signing of a consent decree, a stipulation of facts regarding the transfer and basis for the forfeitures and signing any other documents necessary to effectuate such transfers.

13. Defendant agrees not to pursue or initiate any civil claims or suits against the United States of America, its agencies, or employees, whether presently known to defendant, arising out of the investigation or prosecution of the offenses covered by this Agreement.

14. The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation

any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

15.   Defendant agrees to forfeit and abandon any right to any and all evidence and property seized during the course of this investigation (including but not limited to any item subject to forfeiture) and waives any right to seek the return of any property pursuant to Fed. R. Crim. P. 41 or otherwise. Defendant understands and agrees that items seized during the course of this investigation will be destroyed or otherwise disposed of by the seizing law enforcement agency.

16.   Defendant understands and agrees that consistent with the provisions of 18 U.S.C. § 3143, following the change of plea, the defendant may be detained pending sentencing.

17.   If the Court refuses to accept this agreement and impose sentence in accordance with its terms pursuant to Fed. R. Crim. P. 11(c)(1) (C), this Agreement will become null and void and neither party shall be bound thereto, and defendant will be allowed to withdraw the plea of guilty. Specifically, all of the United States' promises, including any consent to a plea to a lesser included offense or dismissal of other charges, are contingent on the district court's subsequent acceptance of this plea agreement. If this agreement allows Defendant to plead to a lesser-included offense, Defendant agrees that her original charges will automatically be reinstated, and Defendant waives any double jeopardy rights she may have with respect to the greater offense if the court subsequently rejects the parties' plea agreement--even if Defendant declines to withdraw her guilty plea to the lesser-included offense.

18.   Defendant agrees that the disposition provided for within this Agreement is fair, considering all aggravating and mitigating factors. Defendant states that she has informed the United States Attorney's Office and the Probation Officer, either directly or through her attorney,

of all mitigating factors. Defendant will not oppose imposition of a sentence incorporating the disposition provided for within this Agreement, nor argue for any other sentence. If Defendant argues for any sentence other than the one to which she has agreed, she is in breach of this Agreement. Defendant agrees that the remedy for this breach is that the United States is relieved of its obligations under this Agreement, but Defendant may not withdraw her guilty plea because of her breach.

19. This document and the supplemental plea agreement state the complete and only Plea Agreements between the United States Attorney for the Western District of Kentucky and defendant in this case, and are binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that are signed by all parties or on the record in Court. No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

AGREED:

MICHAEL A. BENNETT
United States Attorney

By:

_____  _____4/22/2024_____
Marisa J. Ford                Date
David R. Weiser
Assistant United States Attorneys

I have read this Agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it.

_Stephanie M. Russell_                    _4.22.24_
Stephanie M. Russell                       Date
Defendant

I am the defendant's counsel. I have carefully reviewed every part of this Agreement with the defendant. To my knowledge my client's decision to enter into this Agreement is an informed and voluntary one.

_Scott C. Cox_                           _4-22-24_
Scott C. Cox                              Date
David B. Mour
Counsel for Defendant